# Mohrman & Kaardal, P.A.

33 South Sixth Street
Suite 4100
Minneapolis, MN  55402
612-341-1074

Fed. Tax ID No. 41-1903593

Greg Hall
American Manufacturing Company
PO Box 640
Saint Joseph, MN 56374

Invoice No:      17843
Client/Matter No:  3008/001

---

**In Reference To:  Greg Hall v. United States**                    February 13, 2013

FOR PROFESSIONAL SERVICES
through January 31, 2013

## Professional Services:

| Date | Atty. | Description | Hours | Amount |
|------|-------|-------------|-------|--------|
| 01/23/13 | EGK | Conduct legal research on HHS mandate claims for Greg Hall -- Deacon Hall. Review RFRA, 1st Amendment religious clause cases. | 2.30 | 690.00 |
| 01/24/13 | EGK | Attend meeting with Tom Matthews/conference with Greg Hall. Conduct legal research re: claims. | 2.50 | 750.00 |
| 01/25/13 | EGK | Review file. Conduct legal research on "scandal" issue for Roman Catholic deacon to cooperate with HHS Mandate for contraceptive coverage.  Draft and revise complaint. | 1.80 | 540.00 |
| 01/28/13 | EGK | Review client documents.  Conduct legal research on "scandal" issue, on HHS Mandate for contraceptive coverage and on substantial burden issue. Work on availability of ACA compliant health insurance to avoid scandal issue.  Draft and revise complaint. | 3.40 | 1,020.00 |
|  | JEG | Revisions to initial complaint. | 2.40 | 420.00 |
|  | JEG | Draft Complaint; discussion with Matthews; review of health insurance documents; review of Secretary of State; research on defendant as named. | 2.20 | 385.00 |
| 01/29/13 | EGK | Review cases. Research insurance options.  Review Archdiocesean policies and documents.  Draft and revise complaint. | 5.60 | 1,680.00 |

EXHIBIT 1

## Mohrman & Kaardal, P.A.

Fed. Tax ID No. 41-1903593

Greg Hall

**In Reference to:  Greg Hall v. United States**

| | | | |
|---|---|---|---|
| Invoice No: | 17843 |
| Client/Matter No: | 3008/001 |
| Page: | 2 |

| Date | Atty. | Description | Hours | Amount |
|------|-------|-------------|-------|--------|
| 01/29/13 | JEG | Revisions to Complaint. | 3.30 | 577.50 |
| 01/30/13 | EGK | Review Roman Catholic and Archdiocesean documents. Conduct legal research re: scandal, disciplinary issues, etc. Work on availability of health insurance availability and other issues.  Draft and revise complaint. | 5.30 | 1,590.00 |
| 01/31/13 | EGK | Conduct legal research on HHS Mandate and case law relating thereto. Draft and revise complaint. | 6.20 | 1,860.00 |
| **For professional services rendered** | | | 35.00 | $9,512.50 |
| **Balance due** | | | | **$9,512.50** |

Bills Are Due And Payable Upon Receipt
This Statement Does Not Include Expenses Not Yet Received By This Office
Bills Unpaid Over 60 Days Accrue Interest At 18%

EXHIBIT 1

# Mohrman & Kaardal, P.A.

33 South Sixth Street
Suite 4100
Minneapolis, MN 55402
612-341-1074
Fed. Tax ID No. 41-1903593

Greg Hall
American Manufacturing Company
PO Box 640
Saint Joseph, MN 56374

Invoice No:     17925
Client/Matter No:  3008/001

## In Reference To:  Greg Hall v. United States

March 27, 2013

FOR PROFESSIONAL SERVICES
through February 28, 2013

## Professional Services:

| Date | Atty. | Description | Hours | Amount |
|------|-------|-------------|-------|--------|
| 02/01/13 | EGK | Draft and revise complaint. | 2.35 | 705.00 |
| 02/05/13 | EGK | Draft and revise complaint.  Conference with Greg Hall and Tom Matthews re: litigation.  Conduct legal research re: HHS Claims/Review proposed rules.  Prepare and attend interview with Nick Winkler.  Conference re: litigation.  Outline motion for summary judgment. | 5.25 | 1,575.00 |
| | JEG | Revisions to Complaint; completed filing requirements. | 1.70 | 297.50 |
| 02/06/13 | EGK | Work on memorandum of law. Outline declarations. Conduct legal research on substantial burden. Conference with Greg Hall and Tom Mathews re: litigation. | 4.25 | 1,275.00 |
| | JVD | Researched precedent re substantial burden; conferred with atty. Kaardal and with Grzybek. | 1.90 | 237.50 |
| 02/07/13 | EGK | Work on insurance products/self-insured issue. Draft and revise outline of affidavits. | 4.25 | 1,275.00 |
| | JVD | Researched re substantial burden; conferred with attys. Mohrman, Kaardal, Erickson, and with Grzybek. | 2.70 | 337.50 |
| 02/08/13 | EGK | Work on motion papers. Conduct research on insurance product/self-insured issues. | 3.25 | 975.00 |

Bills Are Due And Payable Upon Receipt
This Statement Does Not Include Expenses Not Yet Received By This Office
Bills Unpaid Over 60 Days Accrue Interest At 18%

EXHIBIT 1

## Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| Greg Hall | | | | Invoice No: | 17925 |
|---|---|---|---|---|---|
| **In Reference to: Greg Hall v. United States** | | | | Client/Matter No: | 3008/001 |
| | | | | Page: | 2 |

| Date | Atty. | Description | Hours | Amount |
|---|---|---|---|---|
| 02/08/13 | JVD | Researched substantial burden in RFRA | 0.30 | 37.50 |
| | JVD | Researched more on substantial burden | 0.20 | 25.00 |
| 02/11/13 | EGK | Work on insurance-related issues. Conduct legal research. Review case. Conference with client. Draft and revise memorandum of law regarding litigation/legal issues/strategy. | 3.20 | 960.00 |
| | JVD | Collected cases re substantial burden under RFRA; conferred with atty. Kaardal; read email from atty. Kaardal to Greg Hall; emailed Kaardal and Grzybek precedent re substantial burden; conducted further research. | 3.00 | 375.00 |
| | JEG | Conferred with EK re: legal and factual issues regarding complaint, amended complaint; declarations, and legal argument. | 1.00 | 175.00 |
| 02/12/13 | EGK | Conduct legal research.  Review case. Conference with client. Draft and revise memorandum of law in support of motions. Draft and revise letter to AD officials re: scandal. | 4.70 | 1,410.00 |
| | JVD | Researched substantial burden; corresponded and conferred with Atty. Kaardal. | 1.20 | 150.00 |
| 02/13/13 | EGK | Conduct legal research on RFRA claims. Conference re: legal research. Draft and revise memorandum of law in support of preliminary injunction motion. | 4.25 | 1,275.00 |
| | JVD | Substantial burden research | 0.50 | 62.50 |
| 02/14/13 | EGK | Draft and revise memorandum of law in support of preliminary injunction motion.  Review file. Conduct legal research. | 4.30 | 1,290.00 |
| | JVD | Substantial burden research and draft of memorandum of law; conferred with atty. Kaardal. | 4.70 | 587.50 |

EXHIBIT 1

## Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| Greg Hall | | | | |
|---|---|---|---|---|
| | | | Invoice No: | 17925 |
| **In Reference to:** Greg Hall v. United States | | | Client/Matter No: | 3008/001 |
| | | | Page: | 3 |

| Date | Atty. | Description | Hours | Amount |
|---|---|---|---|---|
| 02/14/13 | JEG | Conferred with EK re: fact section discussion; outline; entry point. | 0.30 | 52.50 |
| | JEG | Conferred with EK Re; legal issues; drafted introductory paragraph to fact section; discussion on fact section. | 1.10 | 192.50 |
| | JEG | Conferred with EK re: legal issues; Cardinal DiNardo letter; factual issues. | 0.70 | 122.50 |
| | JEG | Review and made suggested revisions to statement of facts. | 1.00 | 175.00 |
| 02/15/13 | EGK | Conduct legal research on RFRA and First Amendment claims. Draft and revise memorandum of law in support of preliminary injunction motion. | 3.80 | 1,140.00 |
| | JVD | Substantial burden research and conferred with Grzybek and Atty. Kaardal | 3.50 | 437.50 |
| 02/17/13 | EGK | Draft and revise memorandum of law in support of preliminary injunction motion. Conduct legal research. | 3.20 | 960.00 |
| 02/18/13 | EGK | Draft and revise memorandum of law in support of preliminary injunction motion. Conduct legal research on RFRA and First Amendment cases. Review file materials. | 4.50 | 1,350.00 |
| | JVD | Finished drafting memorandum re substantial burden; researched RFRA and First Amendmnet facial challneges; conferred with atty. Kaardal. | 6.40 | 800.00 |
| 02/19/13 | EGK | Draft and revise preliminary injunction memorandum. Review file. Work on insurance and injunction issues. Conference re: same. | 2.90 | 870.00 |
| | JVD | Continued substantial burden research and conferred with Atty. Kaardal | 0.40 | 50.00 |

EXHIBIT 1

## Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| Greg Hall | | | | |
|---|---|---|---|---|
| | | | Invoice No: | 17925 |
| **In Reference to:  Greg Hall v. United States** | | | Client/Matter No: | 3008/001 |
| | | | Page: | 4 |

| Date | Atty. | Description | Hours | Amount |
|---|---|---|---|---|
| 02/20/13 | EGK | Draft and revise memorandum of law. Conference re: AD/AB response on scandal. Review file.  Work on insurance issues. | 3.20 | 960.00 |
| | JVD | Conferred with atty. Kaardal re substantial burden | 0.70 | 87.50 |
| 02/21/13 | EGK | Draft and revise memorandum of law.  Conduct legal research on RFRA and First Amendment claims.  Work on declarations in support of motions. | 2.20 | 660.00 |
| 02/22/13 | EGK | Conference with Deacon Hall re: AD/AB response.  Draft and revise memorandum of law. Draft and revise declarations in support of motion.   Work on insurance issues. | 2.80 | 840.00 |
| 02/25/13 | EGK | Draft and revise declarations in support of motions.  Draft and revise memorandum of law. Conference re: insurance issues/options. | 1.20 | 360.00 |
| 02/26/13 | EGK | Work on legal research relating to remedies and insurance situation. Research rule 19 and necessary parties. Conference re: legal research. | 1.70 | 510.00 |
| 02/27/13 | EGK | Conference with Deacon DuPont re: AD/AB situation, possible declaration, AD procedures/Handbook/etc.  Draft and revise summary memorandum.  Conference with Tom Matthews re: update.  Work on legal research relating to remedies and insurance situation. Research rule 19 and necessary parties. Conference re: legal research. Draft and revise summary memorandum. | 2.70 | 810.00 |
| | JVD | Conferred with atty. Kaardal | 0.20 | 25.00 |
| 02/28/13 | EGK | Work on motions. Work on memorandum of law re: preliminary injunction.  Work on memorandum re: summary judgment motion. | 1.10 | 330.00 |

### For professional services rendered

96.60   $23,757.50

EXHIBIT 1

## Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| Greg Hall | |
|---|---|
| **In Reference to:  Greg Hall v. United States** | |

| | |
|---|---|
| Invoice No: | 17925 |
| Client/Matter No: | 3008/001 |
| Page: | 5 |

## Additional Charges :

| Date | Description | Amount |
|---|---|---|
| 2/5/2013 | US District Court,  Declaratory & Injunctive Relief Filing Fee. | 350.00 |
| 2/6/2013 | Twin City Process, Inv 17846, Service on US Attorney B Todd Jones | 37.50 |
| 2/28/2013 | Postage, February 2013 | 58.79 |
| | **Total additional charges** | $446.29 |
| | **Total amount of this bill** | $24,203.79 |
| 3/27/2013 | Payment of Invoice from Trust - Thank You<br>Zero Balance Remains in Trust | ($15,487.50) |
| | **Total payments and adjustments** | ($15,487.50) |
| | **Balance due** | $8,716.29 |

Bills Are Due And Payable Upon Receipt
This Statement Does Not Include Expenses Not Yet Received By This Office
Bills Unpaid Over 60 Days Accrue Interest At 18%

EXHIBIT 1

# Mohrman & Kaardal, P.A.

33 South Sixth Street
Suite 4100
Minneapolis, MN 55402
612-341-1074
Fed. Tax ID No. 41-1903593

Greg Hall
American Manufacturing Company
PO Box 640
Saint Joseph, MN 56374

Invoice No:      17937
Client/Matter No: 3008/001

**In Reference To:  Greg Hall v. United States**

May 16, 2013

FOR PROFESSIONAL SERVICES
through April 30, 2013

## Professional Services:

| Date | Atty. | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 03/01/13 | EGK | Conference re: legal issues. Draft and revise memorandum in support of motion for preliminary injunction. | 1.50 | 450.00 |
| 03/04/13 | EGK | Draft and revise memorandum of law in support of motion. | 1.70 | 510.00 |
| 03/05/13 | EGK | Draft and revise memorandum of law in support of motions. Conduct legal research re: same. | 2.20 | 660.00 |
| 03/06/13 | JVD | Conferred with atty. Kaardal re memorandum strategy | 0.50 | 62.50 |
|  | EGK | Prepare for and attend meeting with Greg Hall re: litigation. | 3.00 | 900.00 |
| 03/07/13 | EGK | Conference with Tom Matthews and Greg Hall re: insurance options.  Review file. Draft and revise memoranda of law. Conference with Tom Matthews re: same. | 2.70 | 810.00 |
| 03/08/13 | EGK | Conference re: insurance issues. Draft and revise preliminary injunction motion papers. Conduct legal research re: same. | 2.30 | 690.00 |
| 03/11/13 | JVD | Conferred with atty. Kaardal; conferred with Grzybek; researched and drafted memorandum re facial, as applied, and RFRA challenges under both theories--overview. | 1.60 | 200.00 |
|  | EGK | Conference with Department of Justice Attorney Brad Humphries re: preliminary injunction order. | 0.50 | 150.00 |

Bills Are Due And Payable Upon Receipt
This Statement Does Not Include Expenses Not Yet Received By This Office
Bills Unpaid Over 60 Days Accrue Interest At 18%

EXHIBIT 1

## Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| Greg Hall | | | | |
|---|---|---|---|---|
| | | | Invoice No: | 17937 |
| **In Reference to: Greg Hall v. United States** | | | Client/Matter No: | 3008/001 |
| | | | Page: | 2 |

| Date | Atty. | Description | Hours | Amount |
|---|---|---|---|---|
| 03/11/13 | JEG | Conferred with EK re: TRO; preliminary injunction; discovery; summary judgment strategy; call to court chambers re: preliminary injunction process of judge. | 0.30 | 52.50 |
| 03/12/13 | JVD | Conferred re facial/as applied challenges under Establishemtn clause and RFRA | 1.20 | 150.00 |
| | EGK | Conference re: legal issues involving preliminary injunction. | 0.60 | 180.00 |
| 03/13/13 | JVD | Researched facial establishment clause claims; researched angle to approach discrimination based on profit/nonprofit distinction; conferred | 1.00 | 125.00 |
| | EGK | Work on preliminary injunction issues.  Conference with DOJ attorney re: preliminary injunction.  Draft and revise preliminary injunction. Conference re: same.  Work with Medica legal department re: preliminary injunction. | 1.10 | 330.00 |
| 03/14/13 | EGK | Draft and revise preliminary injunction. Conference re: Medica legal department/preliminary injunction.  Conference with Department of Justice attorney Brad Humphries re: preliminary injunction. Conference with clerk of court re: preliminary injunction. | 1.20 | 360.00 |
| 03/15/13 | EGK | Work on scope of injunction issues. Work on insurance policy issues. Conduct legal research re: injunction/insurance policy issues.  Draft and revise correspondence re: preliminary injunction. | 0.08 | 24.00 |
| | JEG | Conferred with EK re: stipulation. | 0.20 | 35.00 |
| 03/18/13 | JVD | Conferred with atty. Kaardal; drafted motion, notice of hearing, and meet and confer statement for potential unopposed preliminary injunction. | 1.60 | 200.00 |
| | EGK | Work on preliminary injunction issues.  Scope of injunction. Research and work on state law issues relating to insurance policies available.  Draft and revise correspondence re: same. | 1.50 | 450.00 |

EXHIBIT 1

# Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| Greg Hall | | |
|---|---|---|
| | Invoice No: | 17937 |
| | Client/Matter No: | 3008/001 |
| **In Reference to: Greg Hall v. United States** | Page: | 3 |

| Date | Atty. | Description | Hours | Amount |
|---|---|---|---|---|
| | | Negotiations with Medica legal department. Review preliminary injunction issues. | | |
| 03/18/13 | JEG | Review and revisions to notice of hearing and motion. | 0.30 | 52.50 |
| 03/19/13 | JVD | Conferred with atty. Kaardal; conducted research for unopposed motion for PI pursuant to govts request that we follow Sioux Chief model for consent motions. | 0.50 | 62.50 |
| | EGK | Work on preliminary injunction issues. Conference with Medica legal department re: legal issues. | 1.30 | 390.00 |
| | JEG | Call to 8th Circuit Clerk's Office; re: definiceny notice. Issue resolved. | 0.20 | 35.00 |
| 03/20/13 | EGK | Work on preliminary injunction negotiations with DOJ attorney Brad Humphreys. Review decisions granting preliminary injunctions. Draft and revise preliminary injunction. | 1.30 | 390.00 |
| 03/21/13 | EGK | Review Medica responses. Conference re: changes to preliminary injunction. Draft and revise preliminary injunction order per suggestions by Department of Justice attorney Brad Humphreys. Draft and revise correspondence re: preliminary injunction. | 1.20 | 360.00 |
| 03/22/13 | EGK | Draft and revise motion and notice of motion for preliminary injunction. Draft and revise proposed preliminary injunction order. Submit to U.S. District Court Judge Tunheim for review. | 1.70 | 510.00 |
| 03/25/13 | EGK | Review United States' non-opposition to motion for summary judgment. Conference regarding same. | 0.80 | 240.00 |
| 03/26/13 | EGK | Conduct legal research on state law on elective abortions. Review state-approved forms on abortion coverage. | 1.50 | 450.00 |
| 03/27/13 | JVD | Researched state laws concerning policy form requirements for group health insurance plans; researched state mandates for certain coverages that could be objected to by Christians; | 1.00 | 125.00 |

EXHIBIT 1

# Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| Greg Hall | | | Invoice No: | 17937 |
|---|---|---|---|---|
| **In Reference to:  Greg Hall v. United States** | | | Client/Matter No: | 3008/001 |
| | | | Page: | 4 |

| Date | Atty. | Description | Hours | Amount |
|---|---|---|---|---|
| | | contacted Dept of Commerce in attempt to obtain policy forms currently in effect in MN for group plans | | |
| 03/28/13 | JVD | Researched location of group health policy forms; corresponded with atty. Kaardal. | 0.40 | 50.00 |
| 04/01/13 | JVD | Conferred with atty. Kaardal re strategy and progress. | 0.50 | 62.50 |
| | EGK | Conference with Tom Matthews re: preliminary injunction and other issues. | 0.30 | 90.00 |
| 04/02/13 | JVD | Traveled to and from St. Paul DOC location to download policy form files; downloaded files on location; conferred with atty. Kaardal. | 1.70 | 212.50 |
| | EGK | Review preliminary injunction order signed by Judge Tunheim. Conference re: preliminary injunction. | 0.80 | 240.00 |
| 04/03/13 | JVD | Conferred with atty. Kaardal; conducted research on policy forms obtained from DOC. | 0.90 | 112.50 |
| 04/05/13 | JVD | Conferred with atty. Kaardal. | 0.50 | 62.50 |
| 04/12/13 | JVD | Conferred with atty. Kaardal; researched reverse preemption doctrine and applicability to Minnesota law and the PPACA; drafted memo summarizing research and recommendations; emailed atty. Kaardal. | 2.50 | 312.50 |
| 04/15/13 | JVD | Met with atty. Kaardal re Medica exception for AMC | 0.20 | 25.00 |
| | EGK | Review Medica policy accomodations.  Review file.  Conference with Greg Hall re: federal/state legal issues.  Conduct legal research.  Review Minnesota insurance coverage requirements for abortion coverage. | 1.40 | 420.00 |

### For professional services rendered

43.78  $10,541.50

EXHIBIT 1

### Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| | |
|---|---|
| Greg Hall | Invoice No: 17937 |
| | Client/Matter No: 3008/001 |
| **In Reference to: Greg Hall v. United States** | Page: 5 |

## Additional Charges :

| Date | Description | Amount |
|---|---|---|
| 3/31/2013 | Postage, March 2013 | 1.32 |
| | Pacer Research Fees, January - March 2013 | 11.90 |
| | **Total additional charges** | $13.22 |
| | **Total amount of this bill** | $10,554.72 |
| | **Previous balance** | $8,716.29 |
| 4/11/2013 | Payment - Thank You. Check No. 29082 | ($8,716.29) |
| | **Total payments and adjustments** | ($8,716.29) |
| | **Balance due** | $10,554.72 |

Bills Are Due And Payable Upon Receipt
This Statement Does Not Include Expenses Not Yet Received By This Office
Bills Unpaid Over 60 Days Accrue Interest At 18%

EXHIBIT 1

# Mohrman & Kaardal, P.A.

33 South Sixth Street
Suite 4100
Minneapolis, MN 55402
612-341-1074
Fed. Tax ID No. 41-1903593

Greg Hall
American Manufacturing Company
PO Box 640
Saint Joseph, MN 56374

Invoice No:    18013
Client/Matter No: 3008/001

**In Reference To: Greg Hall v. United States**

June 25, 2013

FOR PROFESSIONAL SERVICES
through May 31, 2013

## Professional Services:

| Date | Atty. | Description | Hours | Amount |
|------|-------|-------------|-------|--------|
| 05/03/13 | EGK | Draft and revise memorandum of law re: option to pursue Establishment Clause claim. | 2.10 | 630.00 |
| 05/07/13 | EGK | Draft and revise Establishment Clause Claim strategy memorandum for client. | 1.20 | 360.00 |
| 05/08/13 | JVD | Conducted legal research on potential amended claim for Establishment Clause violation because of Mandate. | 2.20 | 275.00 |

|  | For professional services rendered | 5.50 | $1,265.00 |
|---|---|---|---|

**Previous balance**                                    $10,554.72

6/21/2013 Payment - Thank You. Check No. 29600                  ($10,554.72)

**Total payments and adjustments**                      ($10,554.72)

**Balance due**                                          **$1,265.00**

# Mohrman & Kaardal, P.A.

33 South Sixth Street
Suite 4100
Minneapolis, MN 55402
612-341-1074
Fed. Tax ID No. 41-1903593

Greg Hall
American Manufacturing Company
PO Box 640
Saint Joseph, MN 56374

Invoice No:     17843
Client/Matter No: 3008/001

**In Reference To:  Greg Hall v. United States**                                    February 13, 2013

FOR PROFESSIONAL SERVICES
through January 31, 2013

## Professional Services:

| Date | Atty. | Description | Hours | Amount |
|------|-------|-------------|-------|--------|
| 01/23/13 | EGK | Conduct legal research on HHS mandate claims for Greg Hall -- Deacon Hall. Review RFRA, 1st Amendment religious clause cases. | 2.30 | 690.00 |
| 01/24/13 | EGK | Attend meeting with Tom Matthews/conference with Greg Hall. Conduct legal research re: claims. | 2.50 | 750.00 |
| 01/25/13 | EGK | Review file. Conduct legal research on "scandal" issue for Roman Catholic deacon to cooperate with HHS Mandate for contraceptive coverage.  Draft and revise complaint. | 1.80 | 540.00 |
| 01/28/13 | EGK | Review client documents.  Conduct legal research on "scandal" issue, on HHS Mandate for contraceptive coverage and on substantial burden issue. Work on availability of ACA compliant health insurance to avoid scandal issue.  Draft and revise complaint. | 3.40 | 1,020.00 |
| | JEG | Revisions to initial complaint. | 2.40 | 420.00 |
| | JEG | Draft Complaint; discussion with Matthews; review of health insurance documents; review of Secretary of State; research on defendant as named. | 2.20 | 385.00 |
| 01/29/13 | EGK | Review cases. Research insurance options.  Review Archdiocesean policies and documents.  Draft and revise complaint. | 5.60 | 1,680.00 |

## Mohrman & Kaardal, P.A.
Fed. Tax ID No. 41-1903593

| Greg Hall | | Invoice No: | 17843 |
|---|---|---|---|
| | | Client/Matter No: | 3008/001 |
| **In Reference to:  Greg Hall v. United States** | | Page: | 2 |

| Date | Atty. | Description | Hours | Amount |
|---|---|---|---|---|
| 01/29/13 | JEG | Revisions to Complaint. | 3.30 | 577.50 |
| 01/30/13 | EGK | Review Roman Catholic and Archdiocesean documents. Conduct legal research re: scandal, disciplinary issues, etc. Work on availability of health insurance availability and other issues.  Draft and revise complaint. | 5.30 | 1,590.00 |
| 01/31/13 | EGK | Conduct legal research on HHS Mandate and case law relating thereto. Draft and revise complaint. | 6.20 | 1,860.00 |
| | | **For professional services rendered** | 35.00 | $9,512.50 |
| | | **Balance due** | | **$9,512.50** |

# Mohrman, Kaardal & Erickson, P.A.

150 South 5th Street
Suite 3100
Minneapolis, MN 55402
612-341-1074
Fed. Tax ID No. 41-1903593

Greg Hall
American Manufacturing Company
PO Box 640
Saint Joseph, MN 56374

Invoice No:    18579
Client/Matter No:  3008/001

**In Reference To:  Greg Hall v. United States**

December 04, 2014

FOR PROFESSIONAL SERVICES
through

## Professional Services:

| Date | Atty. | Description | Hours | Amount |
|------|-------|-------------|-------|--------|
| 09/10/14 | JVD | Confer regarding case status and US attorneys' position on permanent injunction; discuss case strategy based on aforementioned. | 0.30 | 37.50 |
| 10/24/14 | EGK | Work on settlement issues. | 0.40 | 120.00 |
| 11/10/14 | EGK | Conference re: settlement agreement. | 0.50 | 150.00 |

|  |  |  |
|---|---|---|
| **For professional services rendered** | 1.20 | $307.50 |
| **Previous balance** |  | $1,265.00 |
| 8/2/2013 Payment - Thank You. Check No. 29812 |  | ($1,265.00) |
| **Total payments and adjustments** |  | ($1,265.00) |
| **Balance due** |  | **$307.50** |

Bills Are Due And Payable Upon Receipt
This Statement Does Not Include Expenses Not Yet Received By This Office
Bills Unpaid Over 60 Days Accrue Interest At 18%

EXHIBIT 1

3/11/2015                          Mohrman, Kaardal & Erickson, P.A.
9:08 AM                               A/R Transaction Listing                         Page    1

---

| Selection Criteria |
| --- |

---

| A/R.Classification | Open |
| Clie.Selection | Include: Hall/United States |

---

'B' for Billed.  'P' for Posted.

| ID | Type | Client | |
| Date | Invoice # | Check Number | Total |
| --- | --- | --- | --- |
| 15465 | INV | B  Hall/United States | 9512.50 |
| 2/13/2013 | G:17843 | | |
| | Invoice No. 17843 | | |
| 15489 | PAY | B  Hall/United States | (9512.50) |
| 2/15/2013 | I:395 | P | |
| | Payment of Invoice from Retainer - Thank You | | |
| 15614 | PAY | B  Hall/United States | (15487.50) |
| 3/27/2013 | G:17925 | P | |
| | Payment of Invoice from Trust - Thank You | | |
| | Zero Balance Remains in Trust | | |
| 15615 | INV | B  Hall/United States | 24203.79 |
| 3/27/2013 | G:17925 | | |
| | Invoice No. 17925 | | |
| 15642 | PAY | B  Hall/United States | (8716.29) |
| 4/11/2013 | G:17937 | P  29082 | |
| | Payment - Thank You. Check No. 29082 | | |
| 15680 | INV | B  Hall/United States | 10554.72 |
| 5/16/2013 | G:17937 | | |
| | Invoice No. 17937 | | |
| 15798 | PAY | B  Hall/United States | (10554.72) |
| 6/21/2013 | G:18013 | P  29600 | |
| | Payment - Thank You. Check No. 29600 | | |
| 15818 | INV | B  Hall/United States | 1265.00 |
| 6/25/2013 | G:18013 | | |
| | Invoice No. 18013 | | |
| 15923 | PAY | B  Hall/United States | (1265.00) |
| 8/2/2013 | G:18579 | P  29812 | |
| | Payment - Thank You. Check No. 29812 | | |
| 17039 | INV | B  Hall/United States | 307.50 |
| 12/4/2014 | G:18579 | | |
| | Invoice No. 18579 | | |

| Grand Total | | |
| Invoice | | 45843.51 |
| Payment | | (45536.01) |

EXHIBIT 2

3/11/2015                          Mohrman, Kaardal & Erickson, P.A.
9:08 AM                              A/R Transaction Listing                        Page      2

| ID | | Type | Client | | Total |
|---|---|---|---|---|---|
| | Date | Invoice # | Check Number | | |

EXHIBIT 2

**EXHIBIT 3**
**CONSTITUIONAL AND APPELLATE COURT EXPERIENCE**
**MOHRMAN, KAARDAL & ERICKSON, P.A.**
**AND ITS ATTORNEYS (1997-Current)**

**1. Annex Medical, Inc. v. Burwell, United States Court of Appeals, Eighth Circuit. September 05, 2014 --- F.3d ---- 2014 WL 4378763 13-1118**

Background: Employer that sponsored employees' group health insurance plan, and its controlling shareholder, brought action challenging contraceptive mandate under the Patient Protection and Affordable Care Act (ACA). The United States District Court for the District of Minnesota, David S. Doty, J., 2013 WL 203526, denied plaintiffs' motion for a...

...District Court for the District of Minnesota—Minneapolis Erick G. Kaardal , argued, Minneapolis, MN ( Kaylan Lytle Phillips , and Noel Johnson , Plainfield...

**2. 281 Care Committee v. Arneson, United States Court of Appeals, Eighth Circuit. September 02, 2014 --- F.3d ---- 2014 WL 4290372 13-1229**

CIVIL RIGHTS - Free Speech. Minnesota statute criminalizing making false statements about ballot initiatives violated First Amendment.

...District Court for the District of Minnesota—Minneapolis William F. Mohrman , argued, Minneapolis, MN ( Erick G. Kaardal and James V.F. Dickey , on the brief), for appellants. John...

**3. Maple Bank v. St. Louis Park Public School Dist. No. 283, Court of Appeals of Minnesota. June 30, 2014 Not Reported in N.W.2d 2014 WL 2921941 A13-2102**

On appeal from summary judgment in this commercial-lease dispute, appellant argues that the district court erred by concluding that Rea Properties materially breached its lease with respondents. Appellant also argues that the district court abused its discretion by denying its motion to strike some of respondents' evidence and by denying its motion...

...District Court, File No. 27–CV–13–1813. William F. Mohrman James V.F. Dickey , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant. Jessica E. Schwie , Jardine, Logan...

**4. Walker v. Jesson, Court of Appeals of Minnesota. May 05, 2014 Not Reported in N.W.2d 2014 WL 1758210 A13-0986**

We affirm the district court's dismissal of appellant's challenge to the department of human services' expenditure of public funds to provide indigent women with abortions because appellants fail to establish taxpayer standing by alleging conduct that constitutes an unlawful expenditure. In November 2012, appellants Denise and Brian Walker sued the...

...amicus curiae American Civil Liberties Union of Minnesota. Erick G. Kaardal James R. Magnuson , Mohrman & Kaardal, PA, Minneapolis, MN; and Teresa S. Collett (pro hac vice...

**5. Dean v. City of Winona, Court of Appeals of Minnesota. February 24, 2014 843 N.W.2d 249 2014 WL 684689 A13-1028**

REAL PROPERTY - Zoning and Planning. Ordinance capping at 30% number of lots on any block eligible for rental certification was not unconstitutional.

...MN, for amicus curiae League of Minnesota Cities. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN. Daniel E. Frank , (pro hac vice), Sutherland...

EXHIBIT 3

**6. Minnesota Voters Alliance v. Anoka Hennepin School Dist., Court of Appeals of Minnesota. December 23, 2013 Not Reported in N.W.2d 2013 WL 6725847 A13-0769**

Relators challenge a decision of an administrative-law judge (ALJ) dismissing as untimely their complaint against respondent school district that alleged violations of the Minnesota Campaign Financial Reports Act, Minn.Stat. §§ 211A.01–.14 (2012), and the Minnesota Fair Campaign Practices Act, Minn.Stat. §§...

...of Administrative Hearings, File No. 8–0325–030140. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for relators. Lori Swanson , Attorney General, St...

**7. In re Morath, Court of Appeals of Minnesota. December 16, 2013 Not Reported in N.W.2d 2013 WL 6569964 A13-0786**

We affirm the district court's denial of a motion requesting declaratory judgment that the work of the Wabasha County Government Study Commission was void because appellants do not contest the district court's finding that the motion was moot. In December 2011, the Wabasha County Board of Commissioners abolished its county administrator position....

...District Court, File No. 79–CV–11–1269. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellants Norman and Snow. James Nordstrom...

**8. Buffets, Inc. v. Leischow, United States Court of Appeals, Eighth Circuit. October 21, 2013 732 F.3d 889 2013 WL 5677038 12-2804**

BANKRUPTCY - Jurisdiction. Diversity provided basis for jurisdiction over action removed on basis of "related to" bankruptcy jurisdiction.

...presented argument on behalf of the appellant was William F. Mohrman, of Minneapolis, MN. The following attorney(s) appeared on the...

**9. Wolfchild v. U.S., United States Court of Appeals, Federal Circuit. September 27, 2013 731 F.3d 1280 2013 WL 5405505 2012-5035, 2012-5036, 2012-5043**

NATIVE AMERICANS - Lands. Descendants of tribe members did not show that legislation was money-mandating.

...original tribal relations, with lack of unitary organization. Erick G. Kaardal , Mohrman & Kaardal, P.A., of Minneapolis, MN, argued for plaintiffs-cross appellants, Sheldon...

**10. Minnesota Voters Alliance v. Ritchie, United States Court of Appeals, Eighth Circuit. August 02, 2013 720 F.3d 1029 2013 WL 3958348 12-2946**

GOVERNMENT - Elections. Voters failed to state a §1983 claim challenging the Minnesota election procedure for verifying election day registrants.

...5–120(14) 524.5–313(c)(8) Erick G. Kaardal , argued, Minneapolis, MN, for Appellants. Nathan J. Hartshorn , AAG, argued...

**11. InCompass IT, Inc. v. XO Communications Services, Inc., United States Court of Appeals, Eighth Circuit. June 26, 2013 719 F.3d 891 2013 WL 3198183 12-2868, 12-2829**

COMMERCIAL LAW - Jury. Equitable nature of promissory estoppel claim against lessee foreclosed lessor's right to jury trial.

...of the unenforceable agreement. M.S.A. §513.05 Erick G. Kaardal , argued and on the brief,

2

EXHIBIT 3

Minneapolis, MN, for appellants/cross...

**12. Slaven v. Engstrom, United States Court of Appeals, Eighth Circuit. March 22, 2013 710 F.3d 772 2013 WL 1164433 12-1457**

CIVIL RIGHTS - Municipal Liability. There was no evidence that county policy caused alleged due process violations against parents during child protection case.

...violations. U.S.C.A. Const.Amend. 14 42 U.S.C.A. §1983 Erick G. Kaardal , argued, Minneapolis, MN, for Appellant. Daniel Patrick Rogan , argued, Minneapolis...

**13. Minnesota Majority v. Mansky, United States Court of Appeals, Eighth Circuit. March 06, 2013 708 F.3d 1051 2013 WL 811728 11-2125**

CIVIL RIGHTS - Free Speech. Minnesota statute prohibiting display of political materials at polling place did not facially violate right to free speech.

...delegating discretion to election judges. U.S.C.A. Const.Amend. 14 Erick G. Kaardal , argued, Minneapolis, MN, for appellants. Daniel Patrick Rogan , argued, Minneapolis...

**14. Annex Medical, Inc. v. Sebelius, United States Court of Appeals, Eighth Circuit. February 01, 2013 Not Reported in F.3d 2013 WL 1276025 13-1118**

Appellants Annex Medical, Inc. and Stuart Lind have moved for a preliminary injunction pending appeal against enforcement of certain mandatory coverage provisions of the Patient Protection and Affordable Care Act of 2010. In their complaint filed in the district court, the appellants challenged provisions of the statute and implementing regulations...

...Kaylan Lytle Phillips , Actright Legal Foundation, Plainfield, IN, Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for Plaintiffs-Appellants. Kaylan Lytle Phillips , U.S...

**15. Limmer v. Ritchie, Supreme Court of Minnesota. August 27, 2012 819 N.W.2d 622 2012 WL 3642681 A12-1258, A12-1149**

GOVERNMENT - Elections. Secretary exceeded his authority by providing titles for proposed constitutional amendment ballot questions.

...1 (2010) , is the title designated by the Legislature Erick Kaardal , Mohrman Kaardal, P.A., Minneapolis, MN, Austin R. Nimocks Jordan Lorence , Alliance Defending...

**16. League of Women Voters Minnesota v. Ritchie, Supreme Court of Minnesota. August 27, 2012 819 N.W.2d 636 2012 WL 3643840 A12-0920**

GOVERNMENT - Elections. Ballot question for proposed "voter identification" amendment to State Constitution did not itself violate the Constitution.

...PLLC, Alexandria, VA, for amicus curiae Minnesota Majority. Erick G. Kaardal William F. Mohrman , Mohrman & Kaardal, P.A., Minneapolis, MN, for amici curiae State Senator Scott J...

**17. Abrahamson v. St. Louis County School Dist., Supreme Court of Minnesota. August 10, 2012 819 N.W.2d 129 2012 WL 3236801 A10-2162**

EDUCATION - Finance. School district was a corporation within the meaning of the Campaign Financial Reports Act and Fair Campaign Practices Act.

...prima facie violation of Minn.Stat. §211B.06 Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for respondents Abrahamson and Kotzian. Stephen M...

EXHIBIT 3

**18. State v. Fellegy, Court of Appeals of Minnesota. July 11, 2012 819 N.W.2d 700 2012 WL 2849606 A11-1097**

CRIMINAL JUSTICE - Selective Prosecution. Defendant charged with taking fish out of season failed to establish equal protection based claim of selective prosecution.

...Smith , Assistant County Attorney, Aitkin, MN, for respondent. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant. Considered and decided by WRIGHT...

**19. State v. Wendorf, Court of Appeals of Minnesota. March 19, 2012 814 N.W.2d 359 2012 WL 896358 A11-838**

CRIMINAL JUSTICE - Traffic Offenses. Seat belt statute allowed officer to stop motorist solely for seat belt violation.

...the City of Anoka, Anoka, MN, for respondent. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant. Considered and decided by KALITOWSKI...

**20. Rechtzigel v. Commissioner of Public Safety, Court of Appeals of Minnesota. January 23, 2012 Not Reported in N.W.2d 2012 WL 177368 A11-1123**

On appeal from the district court's decision sustaining the revocation of appellant's driver's license under the implied-consent law, appellant argues that (1) his statements to the police officer should be suppressed because he was in custody at the time he made the statements, but the requisite Miranda warning was not given; (2) the officer's...

...2012. Dakota County District Court; File No. 19AVCV10669. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant. Lori Swanson , Attorney General, Kristi...

**21. McCaughtry v. City of Red Wing, Supreme Court of Minnesota. December 28, 2011 808 N.W.2d 331 2011 WL 6783813 A10-0332**

CIVIL RIGHTS - Declaratory Judgment. Challenge to constitutionality of rental inspection ordinance presented justiciable controversy.

...amicus curiae St. Paul Association of Responsible Landlords. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for amici curiae legal scholars Ryan Scott...

**22. McGrath v. Minnesota Secretary of State, Court of Appeals of Minnesota. November 21, 2011 Not Reported in N.W.2d 2011 WL 5829345 A11-613**

GOVERNMENT - Elections. Counties' delay of inputting voter registration data into statewide system did not establish that secretary of state had violated Help America Vote Act (HAVA).

...Administrative Hearings, File No. 15–3500–21801–HV. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for relators. Lori Swanson , Attorney General, Nathan...

**23. R.C. Smith Co. v. Commercial Environments, Inc., Court of Appeals of Minnesota. August 29, 2011 Not Reported in N.W.2d 2011 WL 3795149 A11-363**

In this contract dispute, appellant challenges the district court's orders denying its motion for summary judgment on an unjust-enrichment claim, dismissing the claim, and imposing sanctions for pursuing the claim to judgment. By notice of related appeal, respondent argues that the court abused its discretion by declining to adopt respondent's...

...Terry , Messerli & Kramer, P.A., Minneapolis, MN, for appellant. William F. Mohrman James R. Magnuson , Mohrman & Kaardal, P.A., Minneapolis, MN, for respondent. Considered and decided by HALBROOKS...

EXHIBIT 3

**24. Storms v. Schneider, Court of Appeals of Minnesota. August 08, 2011 802 N.W.2d 824 2011 WL 3426034 A10-1876**

COMMERCIAL LAW - Replevin. Action seeking to recover religious statue from its creator was a replevin action for which a right to jury trial applied.

...Pugh , Bassford Remele, P.A., Minneapolis, MN, for respondent. Erick G. Kaardal William F. Mohrman , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant. Considered and decided by JOHNSON...

**25. Abrahamson v. St. Louis County School Dist., Court of Appeals of Minnesota. August 01, 2011 802 N.W.2d 393 2011 WL 3241873 A10-2162**

EDUCATION - School Districts. School district expenditures to promote ballot referendum were subject to campaign finance reporting requirements.

...constitute "disbursements" under Minnesota Statutes, chapter 211 A. Erick G. Kaardal , Mohrman & Kaardal P.A., Minneapolis, MN, for relators. Stephen M. Knutson Michelle D...

**26. American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Academy, United States Court of Appeals, Eighth Circuit. July 07, 2011 643 F.3d 1088 2011 WL 2637701 10-2326**

EDUCATION - Parties. Parents' motion to intervene was untimely in action alleging charter school's methods violated Establishment Clause.

...its decision. Michael W. McConnell , argued, Stanford, CA, Erick G. Kaardal , on the brief, Minneapolis, MN, for appellant. Peter McCreery Lancaster...

**27. S.R. Wiedema, Inc. v. Sienna Corp., Court of Appeals of Minnesota. June 06, 2011 Not Reported in N.W.2d 2011 WL 2201084 A10-750**

Appellant challenges the district court's summary-judgment determination that respondent's mortgage takes priority over appellant's mechanic's lien. Appellant argues that the undisputed evidence establishes that respondent had actual notice of appellant's lien or that the actual and visible beginning of the improvement to the land preceded the...

...P.A., Minneapolis, Minnesota (for respondent Village Bank). Vincent J. Fahnlander , Mohrman & Kaardal, P.A., Minneapolis, Minnesota (for appellant Pioneer Engineering, P.A.). Considered and...

**28. 281 Care Committee v. Arneson, United States Court of Appeals, Eighth Circuit. April 28, 2011 638 F.3d 621 2011 WL 1584724 10-1558**

GOVERNMENT - Elections. Knowingly false campaign speech is not categorically outside protection of First Amendment.

...meet a compelling government interest. U.S.C.A. Const.Amend. 1 Erick G. Kaardal , argued, William F. Mohrman , on the brief, Minneapolis, MN, for appellant. Jean Burdorf , argued...

**29. A.L.S. ex rel. J.P. v. E.A.G., Court of Appeals of Minnesota. October 26, 2010 Not Reported in N.W.2d 2010 WL 4181449 A10-443**

FAMILY LAW - Assisted Reproduction. Surrogate was the legal and biological mother of a child under Minnesota's Parentage Act.

...Court, File No. 27-PA-FA-07-909. William F. Mohrman , Mohrman & Kaardal, P.A., Minneapolis, MN; and Samantha J. Gemberling , Gemberling Law Office...

EXHIBIT 3

**30. In re Teacher Licensures at Tarek IBN Ziyad Academy, Court of Appeals of Minnesota. August 17, 2010 Not Reported in N.W.2d 2010 WL 3220117 A09-2267**

The commissioner of education assessed a penalty against relator under Minn.Stat. § 127A.42 (2008) for noncompliance with teacher-licensure requirements. Relator challenges the penalty, asserting multiple claims of error. We affirm. Relator Tarek ibn Ziyad Academy (TiZA), a Minnesota public charter school, is required to abide by all...

...2267. Aug. 17, 2010. Minnesota Department of Education Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for relator. Lori A. Swanson , Attorney General...

**31. In re North Shore Pines Trust Agreement, Court of Appeals of Minnesota. April 27, 2010 Not Reported in N.W.2d 2010 WL 1657566 A09-1159**

Appellant argues that the district court erred by granting summary judgment to respondents based on a determination that certain amendments to a trust agreement are valid and enforceable. Because there are no genuine issues of material fact and because the district court did not err in its application of the law, we affirm. This dispute relates to...

...Court, File No. 27-TR-CV-08-139. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant Ronald Smith. Matthew T. Boos...

**32. Barry v. St. Anthony-New Brighton Independent School Dist. 282,**
**Court of Appeals of Minnesota. April 20, 2010 781 N.W.2d 898 2010 WL 1541307 A09-1093**

EDUCATION - School Districts. Complaint against school district and school board failed to allege prima facie campaign finance violation.

...a violation of chapter 211A or 211 B. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for relators. James E. Knutson , Knutson Flynn...

**33. Paulownia Plantations de Panama Corp. v. Rajamannan, Supreme Court of Minnesota. November 05, 2009 793 N.W.2d 128 2009 WL 3644186 A07-2199**

Background: Corporation created for purposes of investing in tree lumber business owner's operations in Panama brought action against owner and his Panamanian businesses, asserting breach of contract and other claims. Defendants filed motion to dismiss under doctrine of forum non conveniens. The District Court, Anoka County, Barry A....

...protected by an order making the dismissal conditional. William F. Mohrman Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for respondent. Gary Hansen Aaron Mills Scott...

**34. Faegre & Benson, LLP v. R & R Investors, Court of Appeals of Minnesota. September 29, 2009 772 N.W.2d 846 2009 WL 3077629 A08-1899**

BUSINESS ORGANIZATIONS - Partnerships. Tucker Act claim remained property of partnership following dissolution and subsequent continuation of the business.

...without need for separate devise of that property. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellants R & R Investors, et al...

EXHIBIT 3

**35. City of Ramsey v. Kiefer, Court of Appeals of Minnesota. August 25, 2009 Not Reported in N.W.2d 2009 WL 2595890 A08-1714**

In this certiorari appeal, relator challenges respondent city's notice to relator to abate a nuisance based on its conclusion that a vehicle is parked on relator's property in violation of a city ordinance. Because the city's decision is not supported by evidence in the record and is based on an error of law, we reverse. Relator Keith A. Kiefer is...

...Sonsalla , Kennedy & Graven, Chtd., Minneapolis, MN, for respondent. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for relator. Considered and decided by BJORKMAN...

**36. Citizens for Rule of Law v. Senate Committee on Rules & Admin.**
**Court of Appeals of Minnesota. July 28, 2009 770 N.W.2d 169 2009 WL 2225635 A08-1343**

GOVERNMENT - Public Officials. Increase in legislators' per diem allowances did not violate state constitution.

...section's prohibition against same-term increases to compensation. Erick G. Kaardal , Mohrman & Kaardal, P.A.; Daniel J. Biersdorf , Biersdorf & Associates, Minneapolis, MN, for appellants...

**37. Minnesota Voters Alliance v. City of Minneapolis, Supreme Court of Minnesota. June 11, 2009 766 N.W.2d 683 2009 WL 1617771 A09-182**

GOVERNMENT - Elections. Instant runoff voting, as adopted by city residents through referendum, was not facially unconstitutional.

...Smallwood, 130 Minn. 492, 153 N.W. 953 (1915) Erick Gregg Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellants. Susan Lee Segal , Minneapolis City...

**38. Wolfchild v. U.S., United States Court of Appeals, Federal Circuit. March 10, 2009 559 F.3d 1228 2009 WL 592459 2008-5018**

NATIVE AMERICANS - Lands. Appropriations Acts did not create trust for benefit of loyal Mdewakanton and their lineal descendants.

...temporary use and occupancy rights. U.S.C.A. Const.Amend. 5 Erick G. Kaardal , Mohrman & Kaardal P.A., of Minneapolis, MN, argued for all plaintiffs-appellees Sheldon...

**39. Paulownia Plantations de Panama Corp. v. Rajamannan, Court of Appeals of Minnesota. December 09, 2008 757 N.W.2d 903 2008 WL 5136819 A07-2199**

LITIGATION - Jurisdiction. Panama was not available forum for suit, such that dismissal under doctrine of forum non conveniens was improper.

...balancing of the public- and private-interest factors. William F. Mohrman Erick G. Kaardal Tona T. Dove , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant. Gary Hansen Aaron Mills Scott...

**40. Houston County v. Solum, Court of Appeals of Minnesota. September 16, 2008 Not Reported in N.W.2d 2008 WL 4224493 A07-1408, A07-2115**

In these consolidated appeals, appellant-relator Matthew Solum challenges (1) the district court's determination that his property does not conform with Houston County's zoning ordinance and (2) the

EXHIBIT 3

county's subsequent denial of his application for a conditional-use permit. We affirm. In October 2005, Solum purchased a house and approximately eight...

...Houston County and Houston County Board of Commissioners. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant Matthew Solum and relators Matthew...

### 41. Shepherd v. Stade, Court of Appeals of Minnesota. June 03, 2008 Not Reported in N.W.2d 2008 WL 2246259 A07-1220

Appellant challenges the district court's denial of her motion to dismiss respondent's complaint on the ground that it is barred by the doctrine of sovereign immunity. Appellant asserts that the Shakopee Mdewakanton Sioux Community (the tribe) is an indispensable party to the suit and that, because the tribe cannot be joined, the suit must be...

...District Court, File No. 70-CV-07-6059. Erick G. Kaardal William F. Mohrman , Mohrman & Kaardal, P.A., Minneapolis, MN, for respondent. Kevin J. Wetherille Dennis Patrick...

### 42. Evelyn I. Rechtzigel Trust ex rel. Rechtzigel v. Fidelity Nat. Title Ins. Co. of New York Court of Appeals of Minnesota. May 06, 2008 748 N.W.2d 312 2008 WL 1971976 A07-0645

INSURANCE - Title. Title insurance did not cover losses incurred arising out of bankruptcy of qualified intermediary in like-kind exchange.

...duty to defend under a title insurance policy. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant. Ryan R. Dreyer Eric Nasstrom...

### 43. Johnson v. City of Shorewood, Court of Appeals of Minnesota. February 19, 2008 Not Reported in N.W.2d 2008 WL 434680 A06-2353

Appellant Ronald Johnson challenges the district court's grant of summary judgment in favor of all named respondents. Appellant argues that the district court erred by (1) denying his request for a declaratory judgment and an additional takings proceeding under Minn.Stat. § 117.045 (2006), based on "[r]espondents' future, continued and increased...

...District Court, File No. 27-CV-04-016195. Erick G. Kaardal , Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant. George C. Hoff Kimberly B...

### 44. Star Windshield Repair, Inc. v. Western Nat. Ins. Co., Court of Appeals of Minnesota. February 05, 2008 744 N.W.2d 237 2008 WL 314457 A07-216, A07-217, A07-830

INSURANCE - Automobile. Anti-assignment clauses validly applied to post-loss assignments of right to payment for windshield repairs.

...MN, for respondent Western National Insurance Co. Steven R. Kluz , Mohrman & Kaardal, P.A., Minneapolis, MN, for respondent Austin Mutual Insurance Company. Leatha...

### 45. State v. Otterstad, Supreme Court of Minnesota. July 12, 2007 734 N.W.2d 642 2007 WL 2003314 A05-178, A05-179

CRIMINAL JUSTICE - Nuisance. State did not prove defendants maintained condition that endangered public safety when they displayed political signs.

...defense to the ordinance they allegedly violated. Charles R. Shreffler , Mohrman & Kaardal, P.A., Minneapolis, MN, Alan E. Untereiner Daniel R. Walfish , Robbins...

EXHIBIT 3

**46. Glass Service Co., Inc. v. Illinois Farmers Ins. Co., Court of Appeals of Minnesota. June 26, 2007 Not Reported in N.W.2d 2007 WL 1815781 A06-1074**

On appeal from the district court order confirming the arbitrators' awards of damages in multiple, individual, consolidated claims under the no-fault law, in which respondent sought additional payments for automobile windshield glass repair and replacement work it had performed for appellant's insureds, appellant argues that the arbitrators...

...Morgan , Minneapolis, MN; and Steven R. Kluz, Jr. Gregory Erickson Mohrman & Kaardal, P.A. , Minneapolis, MN, for appellant. Considered and decided by RANDALL...

**47. In re GlaxoSmithKline plc, Supreme Court of Minnesota. June 07, 2007 732 N.W.2d 257 2007 WL 1630190 A04-2150**

LITIGATION - Discovery. Trial court may issue protective order to prevent chill on First Amendment association rights.

...B. Civello , St. Paul, MN, for Respondent. Charles R. Shreffler Mohrman & Kaardal , Minneapolis, MN, Elizabeth B. McCallum Howrey LLP Margaret M. Zwisler...

**48. State ex rel. Sviggum v. Hanson, Court of Appeals of Minnesota. May 22, 2007 732 N.W.2d 312 2007 WL 1470300 A06-840**

GOVERNMENT - Budget. Quo warranto could not be used to challenge the constitutionality of completed disbursements of public funds.

...is capable of resolution through the judicial process. Erick G. Kaardal William F. Mohrman Mohrman & Kaardal, P.A. , Minneapolis, MN, for appellants. Lori Swanson , Attorney General, Kenneth...

**49. Mellby v. Cass County, Court of Appeals of Minnesota. April 03, 2007 Not Reported in N.W.2d 2007 WL 968633 A06-80, A06-299**

In these consolidated land-use appeals, relators argue that (1) the county's findings under the zoning ordinance are inadequate to allow review of the county's grant of a preliminary conditional use permit and planned unit development; (2) the planning commission misunderstood aspects of the zoning ordinance, including misunderstanding it to...

...Falls, MN, for respondent Cass County Planning Commission. William F. Mohrman Gregory M. Erickson Mohrman & Kaardal, P.A. , Minneapolis, MN, for respondent Bryan Walker. Considered and decided...

**50. In re Charges of Unprofessional Conduct Involving File No. 17139, Supreme Court of Minnesota. September 07, 2006 720 N.W.2d 807 2006 WL 2564384 A05-1955**

LEGAL SERVICES - Discipline. Request for identity of attorney's sources for statement about judge was reasonable.

...St Paul MN, for Lawyers Professional Responsibility Board. William F. Mohrman Charles R. Shreffler Mohrman & Kaardal, P.A. , Minneapolis MN, for Respondent Attorney in File No. 17139...

**51. Republican Party of Minn. v. White, United States Court of Appeals, Eighth Circuit. June 20, 2006 456 F.3d 912 2006 WL 1687468 99-4021, 99-4025, 99-4029**

JUDICIAL ADMINISTRATION - Judges. Attorney fees in excess of $1.5 million were awarded in challenge to judicial canons regulating political activity.

...Thomas J. Marzen Bopp & Coleson , Terre Haute, IN, Erick G. Kaardal Mohrman & Kaardal, P.A. , Minneapolis, MN, Tony P. Trimble Matthew Wayne Haapoja Trimble & Associates , Minnetonka, MN,

EXHIBIT 3

for Plaintiffs-Appellants. William F. Mohrman Mohrman & Kaardal, P.A. , Minneapolis, MN, for Plaintiff. Mark Bernard Levinger Thomas Campion...

**52. Riley v. Jankowski, Court of Appeals of Minnesota. April 26, 2006 713 N.W.2d 379 2006 WL 1147945 A05-1125**

GOVERNMENT - Elections. Statute requiring a disclaimer on campaign literature was overbroad and unconstitutionally restricted pure speech.

...Paul, MN, for respondent Office of Administrative Hearings. Erick G. Kaardal William F. Mohrman Mohrman & Kaardal, P.A. , Minneapolis, MN, for relators Stephen Jankowski, et al. Considered...

**53. In re GlaxoSmithKline plc, Court of Appeals of Minnesota. April 18, 2006 713 N.W.2d 48 2006 WL 997450 A04-2150**

ANTITRUST - Discovery. Pharmaceutical company documents, sought by Attorney General, were not confidential.

...Steen & Hamilton, Washington, D.C., for respondent GlaxoSmithKline plc. William F. Mohrman Mohrman & Kaardal , Minneapolis, MN, for amicus curiae Pharmaceutical Research and Manufacturers of...

**54. Peterson v. BASF Corp., Supreme Court of Minnesota. March 30, 2006 711 N.W.2d 470 2006 WL 799218 C3-02-857**

ENVIRONMENTAL LAW - Pesticides. Farmers' claims of deceptive herbicide marketing were not preempted by FIFRA.

...Reform Association and Amicus American Tort Reform Association. William F. Mohrman Mohrman & Kaardal , P. A., Minneapolis, MN, for Amicus Washington Legal Foundation. Scott...

**55. Ellingson v. Burlington Northern and Santa Fe Ry. Co., Court of Appeals of Minnesota. March 21, 2006 Not Reported in N.W.2d 2006 WL 696315 A05-650**

Background: Motorist's husband brought a negligence action against railroad after motorist died after being involved in a collision with a train. The District Court, Isanti County, granted railroad summary judgment. Motorist and railroad appealed. Holding: The Court of Appeals, Wright, P.J., held that negligence claim asserted by motorist's husband...

...County District Court, File No. C7-02-712. William F. Mohrman Erick G. Kaardal Charles R. Shreffler Mohrman & Kaardal, P.A. , Minneapolis, MN, for appellant. Julius W. Gernes JoAnn C...

**56. State v. Otterstad, Court of Appeals of Minnesota. December 27, 2005 Not Reported in N.W.2d 2005 WL 3527236 A05-178, A05-179**

In these consolidated appeals from their convictions for creating a public nuisance and violating a city sign ordinance, appellants argue that they did not act intentionally or "maintain a condition" that would violate the nuisance statute; as applied to them and facially, the nuisance statute is an unconstitutional content-based......J. Scott , Anoka, MN, for respondent. Charles R. Shreffler, Jr. Mohrman & Kaardal, P.A. , Minneapolis, MN, for appellants. Considered and decided by WILLIS...

**57. Republican Party of Minnesota v. White, United States Court of Appeals, Eighth Circuit. August 02, 2005 416 F.3d 738 2005 WL 1802507 99-4021, 99-4025, 99-4029**

JUDICIAL ADMINISTRATION - Judges. Restricting political activities of candidates for judicial office violated First Amendment.

EXHIBIT 3

...Jud. Conduct, Canon 5 , subd. B(1)(a). William F. Mohrman Mohrman & Kaardal, P.A. , argued, Minneapolis, MN, for Gregory Wersal, Campaign for Justice...

**58. In re GlaxoSmithKline PLC, Supreme Court of Minnesota. July 14, 2005 699 N.W.2d 749 2005 WL 1645638 A04-2150, A04-2151**

LITIGATION - Discovery. Order addressing confidentiality of documents produced on Civil Investigative Demand was appealable.

...Gottlieb Steen & Hamilton , Washington, D.C., for Respondent. Charles R. Shreffler Mohrman & Kaardal , Minneapolis, MN, Margaret M. Zwisler Elizabeth B. McCallum , Washington, D.C...

**59. Jerome Cheese Co. v. Equinox Enterprises, Inc., Court of Appeals of Minnesota. June 28, 2005 Not Reported in N.W.2d 2005 WL 1514452 A04-1960**

Appellant Jerome Cheese Company asserts that the district court clearly erred by finding that the parties entered into a valid brokerage agreement as part of a settlement agreement placed on the record. Despite the finding, the district court granted appellant's motion to dismiss this action with prejudice under the terms of the settlement...

...L.L.P ., New Ulm, MN, for appellant. Charles R. Shreffler, Jr. Mohrman & Kaardal, P.A. , Minneapolis, MN, for respondents. Considered and decided by STONEBURNER...

**60. Forest Park II v. Hadley, United States Court of Appeals, Eighth Circuit. May 24, 2005 408 F.3d 1052 2005 WL 1214328 04-2599**

REAL PROPERTY - Subsidized Housing. Government actors did not violate low-income landlord's right to prepay its federal mortgage.

...as Preempted Minn.Stat. Ann. §§471.9997 504B.255 William F. Mohrman , argued, Minneapolis, MN, for appellant. Amy V. Kvalseth , AAG, argued...

**61. Twin City Pipe Trades Service Ass'n, Inc. v. Peak Mechanical, Inc., Court of Appeals of Minnesota. December 07, 2004 689 N.W.2d 549 2004 WL 2796039 A04-356**

REAL PROPERTY - Liens. Employment-benefit fund trustee could file mechanic's lien statements on behalf of union employees.

...labor of the employees. Vincent J. Fahnlander Eric L. Lipman Mohrman & Kaardal, P.A. , Minneapolis, MN, for respondent. John M. Koneck Brian S...

**62. Republican Party of Minn., Third Congressional Dist. v. Klobuchar, United States Court of Appeals, Eighth Circuit. August 26, 2004 381 F.3d 785 2004 WL 1900318 03-2801**

GOVERNMENT - Elections. As-applied challenges to campaign statute were mooted when prosecution of candidate was dismissed.

...as Unconstitutional M.S.A. §211B.06, subd. 1 William F. Mohrman , argued, Minneapolis, MN ( Erick G. Kaardal and Eric L. Lipman of Minneapolis, MN, on the brief...

**63. Republican Party of Minnesota v. White, United States Court of Appeals, Eighth Circuit. March 16, 2004 361 F.3d 1035 2004 WL 503674 99-4025, 99-4021, 99-4029**

CIVIL RIGHTS - Appeals. Remand by Supreme Court necessitated Court of Appeals' remand for further proceedings on affected issues.

EXHIBIT 3

...Const.Amend. 1 James Bopp , argued, Terre Haute, IN ( William F. Mohrman , Minneapolis, MN of counsel), for appellant. Alan I. Gilbert , argued...

**64. Johnson v. City of Shorewood, Minnesota, United States Court of Appeals, Eighth Circuit. March 05, 2004 360 F.3d 810 2004 WL 405692 03-2023, 02-4081, 02-3562**

LITIGATION - Jurisdiction. Rooker–Feldman doctrine deprived court of jurisdiction over property owners' claims.

...federal claims. 28 U.S.C.A. §1367(c)(3) Erick G. Kaardal , argued, Minneapolis, Minnesota, for appellants/cross-appellees. George C. Hoff...

**65. Peterson v. BASF Corp., Supreme Court of Minnesota. February 19, 2004 675 N.W.2d 57 2004 WL 307317 C3-02-857**

COMMERCIAL LAW - Consumer Protection. Evidence supported $52,058,931.51 damages award in class action against herbicide maker.

...Francisco, CA, for Amicus Curiae Minnesota Farmers Union. William F. Mohrman Mohrman & Kaardal , Minneapolis, MN, Daniel J. Popeo Richard A. Samp Washington Legal...

**66. In re Conservatorship of Kimel, Court of Appeals of Minnesota. December 09, 2003 Not Reported in N.W.2d 2003 WL 22889998 A03-35**

In an order on an account in a conservatorship, the district court surcharged conservator Louise Bouta and her surety for breach of a fiduciary duty in Bouta's management of Thomas Kimel's estate. Bouta appeals on three grounds: that inadequate notice of the nature of the alleged breach and potential personal liability violated her...

...District Court, File No. P6001276; Thorwald Anderson , Judge. Erick G. Kaardal Mohrman & Kaardal, P.A. , Minneapolis, MN, for appellant Louise Bouta. Stephen C. Fiebiger...

**67. Forest Park II v. Hadley, United States Court of Appeals, Eighth Circuit. July 17, 2003 336 F.3d 724 2003 WL 21664818 02-2445, 02-2609**

REAL PROPERTY - Subsidized Housing. State statutes imposing extra requirements on federally subsidized housing landlord's prepayment were preempted.

...Minn.Stat. Ann. §504B.255 Minn.Stat. Ann. §471.9997 William F. Mohrman , argued, Minneapolis, MN, for appellant. Ann Marie Norton , argued, St...

**68. Peterson v. BASF Corp., Court of Appeals of Minnesota. March 11, 2003 657 N.W.2d 853 2003 WL 943659 C3-02-857**

COMMERCIAL LAW - Consumer Protection. FIFRA did not preempt farmers' consumer fraud

EXHIBIT 3

action against herbicide manufacturer.

...Minneapolis, MN, for amicus Product Liability Advisory Council. William F. Mohrman Morhman & Kaardal , Minneapolis, MN, for amicus Washington Legal Foundation. Considered and decided...

**69. Walser Auto Sales, Inc. v. City of Richfield, Supreme Court of Minnesota. May 23, 2002 644 N.W.2d 425 2002 WL 1033814 C4-01-694**

Based upon all the files, records and proceedings herein, and upon an evenly divided court, IT IS HEREBY ORDERED that the decision of the court of appeals filed November 13, 2001, be, and the same is, affirmed without opinion. BY THE COURT: Kathleen A. Blatz Chief Justice

...Amicus Curiae Minnesota Institute of Public Finance, Inc. Erick G. Kaardal (#229647), Minneapolis, MN, William H. Mellor Dana Berliner (#447686), Robert...

**70. Republican Party of Minnesota v. Kelly, United States Court of Appeals, Eighth Circuit. April 30, 2001 247 F.3d 854 2001 WL 434484 99-4021, 99-4025, 99-4029**

GOVERNMENT - Elections. Restrictions on judicial candidate's partisan activity did not violate First Amendment.

...Code of Jud.Conduct, Canon 5 , subd. B(2). William R. Mohrman, Minneapolis, Minnesota, argued, for appellants Gregory Wersal and Campaign for Justice. Tony P. Trimble , Minnetonka, Minnesota, argued ( Erick G. Kaardal and Robert S. Halagan , on the brief), for appellants Muslim...

**71. Brewster v. Kriz, Court of Appeals of Minnesota. September 19, 2000 Not Reported in N.W.2d 2000 WL 1341472 C5-00-614**

James J. Kriz, Jr., appeals the district court's denial of his motion for relief under Minn.R.Civ.P. 60.02 from an order establishing an attorney's lien on behalf of respondent Fredrikson & Byron, P.A. We affirm. In April 1996, appellant James J. Kriz, Jr., retained respondent Fredrikson & Byron, P.A., as his counsel in connection with post-decree...

...Respondent. No. C5-00-614. Sept. 19, 2000. William F. Mohrman Mohrman & Kaardal, P.A. , Minneapolis, MN, for appellant. Jay Quam Judy Sally Engel...

**72. Funchess ex rel. Haynes v. Cecil Newman Corp., Minnesota Supreme Court. 632 N.W.2d 666 August 23, 2001 632 N.W.2d 666 2001 WL 952827 C8-00-90.**

REAL PROPERTY - Landlord and Tenant. Tenant's murder was not foreseeable result of landlord's alleged failure to maintain lock on back door of tenant's building.   Court of Appeals reversed.

...A. LaNave Murrin Law Firm , Edina, for respondents. William F. Mohrman, Mohrman & Kaardal, P.A. , Minneapolis, for appellant. .

**73. Pietsch v. Darling, Court of Appeals of Minnesota. April 11, 2000 Not Reported in N.W.2d**

EXHIBIT 3

**2000 WL 369388 C0-99-1632**

> After a dispute arose involving the balance due on a contract for deed between appellant Michael J. Darling and respondent Rory J. Pietsch, Darling served notice of cancellation under Minn.Stat. § 559.21 (1996). Ultimately, at a pretrial hearing at which Darling represented himself, the parties entered into a settlement agreement on the record....

...Defendants. No. C0-99-1632. April 11, 2000. William F. Mohrman Mohrman Co. , P.A., Minneapolis, MN, for respondent. David J. Van House...

**74. Nevis Lumber, Inc. v. Walker Bldg. Center, Court of Appeals of Minnesota. September 21, 1999 Not Reported in N.W.2d 1999 WL 732436 CX-99-407**

> In this appeal from a judgment denying its claim for specific performance of a purchase agreement, appellant Nevis Lumber, Inc., argues that the district court erred by concluding that the purchase agreement was rescinded by the parties' mutual agreement to abandon it and that the purchase agreement also failed for lack of consideration. We affirm....

...Respondents. No. CX-99-407. Sept. 21, 1999. Erick G. Kaardal Trimble & Associates, Ltd. , 11700 Wayzata Boulevard, Minnetonka, MN 55305 (for...

**75. In re Trusteeship Created by City of Sheridan, Court of Appeals of Minnesota. May 05, 1999 593 N.W.2d 702 1999 WL 289247 C4-98-1722, C9-98-1702, C6-98-1673**

> COMMERCIAL LAW - Jurisdiction. Trial court had jurisdiction over trust administered in state even though assets were not in state.

...indicate that the exercise of jurisdiction is appropriate. William F. Mohrman Mohrman & Co., P.A. , Minneapolis, for appellants Colorado Farm Bureau Mutual Insurance...

**76. Pietsch v. Darling, Court of Appeals of Minnesota. December 22, 1998 Not Reported in N.W.2d 1998 WL 894717 C2-98-987**

> On appeal from a summary judgment, appellant Rory Pietsch challenges the district court's order dismissing this action to have himself declared the fee owner of property. The district court concluded that, pursuant to Minn.Stat. § 559.21, subds. 2a, 3 (1996), Pietsch had no legal interest in the property because he failed to either cure the default...

...County District Court, File No. CX-97-1458. William F. Mohrman Mohrman & Co., P.A. Multifoods Tower , Minneapolis, MN, for Appellant. Mark E...

**77. Stark v. Independent School Dist., No. 640, United States Court of Appeals, Eighth Circuit. August 21, 1997 123 F.3d 1068 1997 WL 473963 96-3250**

> Taxpayers brought action against school district, seeking to close elementary school on basis that school's creation and operation violated First Amendment's guarantee against establishment of religion. The United States District Court for the District of Minnesota, Michael J. Davis, J., 938 F.Supp. 544, entered injunction permanently...

...DC, argued ( C. Hunter Wiggins , Washington, DC, and Erick G. Kaardal , Minnetonka, MN, on the

EXHIBIT 3

brief), for Appellant. Robert J. Bruno...

**78. In re Medworth, Court of Appeals of Minnesota. April 22, 1997 562 N.W.2d 522 1997 WL 191826 C8-96-2030**

Conservator petitioned to relocate conservatee from her home to out-of-state congregate-living apartment. The District Court, Hennepin County, Ann L. Alton, J., granted petition. Conservatee appealed. The Court of Appeals, Short, J., held that trial court abused its discretion in granting relocation petition. Reversed.

...extent necessary to provide needed care and services. Erick G. Kaardal Trimble & Associates, Ltd. , Minnetonka, for appellant Elvira Medworth. Timothy R...

EXHIBIT 3

# JAMES V.F. DICKEY
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
(612) 465-0960| dickey@mklaw.com

## LITIGATION EXPERIENCE

**Mohrman, Kaardal & Erickson, P.A.**, Minneapolis, MN, *Associate Attorney*, 2012-present

Bar Admissions: State of Minnesota; U.S. District Court for the District of Minnesota; U.S. Court of Appeals for the Eighth Circuit; U. S. Bankruptcy Court for the District of Minnesota

Experience: Has represented clients in complex First Amendment litigation in the District of Minnesota and the Eighth Circuit Court of Appeals; Has represented clients in complex class-actions suits; Has represented clients in numerous disputes regarding contracts and business torts; Has represented both debtors and creditors in loan disputes and bankruptcies

Representative Cases:
- *281 Care Committee v. Arneson*, 8th Cir. Case No. 13-1229, D. Minn. Case No. 08-5215
  - First Amendment claim wherein 8th Circuit found that Minn. Stat. § 211B.06 failed strict scrutiny after summary judgment motions heard before both the District of Minnesota and the Eighth Circuit (ongoing).
- *The QC Group, Inc. v. Sebelius*, D. Minn. Case No. 13-01726
  - Religious Freedom Restoration Act claim wherein client obtained preliminary injunction in D. Minn. enjoining the enforcement of the HHS Mandate (ongoing).
- *Snow, et al. v. Wabasha County, et al.*, Minn. Dist. Ct. Case No. 79-CV-14-223
  - Class action seeking damages for citizens injured by the operation of "Safe Driving Programs" contrary to Minnesota law (ongoing)
- *Maple Bank v. St. Louis Park Public School District No. 283*, Minn. Ct. App. Case No. A13-2102, Minn. Dist. Ct. Case No. 27-CV-13-1813
  - Breach of lease dispute regarding the habitability of an office building; client won reversal of summary judgment grant by district court on appeal (ongoing).
- *Hearing Associates, Inc. v. Downs, et al.*, Minn. Dist. Ct. Case No. 69DU-CV-12-3547
  - Breach of contract and breach of an employee's duty of loyalty dispute; client obtained jury verdict in favor of Plaintiff (ongoing).

## EDUCATION

**University of Minnesota Law School**, Minneapolis, Minnesota
J.D., *Magna Cum Laude*, 2012
*Final Cumulative GPA*: 3.697, *Magna Cum Laude*

Activities:  Federalist Society Board Member, March 2011-May 2012
Fundraising Chair, March 2011-May 2011
Symposium Chair, May 2011-May 2012
Treasurer, Christian Legal Society (August 2011-May 2012)

Honors:  Dean's List, Class of 2012
Book Award, Criminal Process, Fall 2011
Second Place, 2010 Maynard Pirsig Moot Court Best Brief Competition
Nominated for the ABA Moot Court Team

EXHIBIT 4

**Villanova University School of Law**, Villanova, PA
    *Class Rank*: 32/256 (1st Year GPA: 3.58)

    <u>Honors</u>:    Selected for 2010-2011 Villanova Law Review (unable to accept due to transfer)

**Duke University**, Durham, NC,
    B.A., Political Science, May 2007

    <u>Honors</u>:    Received scholarship to play golf for Duke University (2003-2007)
               Three-time Atlantic Coast Conference Honor Roll selection (2004-2007)

### OTHER EXPERIENCE

**The Honorable Janet N. Poston, Fourth Judicial District of Minnesota**, Minneapolis, MN
*Intern*, Summer 2011
    Assisted the judge and law clerks in drafting orders about various matters, including common law and statutory fraud claims; conducted legal research regarding issues ranging from fraud to personal jurisdiction; and attended numerous courtroom proceedings, including summary judgment motions, motions to dismiss, bench trials, and jury *voir dire* proceedings.

**Blackstone Legal Fellowship**, Alliance Defense Fund
*Mentor*, Summer 2011
    Assisted staff with day-to-day operations; facilitated discussion among interns regarding the various topics discussed in lectures on constitutional law.

**Institute for Justice Minnesota Chapter**, Minneapolis, MN
*Summer Clerk*, Summer 2010
    Researched and wrote memorandum regarding discrepancies between the federal constitutional and state constitutional protections against administrative search and seizure; researched and wrote memorandum regarding potential plaintiffs for proposed litigation to protect First Amendment rights; attended federal district court and state appellate court hearings; became licensed as a student attorney and wrote a breach of contract complaint that led to settlement.

EXHIBIT 4

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 36 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

2012 WL 6760098
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

OWNER–OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC.;
Joseph Rajkovacz, individually and on
behalf of all others similarly situated,
Carl Schaefer, individually and on
behalf of all others similarly situated;
and Carl Schaefer LLC, Plaintiffs,
v.
SUPERVALU, INC., a Delaware
corporation, Defendant.

Civil No. 05–2809 (JRT/
JJG).   |   Sept. 30, 2012.

**Attorneys and Law Firms**

Paul D. Cullen, Jr., Paul D. Cullen, Sr., and Randall Herrick–Stare, The Cullen Law Firm, PLLC, Washington, D.C., Andrew J. Morrison, Koll Morrison Charpentier & Hagstrom, Saint Paul, MN, and Michael B. Healey, Michael Healey Law, LLC, Saint Paul, MN, for plaintiffs.

Steven J. Wells and Glenn M. Salvo, Dorsey & Whitney, LLP, Minneapolis, MN, for defendant.

**MEMORANDUM OPINION AND ORDER
ON ATTORNEYS' FEES AND COSTS**

JOHN R. TUNHEIM, District Judge.

**\*1** Plaintiffs Owner–Operator Independent Drivers Association, Inc., Joseph Rajkovacz, Carl Schaefer, and Carl Schaefer LLC (collectively "OOIDA") filed a complaint against Supervalu, Inc. ("Supervalu") on December 6, 2005. After a series of orders from this Court, the parties reached a settlement. The settlement determined that OOIDA could seek attorneys' fees after the exhaustion of its appeals. (Docket No. 318.)The Court entered an order granting final approval of the class settlement and entry of final judgment on September 30, 2009. (*Id.*) OOIDA lost on appeal and now seeks attorneys' fees of $1,402,155,

plus costs. (Decl. of Paul D. Cullen, Sr., Jan. 27, 2012, Docket No. 361.)Supervalu objects to OOIDA's requests on numerous grounds. The Court will grant OOIDA $258,082.54 in attorneys' fees and $11,625.98 in costs. But the Court will not grant OOIDA's full request for fees because, among other considerations, OOIDA failed to succeed on many of its claims and rejected a settlement offer from Supervalu that was substantially equivalent to the final settlement. The Court will also award some but not all of OOIDA's claimed costs because some costs are not authorized by statute.

**BACKGROUND**

The Court will first outline the procedural background of this action, next discuss OOIDA's request for attorneys' fees, and finally address OOIDA's requests for costs.

**I. OOIDA'S COMPLAINT AND THIS COURT'S
ORDERS**

OOIDA is a non-profit trade association of professional truck drivers who own and operate heavy-duty trucks. (Am. Compl. ¶ 7, Nov. 29, 2006, Docket No. 134.)OOIDA brought this action—originally in December 2005 (Compl., Docket No. 1)—in response to an insurance coverage requirement that Supervalu implemented in March 2005 for drivers who wished to unload their own vehicles at Supervalu's distribution centers. (Am.Compl.¶ 21.) Supervalu required the drivers to show proof of aggregate annual general liability insurance of $3 million, $1 million per "occurrence," and automobile liability insurance in the amount of $1 million combined single limit coverage. (*Id.;* Ans. to Am. Compl. ¶ 21, Dec. 18, 2006, Docket No. 152.)This insurance coverage requirement went beyond the statutory minimum under 49 U.S.C. § 31139(b), [1] which requires those who transport property by commercial motor vehicle to carry insurance of at least $750,000.

[1]   In August 2005, Supervalu reduced the insurance coverage requirement to $1 million aggregate and $1 million per occurrence. (Ans. to Am. Compl. ¶ 2 1.)

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 37 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 OOIDA 6760098

OOIDA claimed that Supervalu's insurance requirement violated 49 U.S.C. § 14103(a) and (b). (Am.Compl.¶ 1.) Section 14103(a) mandates that whenever a shipper or receiver of property requires a trucker to be assisted in the loading or unloading of a truck, the shipper or receiver is responsible for providing such assistance or compensating the owner or operator of the truck for all costs associated with securing it. Section 14103(b) makes it unlawful to coerce or attempt to coerce a trucker to load or unload property on or off a truck or to employ or pay one or more persons to load or unload property from the truck. OOIDA claimed that Supervalu violated these statutes by requiring drivers to employ other persons, called "lumpers," to assist in unloading their trucks, without Supervalu paying for those services. (Id.) In essence, OOIDA argued that because Supervalu's insurance requirement was too expensive for truckers to afford, truckers were functionally compelled to hire "lumpers" contrary to federal law. (Id.) OOIDA sought declaratory relief for the violations of §§ 14103(a), (b), an injunction stopping Supervalu from further violations, an order that Supervalu disgorge the amount that it had unjustly enriched itself by shifting unloading costs to drivers, and an award of attorneys' fees and costs. (Id. ¶ 3.)

**\*2** Shortly after OOIDA filed the original complaint on December 6, 2005, Supervalu lowered its insurance requirement to the federal minimum. (Order ¶ 16, Sept. 30, 2009, Docket No. 318.)Since December 21, 2005, Supervalu has only required drivers to show that they are covered by a $750,000 combined single unit of automobile liability insurance, as required by § 31139(b). (See id.)

The parties filed a variety of motions, including summary judgment motions, that the Court addressed on May 31, 2007 and March 24, 2009. *Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc. (OOIDA I),* 2007 WL 1576120 (D.Minn. May 31, 2007); *Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc. (OOIDA III),* 2009 WL 799614 (D.Minn. March 24, 2009). The Court ultimately dismissed OOIDA's claims under § 14103(a) because OOIDA failed to establish that neither a receiver nor a shipper had paid truck drivers for lumping service costs. *OOIDA III,* 2009 WL 799614, at \*3–4.In other words, the Court found that, even if Supervalu had

essentially forced truckers to pay for lumping services through its insurance requirement, Supervalu did not violate the law because the evidence suggested that truckers were reimbursed by shippers or receivers for the cost of the lumping services. *Id.* Relying on the legislative history of § 14103(a), the Eighth Circuit upheld this ruling. *Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc. (OOIDA IV),* 651 F.3d 857, 867–77 (8th Cir.2011).

The Court dismissed some of OOIDA's theories under § 14103(b), as well. First, the Court held that OOIDA was not entitled to restitution under § 14103 because the statute did not provide for such relief. *OOIDA I,* 2007 WL 1576120, at \*4–5.Second, the Court dismissed OOIDA's claim that Supervalu's election to receive goods on palletized freight, without providing the necessary equipment to unload such freight, constituted coercion or an attempt to coerce individual plaintiffs [2] to hire lumping services. *OOIDA III,* 2009 WL 799614, at \*9.

[2]   This claim was not certified as a class, and thus the Court only considered it with respect to Plaintiffs Rajkovacz and Schaefer.

The Court found some genuine issues of material or fact under § 14103(b), however. *Id.* at \*6–8.The Court certified a class as to whether Supervalu's institution of its company-wide insurance requirement constituted an "attempt to coerce" drivers to hire lumpers, in violation of § 14103(b).*Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc. (OOIDA II),* 2008 WL 706600, at \*4 (D.Minn.2008). Even though OOIDA could not seek restitution, the Court allowed the § 14103(b) claim to continue because OOIDA had properly sought injunctive and declaratory relief. *OOIDA III,* 2009 WL 799614, at \*6–8.The case settled before the Court ruled on the issue of attorneys' fees and costs.[3]

[3]   Supervalu abandoned its counterclaims for declaratory relief on May 4, 2009. (Docket No. 272.)

## II. SETTLEMENT OFFERS

### A. Pre–Litigation Offer

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 38 of 147

Owner Operator Independent Drivers Ass'n, Inc. v..., Not Reported in...

2012 WL 6760098

Supervalu claims that, prior to OOIDA filing this action, Supervalu offered to change its insurance requirement. In October 2005, Randall S. Herrick–Stare, OOIDA's lead attorney, told Kim J. Myrdahl, Supervalu's Vice President of Litigation, Regulatory and Compliance, that OOIDA planned to file this action. (First Decl. of Kim Myrdahl ¶ 3, Jan. 6, 2012, Docket No. 358.) [4] Myrdahl claims that she told Herrick–Stare on October 26, 2005, that Supervalu would change its then-existing policy by reducing the required insurance types and levels to the minimum requirements of federal law in order to resolve the dispute and avoid litigation. (*Id.*) According to Myrdahl, Herrick–Stare responded that Supervalu would not be able to resolve this dispute without a substantial monetary payment to OOIDA. (*Id.*) OOIDA counters that Myrdahl never offered that Supervalu would permanently, unconditionally, and enforceably abandon its insurance requirement. There appears to be no pre-litigation writing by or on behalf of Supervalu setting forth any settlement proposal.

[4]   On October 6, 2005, Herrick–Stare sent a letter to Supervalu's Senior Corporate Counsel, stating:
  As a matter of efficiency in negotiations, neither OOIDA, the plaintiffs, nor The Cullen Law Firm wants to spend time discussing abstract generalities. We prefer to present and to consider concrete proposals, if not offers. We therefore invite Supervalu to set forth what it is prepared to do to avoid litigation.
  (Second Aff. of Herrick–Stare, Ex. 1, Jan. 26, 2012, Docket No. 359.)

### B. September 2007 Settlement Offers

 **\*3**  On August 14, 2007, the Magistrate Judge filed a notice that a settlement conference would be held on September 10, 2007. (Docket No. 196.)The same day, OOIDA made a settlement demand that included a $15,000,000 payment to the class (even though the Court had already held monetary relief was unavailable), entry of a **consent decree** stipulating, among other things, that Supervalu unload, separate, and stage all carrier loads itself or at its expense, and the payment of OOIDA's attorneys' fees and costs. (First Decl. of Steven J. Wells ¶ 4, Ex. B, Jan. 6, 2012, Docket No. 357.)Two weeks later, on August 30, 2007, Supervalu offered to settle on terms that allowed

it to require insurance **above** the statutorily-required minimum. (Second Herrick–Stare Aff., Ex. 4.)

At the September 10, 2007 settlement conference, the parties reached what the Magistrate Judge characterized as a "framework for settlement agreement." The Magistrate Judge outlined the framework as possessing the following elements:

- OOIDA would dismiss all claims and waive all claims and class claims.

- The parties would agree to a consent decree that would require Supervalu to mandate proof of insurance no greater than what is federally mandated by statute.

- The Magistrate Judge stated that there had been discussions of either (1) a three-year time limit on this requirement, or (2) no time limit but an agreement that Supervalu could modify its insurance requirements "upon a showing of, for example, a significantly changed circumstance."

- The Magistrate Judge noted that Steven Wells, counsel for Supervalu, would attempt to draft a proposed agreement so the parties could decide which option they preferred.

- Supervalu would provide manual non-motorized hand jacks to drivers that choose to unload their trucks themselves. Enough hand jacks would be required to accommodate drivers at all distribution centers.

- Supervalu would pay reasonable costs and fees to OOIDA. OOIDA would respond to Supervalu's offer of $100,000 in fees.

(First Wells Decl., Ex. C.)

After this meeting, Wells drafted a proposed settlement agreement dated September 17, 2007, generally consistent with the terms outlined by the Magistrate Judge. (*See id.,* Ex. D.) The proposal stated that Supervalu could adjust its insurance requirement either after three years or when a "material change" occurred. A "material change" was defined as occurring when:

(i) Supervalu obtains knowledge or becomes aware of a claim against or loss by a receiver of goods ....

CASE 0:13-cv-00295-JRT-LIB    Doc. 20-1    Filed 03/11/15    Page 39 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

in an amount in excess of the Federally Mandated Minimum Insurance resulting from, connected with, or caused by a person delivering unloading or sorting or segregating goods to the receiver; or

(ii) An existing or potential lender, financial institution, or insurer requires that Supervalu obtain from a person delivering, unloading, or sorting or segregating goods to proof of types and/ or levels of insurance that exceed the Federally Mandated Minimum Insurance.

**\*4** (*Id.*) Supervalu offered $100,000 in attorneys' fees. (*Id.*)

OOIDA rejected Supervalu's offer and returned one of its own. OOIDA's proposal did not include the three-year limit and contained a different version of the "material change" requirement. (*Id.,* Ex. E.) OOIDA defined "material change" as occurring when:

> Supervalu is judged to be liable on a claim against it, or suffers a loss which arises from an occurrence at one of the Distribution Centers listed in Exhibits A, B, or C, and either is not covered by, or is in an amount in excess of, the Federally Mandated Minimum Insurance....

(*Id.*)On October 4, 2007, Supervalu rejected OOIDA's proposed definition of "material change." (*Id.,* Ex. F.) Supervalu agreed, however, to abandon the three-year limitation and instead adopt the "material change" limitation it had initially proposed. (*Id.*) OOIDA also requested $500,000 in attorneys' fees, which Supervalu rejected in its October 4 offer, instead proposing that attorneys' fees would become a "Magistrate Judge Graham issue." (*Id.,* Exs.E, F.)

After receiving Supervalu's second proposed stipulation agreement, OOIDA refused to tender a responsive proposal. (*Id.,* Ex. G.) OOIDA wrote a letter to the Magistrate Judge on November 5, 2007, indicating why it did not think another settlement conference was necessary; specifically, it stated that there were key issues where resolution did not appear possible, including:

• Supervalu's requirement of a broad release with no appeal rights for OOIDA

• A troubling definition of "material change"

• Issues with the hand jack requirements

• Attorneys' fees

(Second Herrick–Stare Aff., Ex. 6.) This letter did not reflect any concern on OOIDA's part that Supervalu offered a "consent decree" rather than an "injunction."

### C. Subsequent Settlement Offers

The Court scheduled another settlement conference for January 7, 2008. (Docket No. 207.) [5] After this settlement conference, Supervalu sent a proposed stipulation dated February 1, 2008, to the Magistrate Judge, which deleted Supervalu's prior definition of a "material change" allowing Supervalu to change its insurance requirements under certain circumstances and instead simply stated that "Supervalu retains and does not waive any rights it otherwise would have to seek a modification of this Stipulated Order and Judgment had the terms of this provision been ordered by a Court without Supervalu's agreement."(First Wells Decl., Ex. I.) Supervalu also offered to provide manual hand jacks to accommodate drivers in unloading their trucks and to submit the issue of attorneys' fees to the Magistrate Judge for decision. (*Id.*) It appears that the February 1, 2008, settlement offer was only sent to the Magistrate Judge and never forwarded to OOIDA. (*See* Second Herrick–Stare Aff. ¶ 10; Letter from Steven J. Wells, Ex. 10–12, June 8, 2012, Docket No. 374.)

[5]    Supervalu claims that, at the January 7 settlement conference, it again offered to allow the Court to enter an "injunction" regarding its insurance requirement and offered to permit OOIDA to petition the Court for fees and costs, without a cap. (First Wells Decl. ¶ 8.)

**\*5** On June 5, 2008, the Magistrate Judge sent a proposed stipulation of her own drafting to Supervalu and OOIDA, which included much of the language that Supervalu suggested on February 1, including the language that "Supervalu retains and does not waive any rights it otherwise would have to seek a

CASE 0:13-cv-00295-JRT-LIB    Doc. 20-1    Filed 03/11/15    Page 40 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

modification of this Stipulated Order and Judgment had the terms of this provision been ordered by a Court without Supervalu's agreement."(Wells Letter, Ex. 14.) However, the Magistrate Judge's proposal did not indicate that this language was proposed by Supervalu. (*See id.*)OOIDA states that the first it learned that Supervalu had proposed these new limitations on when it could change its insurance requirement was on July 1, 2008, when the next settlement conference took place. (Third Aff. of Randall S. Herrick–Stare, July 16, 2012, Docket No. 378.)

**D. Rule 68 Offer**
On May 4, 2009, Supervalu served Plaintiffs with a formal Rule 68 offer of judgment. (First Wells Decl. ¶ 10, Ex. J.) This offer included the following proposed language:

> Supervalu is enjoined, as follows: Supervalu shall not, without prior approval of the Court, require a driver who wishes to unload his truck without assistance at a Supervalu-owned facility to have, or display proof of, insurance coverage in excess of the types and amounts required by law for drivers of commercial trucks operating in interstate commerce....

(*Id.*)It also stated that OOIDA would be awarded reasonable attorneys' fees. (*Id.*) Supervalu conditioned acceptance of its offer on OOIDA's abandonment of rights to appeal the dismissal of the § 14013(a) claims. OOIDA did not accept Supervalu's Rule 68 offer but shortly thereafter agreed to settle the case. (*See* J. Mot. for Approval of Settlement, Sept. 15, 2009, Docket No. 315.)

**E. Settlement**
The parties signed a Stipulated Order and Judgment on May 11, 2009. (*See* Order at 1, Sept. 30, 2009, Docket No. 318.)The Court entered its order granting final approval of the class settlement and entry of final judgment on September 30, 2009. (*Id.* ¶¶ 20–

26.)Regarding the insurance requirement, the final judgment stated,

> Without prior approval of Court, Supervalu is hereby enjoined from requiring owners or operators of motor-vehicles used to deliver "carrier loads" to Supervalu's distribution centers, who wish to unload their truck without assistance at a Supervalu distribution center, to have, or display proof of, insurance coverage in excess of the types and amounts required by law for carriers operating in interstate commerce....

(*Id.* ¶ 21.) The agreement dismissed some of OOIDA's claims with prejudice but acknowledged that OOIDA retained the right to appeal the Court's rulings dismissing the 49 U.S.C. § 14103(a) claims. [6] (*Id.* ¶ 8.) It stated that OOIDA could make an application for attorneys' fees after resolution of the appeal, without affecting the finality of the final order and judgment. (*Id.* ¶ 25) The settlement did not include any provisions regarding hand jacks or Supervalu providing other assistance relating to the receipt of palletized goods. [7]

---

[6]    As stated above, OOIDA lost on appeal. *OOIDA IV,* 651 F.3d at 867–77.

[7]    In the Court's approval of the settlement, the Court found that "this case presented complex issues[.]" (*Id.* ¶ 6.) It also found that the stipulation was "both reasonable and a fair approximation of the best result Plaintiffs could reasonably have expected to receive upon a successful trial of their claim under 49 U.S.C. § 14103(b)." (*Id.* ¶ 12.) Finally, the Court found that "[t]he outcome of any appeal may have a bearing on the question of whether Plaintiffs were successful and thus affect the analysis of whether an award of attorney fees is appropriate, and, if so, the amount."(*Id.* ¶ 15.)

**ANALYSIS**

**I. STANDARD OF REVIEW FOR ATTORNEYS' FEES**

CASE 0:13-cv-00295-JRT-LIB Doc. 20-1 Filed 03/11/15 Page 41 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

**\*6** OOIDA seeks attorneys' fees available under 49 U.S.C. § 14704(e).[8] Pursuant to Section 14704(e), "The district court **shall** award a **reasonable** attorney's fee [and] ... shall tax and collect that fee as part of the costs of the action."*Id* . (emphases added). In determining a reasonable award of attorneys' fees, the Court begins with the "lodestar" amount, obtained by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."*See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (interpreting 42 U.S.C. § 1988); *Fair Isaac Corp. v. Experian Info. Solutions Inc.,* 711 F.Supp.2d 991, 1008–09 (D.Minn.2010) (using the *Hensley* lodestar method to assess a fee request submitted pursuant to contractual language)."[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."*Hensley,* 461 U.S. at 437.The party seeking an award of attorneys' fees must submit adequate evidence to demonstrate the hours worked and rates claimed. *Id.* at 433."When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates."*Hanig v. Lee,* 415 F.3d 822, 825 (8th Cir.2005). The Court must exclude claimed hours that were not "reasonably expended[,]" such as hours that are "excessive, redundant, or otherwise unnecessary...." *Hensley,* 461 U.S. at 434.In determining a reasonable fee, the Court may account for numerous other factors, including "the [party's] overall success; the necessity and usefulness of the [party's] activity in the particular matter for which fees are requested; and the efficiency with which the [party's] attorneys conducted that activity."*Jenkins ex. rel. Jenkins v. Missouri,* 127 F.3d 709, 718 (8th Cir.1997).[9] The Court may also consider substantial settlement offers as a factor in determining an award of reasonable attorney's fees. *Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1012 (8th Cir.2004) (quoting *Moriarty v. Svec,* 233 F.3d 955, 967 (7th Cir.2000))."The most critical factor in assessing fees is the degree of success obtained."*Fish v. St. Cloud State Univ.,* 295 F.3d 849, 852 (8th Cir.2002).

8    49 U.S.C. § 14704(a)(1) allows a plaintiff to seek injunctive relief for a violation of 49 U.S.C. § 14103. OOIDA seeks attorneys' fees available under 49 U.S.C. § 14704(e) because it obtained injunctive relief under § 14103. *See Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.,* 398 F.3d 1067, 1071 (8th Cir.2005) (§ 14704(e) is designed to benefit injured plaintiffs through attorneys' fees).

9    *See also Lewis v. Heartland Inns of Am., L.L.C.,* 764 F.Supp.2d 1037, 1044 (S.D.Iowa 2011) (citing *Zoll v. E. Allamakee Cmty. Sch. Dist.,* 588 F.2d 246, 252 n.11 (8th Cir.1978)) (holding that courts should consider numerous factors in calculating a reasonable fee, including: (1) the time and labor required; (2) the novelty or difficulty of the issues; (3) the skill required of the attorney to properly perform legal services; (4) the preclusion of other employment due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the experience, reputation, and ability of the attorney; (9) the undesirability of the case; (10) the nature and length of the attorney's professional relationship with the client; and (11) awards in similar cases).

## II. REASONABLENESS OF HOURLY RATE

The Court will first determine if the hourly rates OOIDA requests are reasonable. A fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."*Schaub v. Cnty. of Olmsted,* No. 06–2725, 2011 WL 3664565 at \*2 (D.Minn. Aug. 19, 2011) (citing *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984)). OOIDA seeks attorneys' fees at the following hourly rates:

| | |
|---|---|
| Paul D. Cullen, Sr. | $495 (attorney with 46 years of experience) |
| Randall Herrick–Stare | $495 (attorney with 35 years of experience) |

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 42 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

| Joseph Black | $495 (attorney with 24 years of experience) |
| David Cohen | $495 (attorney with 23 years of experience) |
| Paul D. Cullen, Jr. | $435 (attorney with 12 years of experience) |
| Vanessa Ellerman | $435 (attorney with 13 years of experience) |
| Amy Lloyd | $350 (attorney with 10 years of experience) |
| Kelli Vail | $285 (attorney with 6 years of experience) |
| Paralegals | $140 |

**\*7** (OOIDA's Mem. in Support of OOIDA's Mot. for Award of Att'y Fees and Expenses at 15, Dec. 2, 2011, Docket No. 346.)The rates sought by OOIDA are current billing rates, not the rates its attorneys would have billed at the time the charges were incurred. (*Id.* at 17–18.)

In support of the reasonableness of its fees, OOIDA submitted an affidavit from Timothy R. Schupp, a member of the Minnesota bar and attorney at Gaskins Bennett Birrell & Schupp. (Aff. of Timothy R. Schupp, Dec. 2, 2011, Docket No. 349.)Schupp stated that the rates OOIDA seeks are "reasonable hourly rates in the Minneapolis/St. Paul legal community for lawyers and paralegals of similar levels of talent and experience handling a complex lawsuit."(*Id.* ¶ 12.) Schupp is qualified to opine on the reasonableness of OOIDA's fees, and the Court gives his opinion substantial weight. Moreover, rates as high as $600 per hour for senior, experienced attorneys have recently been approved by the courts of Minnesota. *See Schaub,* 2011 WL 3664565, at \*3 (citing *Madison v. Willis,* No. 09–930, 2011 WL 851479, at \*1 & n.4 (D.Minn. Mar. 9, 2011)) (approving rates ranging from $180–$600 per hour); *see also King v.. Turner,* No. 05–388, 2007 WL 1219308, at \*2 (D.Minn. Apr. 24, 2007) (approving rate of $500 per hour). The Court finds that the rates sought by OOIDA are reasonable in this community, particularly because the case involved an issue of first impression and because many of OOIDA's attorneys have significant experience. Further, the Court finds that billing for current rates

is appropriate "to account for delay in payment."*See Schaub,* 2011 WL 3664565, at \*2 (citing *Missouri v. Jenkins,* 491 U.S. 274, 283 (1989)).

### III. SETTLEMENT OFFERS

The Court must next determine if it is appropriate to cut off OOIDA's attorneys' fees due to Supervalu's settlement offers. A district court may reduce attorneys' fees because of a substantial settlement offer rejected by the party requesting fees. *Parke,* 368 F.3d at 1012–13."[A]n offer is substantial if ... the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party."*Id.* (quoting *Moriarty,* 233 F.3d at 967). A district court should not automatically deny fees incurred after a settlement offer. *Cole v. Wodziak,* 169 F.3d 486, 487 (7th Cir.1999). But the Court may consider the rejection of a substantial settlement offer in determining the reasonableness of fees. *See, e.g., id.;Moriarty,* 233 F.3d at 967 ("Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply"); *Sheppard v. Riverview Nursing Ctr., Inc.,* 88 F.3d 1332, 1337 (4th Cir.1996); *Owner–Operator Indep. Drivers Assoc. v. Mayflower Transit, Inc.,* 659 F.Supp.2d 1016, 1021 (S.D.Ind.2009).

### A. Pre–Litigation Offers

Supervalu claims that OOIDA should recover no fees because Supervalu made an offer to stop its

CASE 0:13-cv-00295-JRT-LIB    Doc. 20-1    Filed 03/11/15    Page 43 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

allegedly offending practices before OOIDA filed its complaint. OOIDA denies that Supervalu made such an offer. The Court will not reduce OOIDA's award on this basis because the record contains no documentation about the content or even the existence of this offer. Particularly because Supervalu's August 2007 offer (well after OOIDA brought suit) did not contemplate reducing Supervalu's insurance requirements to the same level as federally-mandated insurance requirements, the Court finds there is insufficient evidence to conclude that Supervalu made an offer to do so prior to the filing of the complaint. Accordingly, the Court will not reduce OOIDA's attorneys' fees due to this alleged offer.

**B. September 2007 Settlement Offers**

 **\*8**  Supervalu also contends that the Court should not award attorneys' fees in view of its September 2007 settlement offers, which Supervalu contends were substantially similar to the final settlement. In these offers, Supervalu offered to accept a consent decree, with no expiration date. This consent decree would have obligated Supervalu, with some exceptions, not to require more than the federally-mandated insurance amount. Although these offers were similar to the final settlement, the Court finds that they were not "substantial" settlement offers. Most importantly, unlike the final settlement, they contained specific escape clauses allowing Supervalu to change its insurance requirement when, for example, one of Supervalu's insurers required it to do so. The final judgment, in contrast, only allowed Supervalu to change these requirements with prior approval of the Court and provided no specifically-enumerated instances when Supervalu is allowed to change its insurance requirements. [10] The final judgment is thus of greater benefit to OOIDA than the September 2007 offers because it gives OOIDA the ability to challenge **any** suggested modification of the injunction and because OOIDA was concerned that the exceptions outlined in the September offers were likely to occur . [11] Furthermore, in the September 2007 offers, Supervalu did not offer the same conditions for attorneys' fees and appeal rights that existed in the final settlement: Supervalu offered only $100,000 in attorneys' fees or to leave the fees unresolved as a "Magistrate Judge Graham issue." [12] The Court finds that Supervalu's September 2007 offers were thus not

roughly equal to or more than the relief that OOIDA ultimately received, *see Parke,* 368 F.3d at 1012–13, and a reduction in fees is not warranted on this basis.

[10]  Here, the parties agreed to the entry of judgment and there are no specific standards set forth in the agreement for the modification of the judgment. The Court finds that the injunction, as a final judgment, could be lifted pursuant to Federal Rule of Civil Procedure 60(b)(5).*See, e.g., Horne v. Flores,* 557 U.S. 433, 447 (2009) (outlining standards for modifying injunctions).

[11]  For example, OOIDA was concerned that Supervalu's insurers were likely to request that Supervalu increase its insurance requirements.

[12]  It is unclear what it meant to leave this matter as a "Magistrate Judge Graham issue."

**C. January 2008, February 2008, and June 2008 Settlement Offers**

Supervalu next maintains that the Court should not allow attorneys' fees accruing after the January and February 2008 settlement offers. The Court disagrees. There is no contemporaneous documentation of Supervalu's offers at the settlement conference in January 2008. Furthermore, there is no evidence that Supervalu or the Magistrate Judge sent the February 2008 settlement offer to OOIDA. The Court also declines to cut off OOIDA's fees after the June 2008 settlement proposal that Magistrate Judge Graham drafted because there is no evidence to suggest that OOIDA knew which portions of the settlement proposal were acceptable to Supervalu. It would be inequitable to reduce OOIDA's fees because of a settlement proposal that Supervalu did not make.

**D. July 1, 2008 Offer**

The Court **will** cut off OOIDA's fees after July 1, 2008, because the substance of Supervalu's February 1, 2008, settlement letter—in particular, Supervalu's offer regarding its insurance requirements—was communicated to OOIDA on that date [13] and was substantially the same as the final settlement. The letter indicates Supervalu was prepared to offer a settlement to OOIDA that included virtually all of the elements in the final settlement. Supervalu's proposal offered to keep Supervalu's insurance requirements at the federally-mandated minimums—unless conditions

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 44 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

existed that would allow Supervalu to seek a modification of the agreement had its terms been entered by a Court—and offered to submit the attorneys' fees issue to the Court. The settlement offer also provided for manual hand jacks to accommodate drivers in unloading their trucks, a significant benefit not included in the final settlement. [14] In short, the July 1, 2008, offer was a substantial settlement offer that the Court finds warrants a reduction in fees. There might be cases where the legal and factual issues were close enough that continuing litigation was beneficial to the prevailing party, or where other factors might weigh against a reduction in fees, but the Court finds that this is not such a case. Attorneys' fees accumulating after the rejection of this substantial offer provided "minimal benefit" to OOIDA, *see Moriarty,* 233 F.3d at 967, and the Court thus concludes that declining to award fees after July 1 is appropriate.

[13]    OOIDA admitted that it learned of Supervalu's February 1 offer regarding its insurance requirements on July 1, 2008. Although there is no transcript of the July 1 hearing, based on the evidence before it, the Court finds that Supervalu's offer to submit attorneys' fees to the Court and to provide hand jacks was also communicated to OOIDA on July 1. (*See* Wells Letter, Ex. 14 at 6–7 (the Magistrate Judge's proposal including these elements).)

[14]    As noted above, the Court had previously dismissed OOIDA's claims regarding Supervalu's failure to provide adequate unloading equipment. *OOIDA III,* 2009 WL 799614, at *9.

**\*9**  OOIDA claims that the ultimate settlement was preferable to this July 2008 offer because it included a right to appeal. But the Court finds the appeal rights of limited benefit considering the overall circumstances, including that OODIA had a limited chance of success on appeal, as its loss before the Eighth Circuit demonstrated. Furthermore, the slight benefit of the inclusion of appeal rights is outweighed by what was lost in the final settlement, namely Supervalu's offer to include hand jacks to assist drivers in unloading.

OOIDA also argues that Supervalu's settlement offer was not "substantial" because it offered the entry of a consent decree and not an injunction. The Court finds no merit in this argument for two reasons. First,

a consent decree is often functionally akin to—and often explicitly includes—an injunction. [15] Second, the record does not suggest that Supervalu's offer of a consent decree was a barrier to settlement. OOIDA did not mention this issue when sending updates on settlement discussions to the Magistrate Judge, and, on August 14, 2007, OOIDA itself suggested the entry of a consent decree. Accordingly, the offer of a consent decree was substantially similar to the ultimate settlement.

[15]    *See, e.g., United States v. City of Hialeah,* 140 F.3d 968, 974 (11th Cir.1998) (observing that refusal to enter a Title VII consent decree has the practical effect of refusing an injunction); *Hurley v. Coughlin,* 158 F.R.D. 22, 29 (S.D.N.Y.1993) ("A consent decree is no more than a settlement that contains an injunction."); Fredric C. Tausend & David H. Binney, *Consent Judgments, Generally,* 5 Bus. & Com. Litig. Fed. Cts. § 50:20 (3d ed. 2011) ("A consent judgment, or a 'consent decree' entered as judgment, is a settlement agreement between litigants taking the form of a judgment of the court, sometimes for money but often for injunctive relief.").

OOIDA also claims, for the first time in its sur-sur-reply brief, that Supervalu's offers were not true "offers" because of the nature of class action litigation. [16] The Court finds no merit in this argument. OOIDA has identified no cases holding that a defendant cannot "offer" a settlement simply because a case involves claims that have been or could be certified as a class. *See Parke,* 368 F.3d at 1012–13 (contemplating that a settlement of a class action claim could occur prior to the certification of the class). Furthermore, it is apparent from the record that OOIDA was willing to settle before and during litigation and that the barrier was the **terms** of settlement Supervalu offered and not Supervalu's lack of authority to tender a true offer. Accordingly, the Court finds that the July 1, 2008, settlement offer was substantial and declines to award fees after that date.

[16]    Specifically, OOIDA claims that, until a class was certified, OOIDA did not have the authority or capacity to make a contract. Further, OOIDA argues that, after the class was certified, OOIDA had the authority to negotiate but still could not

CASE 0:13-cv-00295-JRT-LIB    Doc. 20-1    Filed 03/11/15    Page 45 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in....

2012 WL 6760098

make a contract because it needed the Court's approval to do so.

## IV. DEGREE OF SUCCESS

The Court must next determine the amount of attorneys' fees that are reasonable to award OOIDA. The two issues here are the relatedness of the claims and the plaintiff's overall success. "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins,* 127 F.3d at 716. First, the Court must analyze the relatedness of claims. In cases where a plaintiff loses claims that are unrelated to those the plaintiff has won, the Court must treat the unrelated claims as if they were separate cases and cannot award fees based upon them. *Id.* However, if all of the claims "involve a common core of facts or are based on related legal theories[,]" *Emery v. Hunt,* 272 F.3d 1042, 1046 (8th Cir.2001) (internal quotation marks and citation omitted), the district court should not view the action as a series of discrete claims but "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation [,]" *Hensley,* 461 U.S. at 435.

**\*10** If claims are related, then, the Court must determine the overall success of those claims and, if there was some lack of success, the reduction in fees that is warranted as a result. Although a Court may reduce fees where a plaintiff has limited success, "[w]here a plaintiff ... has won substantial relief [, he] should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440. Still,

> If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the

> case with devotion and skill. Again, **the most critical factor is the degree of success obtained.**

*Id.* at 436 (emphasis added). If it is appropriate for the court to reduce fees due to limited success, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

### A. Related Claims

The Court must first determine if OOIDA's complaint included multiple unrelated "claims." [17] As stated above, "[c]laims are related, and hence deserving of compensation, if they involve a common core of facts or are based on related legal theories." *Emery,* 272 F.3d at 1046 (internal quotation marks omitted). "In assessing whether claims are so related that the fees cannot practicably be severed, one consideration is whether the types of relief requested under the various claims are similar or have differing purposes." *Kennedy Bldg. Assocs. v. Viacom, Inc.,* 375 F.3d 731, 748 (8th Cir.2004) (internal quotation marks omitted) . [18] Another consideration is whether the claims seek relief for "essentially the same course of conduct." *Zabkowicz v. W. Bend, Co.,* 789 F.2d 540, 551 (7th Cir.1986) (internal quotation marks omitted). [19]

[17]  Although ascertaining whether a particular action presents one or more "claims" is often difficult, *see Gen. Acquisition, Inc. v. GenCorp, Inc.,* 23 F.3d 1022, 1028 (6th Cir.1994), because the parties agree that this case involves more than one "claim," the Court will move directly to consider whether the claims are related.

[18]  The Eighth Circuit has held, for example, that claims of assault and battery, outrage, negligent retention, and Title VII violations were related for the purposes of attorneys' fees where they shared a common core of facts and all arose out of alleged sexual harassment of the plaintiff. *Wal–Mart Stores, Inc. v. Barton,* 223 F.3d 770, 773 (8th Cir.2000).

[19]  As a preliminary matter, OOIDA admits that its claim regarding Supervalu's requirement

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 46 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

that drivers use palletized goods, (*see* Am. Compl. ¶ 3(a)-(f)), was separate and unsuccessful and that time slips regarding this claim were inappropriately included in the billing records submitted to the court. OOIDA has submitted a supplementary affidavit identifying six records erroneously submitted, for a total of 4.3 hours of time with a value of $2,128.50. (Decl. of Paul D. Cullen, Sr., Jan. 27, 2012, Docket No. 361.)Because the parties agree that the Court should exclude this time, the Court will do so.

Supervalu argues that OOIDA may not recover for time spent on unsuccessful § 14103(a) claims because these claims were unrelated to OOIDA's § 14103(b) claims. The Court disagrees. OOIDA's claim that Supervalu's insurance requirement was an unlawful attempt to coerce drivers to use lumpers under § 14103(b) was closely related to the § 14103(a) question of whether Supervalu's insurance requirements were appropriate and reasonable. The evidence and facts for these claims were similar. Also, OOIDA sought declaratory and injunctive relief for both claims. Thus, these claims are related. *See Schaub,* 2011 WL 3664565, at \*4 (considering claims to be related that involve similar factual circumstances and legal theories).

Supervalu also contends that OOIDA cannot recover fees for time spent pursuing restitution for its § 14103 claims. However, "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."*Hensley,* 461 U.S. at 435 n.11;*see Sturgill v. United Parcel Serv., Inc.,* 512 F.3d 1024, 1036 (8th Cir.2008) (holding that attorneys' fees were appropriate even though plaintiff did not obtain punitive damages or injunction, in light of other substantial relief received). The Court finds that OOIDA can recover for the time spent pursuing its request for restitution under § 14103 because that claim arose out of the same factual circumstances and was a related legal theory to its claims for other relief.

\*11 In addition, the Court notes that the two counts in the complaint—for violations of § 14103 and unjust enrichment—both alleged that Supervalu violated § 14103 through forcing drivers to hire lumpers. All of OOIDA's theories and requests for relief challenged Supervalu's alleged attempts to force truckers to hire lumpers. In sum, then, all of OOIDA's claims are related. [20] *See Shrader v. OMC Aluminum Boat Grp., Inc.,* 128 F.3d 1218, 1221 (8th Cir.1997) (finding claims interrelated where there were "closely related issues of fact"). Because OOIDA's claims were premised upon a common core of facts and related legal theories, the Court finds that they are related claims. As explained below, however, the Court will reduce OOIDA's fees because of its lack of success.

[20]   As noted above, however, the Court will assume without deciding that the six records identified by OOIDA regarding palletized goods addressed a separate claim, given the agreement of the parties on this issue. The Court has excluded from the fee award amounts associated with those claims. Supervalu hypothesizes that OOIDA did not properly document all of the time spent on the palletized goods issue and thus requests a further reduction. However, (1) the Court finds no evidence that this improper documentation occurred, (2) to the extent that some of OOIDA's records may not have documented time spent on the palletized goods issue, Supervalu has not shown that this issue was unrelated and based on a separate nucleus of operative facts from OOIDA's other claims, and (3) even if improper documentation occurred, no further reduction in fees is warranted on this basis because the Court has substantially reduced OOIDA's overall fees for other reasons. (*See* Part IV.B, *infra.*)

**B. Level of Success**

If a plaintiff has only partial or limited success, a reduction in fees may be appropriate, *Hensley,* 461 U.S. at 436, and if a plaintiff is not successful, the Court may award no fees. To determine the amount of fees due, the Court must ask whether OOIDA achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]"*Id.* at 434;*see also Wal–Mart Stores, Inc. v. Barton,* 223 F.3d 770, 772 (8th Cir.2000).

The Court finds that OOIDA had limited success in this action. [21] Many of OOIDA's theories and requests for relief were unsuccessful, including two important goals of OOIDA: its requests for restitution and its theory that § 14103(a) was immediately violated when a shipper required drivers to use lumpers and refused to pay for it. The importance of these issues

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 47 of 147

Owner Operator Independent Drivers Ass'n, v...., Not Reported in...

2012 WL 6760098

is demonstrated by OOIDA's settlement demands and litigation strategy, which prioritized them, and Herrick–Stare's statements to the press after the filing of this action. (*See* First Wells Decl., Ex. A.) That the ultimate settlement was conditioned on OOIDA's right to appeal this Court's adverse rulings regarding § 14103(a) and the right to restitution further demonstrates the centrality of these issues. When the case settled, OOIDA was left with only declaratory and injunctive class claims under § 14103(b). Still, OOIDA **was** successful in obtaining a judicially enforceable injunction against Supervalu, with limited opportunity for the injunction to be lifted, and obtained the right to seek attorneys' fees without a cap. The Court finds that, while OOIDA's success warrants a fee award, it was only partial or limited success given that OOIDA did not prevail on some of the largest and most intensely-disputed aspects of the litigation.[22]

[21]    Although the Court stated at the time of settlement that "the class could not reasonably have expected to receive significantly more injunctive relief from the court after a trial than the Proposed Injunction would provide[,]" this was only because the Court had already dismissed many of OOIDA's claims. (*See* Order ¶ 16, Sept. 30, 2009, Docket No. 318.)

[22]    Supervalu also claims that the Court should deny OOIDA recovery of fees for the time it spent pursuing monetary relief because the applicable fee-shifting statute provides only for the award of "a reasonable attorney's fee under this section." 49 U.S .C. § 14704(e). And "this section," 49 U.S.C. § 14704, does not specifically authorize a claim for monetary relief against a receiver like Supervalu. The Court is not convinced by this argument because of the near impossibility in many instances of separating out fees for different types of recovery under the same claim. Even if the Court accepted this argument, however, the Court finds that its reduction of OOIDA's fees by seventy-five percent adequately addresses the issue by accounting for a lack of success regarding OOIDA's request for monetary relief.

Given the many unsuccessful aspects of OOIDA's claims, the Court finds that a significant fee reduction is warranted for a lack of success on certain issues, causing the hours extended to be unreasonable in relation to the results obtained. The Court finds an hour-by-hour reduction to be impractical because of the long history of the case, the number of hours billed, and the interrelatedness of the legal theories and requests for relief. Accordingly, the Court will make the equitable judgment to "reduce the award to account for limited success" rather than "attempt to identify specific hours that should be eliminated[.]" *See Schultz v. Amick,* 955 F.Supp. 1087, 1113 n.16 (N.D.Iowa 1997) (quoting *Hensley,* 461 U.S. at 436–37). The Court will exercise its discretion to reduce OOIDA's overall fee award by **seventy-five percent.**

## V. OTHER CHALLENGES TO ATTORNEYS' FEES

**\*12** Supervalu has raised numerous other challenges to OOIDA's requests for attorneys' fees, addressed in turn below.

### A. Staffing and Delegation

Supervalu claims that OOIDA has overstaffed and "overlawyered" this matter by relying on eight different attorneys and ten paralegals in Washington, D.C. A prevailing party must exercise "billing judgment" in the context of a fee request, making "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley,* 461 U.S. at 434. The mere use of a large number of attorneys or paralegals, however, does not in itself establish that hours are excessive. *See, e.g., I–Systems., Inc. v. Softwares, Inc.,* Civ. No. 02–1951, 2005 WL 1430323, at \*12 (D.Minn. Mar. 7, 2005) (awarding fees to plaintiffs who had nine attorneys and six support staff work on an action). Rather, it must be apparent that the use of the number of staff is unreasonable.

Supervalu points specifically to OOIDA's class certification motion as involving an unreasonable number of staff because seven lawyers and three paralegals billed time related to this motion. But Supervalu does not point to specific time entries that it holds out as duplicative or unnecessary, and the Court finds none. In fact, OOIDA's records show that the amount of lawyers involved in the class certification might have saved fees because junior attorneys performed tasks such as research.[23]

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

23    For two examples, see OOIDA's billing records category "Class Certification" in which Kelly Vail, who billed at $285 per hour, performed legal research on April 10, 2006 and on August, 11, 2006. (OOIDA's Time R. by Category at 3–6, Dec. 30, 2011, Docket No. 355–1 .)

Supervalu also argues that Herrick–Stare's 1,562 hours spent on this matter demonstrates that he failed to delegate work properly. Specifically, Supervalu argues that Herrick–Stare ought not to have performed tasks such as legal research, which could have been performed by junior attorneys.[24] The Court finds that none of these hours was redundant or unnecessary for several reasons. First, an attorney cannot practice without performing legal research. Even attorneys with years of experience must review case law. *See U.S. ex rel. Thompson v. Walgreen Co.,* 621 F.Supp.2d 710, 715 (D.Minn.2009); *see also Am. Broad. Cos. v. Ritchie,* Civ. No. 08–5285, 2011 WL 665858, at *9 (D.Minn. Feb. 14, 2011)* (allowing an award of attorneys' fees for "time-consuming" legal research). Second, Herrick–Stare performed less research than the attorneys and paralegals working under him on this matter (54.5 hours compared with a total of 125.9 hours of legal research before July 1, 2008). Further, OOIDA's time entries do not show duplication of effort in legal research. *See Rural Water Sys. No. 1 v. City of Sioux Ctr., Iowa,* 38 F.Supp.2d 1057, 1066 (N.D.Iowa 1999), *aff'd sub nom.Rural Water Sys. No. 1 v. City of Sioux Ctr .,* 202 F.3d 1035 (8th Cir.2000)* (reducing the award for hours billed for performing legal research where the hours billed were duplicative). Instead, the time entries show delegation. For example, on the class certification motion, HerrickStare met with junior attorney Kelly Vail to discuss her research.[25] Therefore, the Court finds that the hours spent conducting legal research do not merit reduction solely because a senior attorney performed the research.[26]

24    Supervalu cites as an example a time entry from June 29, 2006, where Herrick–Stare spent 2.2 hours researching case law and billed at $405 per hour. The Court has reviewed the 262 pages of billing records, and finds that, in total, before July 1, 2008, The Cullen Law Firm billed approximately 125.9 hours for legal research. (*See* OOIDA's Time R. By Category,

Docket No. 355–1 at 106–15.)Records include: "1/4/2007: Confer at length with Amy Lloyd re whether restitution requires damages, i.e. is a driver who was reimbursed properly part of the class? Research re Restatement of Restitution and Minnesota case law re collateral source rule. Draft email to Amy Lloyd re research results, $1,039.50," (OOIDA's Time R. at 14), and "1/25/2008: Research re concept of "right" in 8th Cir. Jurisprudence, $247.50,"(*id.* at 114). Herrick–Stare spent approximately 54.5 hours performing legal research during that period and billed each of those hours at $495.

25    See "Class Certification" in which Herrick–Stare conferred with Vail about her research on July 18, 2006. (OOIDA's Time R. at 4.) Vail, not Herrick–Stare, performed six hours of research about case law on July 18, 2006. (*Id.* at 5.)

26    Supervalu similarly argues that OOIDA performed redundant work in researching local rules regarding electronic filing procedures. It argues that the local counsel of Koll Morrison Charpentier & Hagstrom retained by The Cullen Law Firm knew these rules and thus the research was unnecessary. (Supervalu cites one instance of an attorney spending .3 hours reviewing local rules and one instance of a paralegal spending 1.2 hours researching local rules, (Supervalu's Mem. in Opp'n to OOIDA's Mot. for Award of Att'y Fees and Expenses at 39, Jan. 6, 2012, Docket No. 356).) Because local counsel may have very well needed to research these rules, the Court finds that these time entries are not duplicative.

**\*13** Finally, Supervalu contends that the amount of time OOIDA spent on its opposition to Supervalu's motion to compel and on a letter for reconsideration was excessive. Once again, though, Supervalu points to no specific examples of redundant or excessive time entries on these issues. The Court finds that OOIDA's hours spent on all aspects of this action before July, 1, 2008, including the motion to compel and the letter for reconsideration, were appropriate. The Court's overall reduction in attorneys' fees reflects OOIDA's limited success in this matter, but the Court will not reduce the award further for unnecessary hours.

## B. Discovery

The Court must decide if OOIDA can recover fees associated with discovery. Supervalu argues that

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 49 of 147
Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...
2012 WL 6760098

OOIDA's tactics during discovery increased the fees of both parties, while OOIDA contends just the opposite. (Supervalu's Mem. in Opp'n at 35; OOIDA's Mem. in Support of OOIDA's Mot. for Award of Att'y Fees and Expenses at 14, Dec. 2, 2011, Docket No. 346.)Specifically, Supervalu states that because OOIDA opposed a stay of discovery on November 26, 2007 (*see* OOIDA's Time R. at 196), OOIDA should not be able to recover fees for discovery after that point (Supervalu's Mem. in Opp'n at 35). Because the settlement offer that OOIDA eventually accepted was not on the table as of November 26, hours expended in preparing for trial and conducting discovery after that date were reasonable. Therefore, the hours OOIDA expended in opposition to a stay of discovery are compensable.

## C. Trial Preparation

Like the amount requested for time spent on discovery, the amount requested for trial preparation is reasonable. Supervalu argues that OOIDA's trial preparation, which began on January 25, 2008 (OOIDA's Time R. at 244), was unnecessary in light of a proposed settlement. As explained above, however, the Court finds that Supervalu did not offer a substantial settlement until July 1, 2008. Therefore, OOIDA can recover for hours billed under the category of "Trial Preparation" up until July 1 as it was reasonable for OOIDA to prepare for trial until that date.

## D. Hours Billed for Traveling

The Court must determine if hours billed for travel are compensable. A court may reduce fees for travel

time if the Court determines that full compensation would be unreasonable under the facts of the case. *See McDonald v. Armontrout,* 860 F.2d 1456, 1463 (8th Cir.1988). Supervalu contends that idle travel time is not typically billed to a client in the Minneapolis legal market. (First Wells Decl. ¶ 15.) In contrast, OOIDA states that reimbursement for attorney travel time "varies greatly by client" in the Twin Cities legal market. (Decl. of Andrew Morrison at 2, Mar. 6, 2012, Docket No. 371.)The Court notes that, even if Supervalu is correct that idle travel is not "typically" billed to a client, it might be billed to a client under certain circumstances. Further, irrespective of the prevailing travel-billing norm in Minneapolis, hours that are "excessive" are not recoverable. *Hensley,* 461 U.S. at 434.

**\*14** The Court has carefully reviewed the 262 pages that detail OOIDA's billing records. Of the entries before July 1, 2008, the Court has found thirty-seven entries of an attorney billing for doing nothing more than traveling. The Court declines to find that the hours spent traveling for this case are excessive, as explained below. However, the Court finds that the rates charged for this time are unreasonably high, particularly given the number of hours billed for traveling, the rates charged, and the fact that other work was not completed during this time. Accordingly, the Court finds that a reduction of the amount billed for travel alone is reasonable under the facts of this case. The following are the dates, descriptions, and total dollar amount charged for an attorney billing $495 or $435 per hour for traveling:

| | | |
|---|---|---|
| 2/8/2006: | $3,217.50 | Travel to St. Paul for Fed.R.Civ.P. 26(f) conference, |
| 2/9/2006: | $2,227.50 | Travel to D.C. |
| 2/22/2006: | $1,831.50 | Travel to St. Paul, MN for scheduling conference |
| 2/23/2006: | $2,326.50 | Travel to D.C. |
| 4/26/2006: | $2,970.00 | Travel to Minneapolis |
| 4/27/2006: | $2,227.50 | Travel to D.C. |
| 7/19/2006: | $2,227.50 | Travel to Harrisburg, PA for deposition of Pete Swan |

EXHIBIT 5   14

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 50 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

| 7/25/2006: | $2,722.50 | Travel to D.C. |
|---|---|---|
| 8/2/2006: | $2,722.50 | Travel to Minneapolis |
| 8/3/2006: | $495.00 | Travel to Minneapolis airport |
| 8/3/2006: | $2,227.50 | Travel to D.C. |
| 10/31/2006: | $2,326.50 | Travel to Minneapolis |
| 11/1/2006: | $2,970.00 | Travel to D.C. |
| 11/27/2006: | $3,217.50 | Travel to Minneapolis for hearing |
| 11/28/2006: | $2,475.00 | Travel to D.C. |
| 12/17/2006: | $3,217.50 | Travel to Minneapolis for hearing re motion for class certification |
| 12/18/2006: | $1,732.50 | Partial travel from hearing |
| 3/7/2007: | $2,475.00 | Travel to Minneapolis and to courthouse |
| 3/7/2007: | $1,980.00 | Travel to D.C. |
| 7/15/2007: | $2,425.50 | Travel to Minneapolis for scheduling conference |
| 7/16/2007: | $2,821.50 | Travel to D.C. |
| 9/5/2007: | $2,821.50 | Travel to Minneapolis for deposition of Tom Hagen |
| 9/6/2007: | $2,722.50 | Travel to D.C. from deposition in Minneapolis of Tom Hagen |
| 9/9/2007: | $1,584.00 | Travel to Minneapolis for settlement conference |
| 9/11/2007: | $2,227.50 | Travel to D.C. |
| 9/11/2007: | $1957.50 | Return to Washington from settlement conference in St. Paul [27] |
| 12/10/2007: | $2,326.50 | Travel to St. Paul for hearing re Supervalu's motion to compel |
| 12/11/2007: | $2,326.50 | Travel to D.C. |
| 12/19/2007: | $2,722.50 | Travel to Minneapolis |
| 12/20/2007: | $2,574.00 | Travel to D.C. |
| 1/6/2008: | $2,227.50 | Travel to Minneapolis for settlement conference and deposition |

CASE 0:13-cv-00295-JRT-LIB    Doc. 20-1    Filed 03/11/15    Page 51 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

| 1/8/2008: | $2,871.00 | Travel to Washington, D.C. |
| 5/26/2008: | $2,871.00 | Travel to Providence, R.I. |
| 5/27/2008: | $2,871.00 | Travel to Washington, D.C. |
| 5/29/2008: | $2,475.00 | Travel to Chicago for deposition of Michael Pakter |
| 6/3/2008: | $1,485.00 | Travel to Harrisburg |
| 6/4/2008: | $1,485.00 | Travel to Washington, D.C. |
| 6/9/2008: | $2,821.50 | Travel to Minneapolis |

FN27. Cullen, Jr. billed this entry at his rate of $435 per hour. The other thirty-six entries in this section were billed at $495 per hour.

(OOIDA's Time R.)

These thirty-eight entries equal $91,206.00. Because OOIDA claimed an excessive billing rate of $495 or $435 per hour for this time, the Court will reduce these entries by fifty percent before the Court applies the further seventy-five percent reduction that will be applied to all of OOIDA's hours. By reducing the billing rate to fifty percent, the rates change to $247.50 and $217.50. *See McDonald,* 860 F.2d at 1463 (upholding a fifty percent reduction in hourly billing for travel time). The fees billed for time spent traveling, then, are reduced to $45,603.00 ($91,206.00 divided in half).

**\*15** In five additional entries totaling $14,977.50, OOIDA's attorneys have billed their travel time along with other tasks.[28] Because of this block billing, the Court cannot determine the amount of travel time in each entry. Incomplete or imprecise billing records prevent the Court from exercising meaningful review and are grounds for reducing a fee award. *Hensley,* 461 U.S. at 433; *see H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir.1991). As such, the Court will discount these entries at the same rate as that of the purely travel time discussed above. *See Miller v. Woodharbor Molding & Millworks, Inc.,* 174 F.3d 948, 950 (8th Cir.1999) (holding that a district court could institute a percentage reduction for inadequate documentation of attorneys' fees).

[28]

| 7/23/2006: | $4,455.00 | Travel to Dayton for deposition of Carl Schaefer. Confer with Carl Schaefer re issues, facts, and witness skills |
| 7/24/2006: | $2,475.00 | Travel to Kansas City for depositions of Jim Johnston and Joseph Rajkovacz. Confer with both re facts, issues and witness skills |
| 9/9/2007: | $1,957.50 | Travel to St. Paul for Supervalu settlement conference. Confer with Randy–Herrick Stare, Jim Johnston, Joe Rajkovacz, and Carl Schaefer on same |
| 12/19/2007: | $3,697.50 | Travel to Minneapolis and review materials for Barbara Farrell's deposition. Attend same and assist Randall Herrick–Stare on same |
| 12/20/2007: | $2,392.50 | Travel home from Barbara Farrell deposition in Minneapolis. Confer with Randall Herrick–Stare and Paul Cullen, Sr. on results of deposition, planning for settlement conference, and next litigation strategy |

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 52 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

(OOIDA's Time R.) The Court will reduce $14,977.50 by half, for a total of $7,488.75.

Supervalu argues further that travel would have been unnecessary in this action if the independent truck owner-operators had relied completely on local counsel in this matter. But The Cullen Law Firm has represented OOIDA for the last fifteen years in dozens of cases. (Second Herrick–Stare Aff. ¶ 17.) The firm's specialization in "motor carrier law" makes it the understandable choice of counsel for this matter. (Reply Mem. in Supp. of OOIDA's Mot. for Award of Attorney Fees and Expenses at 18, Jan. 27.2012, Docket No. 360.)The Cullen Law Firm has also shown that it possesses the "specialized knowledge and expertise" to bring a case such as this one. *Howard Johnson Int'l., Inc. v. Inn Dev., Inc.,* Civ. 07–1024, 2008 WL 2563463, at *1 (D. S.D. June 23, 2008). Accordingly, given the subject matter and the plaintiff, The Cullen Law Firm has satisfied its burden to show that it is a reasonable choice of counsel. *See Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140–41 (8th Cir.1982) (stating that the party seeking the fees for out-of-town counsel has the burden to show that out-of-town counsel is necessary).

### E. Local Counsel

The Court must determine if the attorneys' fees of local counsel, the firm Koll Morrison Charpentier & Hagstrom, are recoverable. Andrew Morrison serves as local counsel in this action and billed many entries of less than one hour for "receiving and reviewing" documents that The Cullen Law Firm authored and submitted to this Court. The Court finds that the billing entries that Morrison submitted are reasonable. Morrison's billing, including time entries of less than half an hour for reviewing documents, are compensable because they include small time entries for reasonable and necessary tasks involved with local counsel's representation of OOIDA. *See Gonzalez v. Barnhart,* Civ. No. 01–499, 2002 WL 1839242, at *3 (D.Minn. Aug. 9, 2002) (awarding fees for time spent reviewing documents and performing "routine activities"); *see also Richemont Int'l, S.A. v. Clarkson,* Civ. No. 07–1641, 2008 WL 4186254, at *2 (D.Minn. Sept. 5, 2008) (awarding fees for local counsel). Therefore, the Court will award OOIDA $27,156.50 in fees for local counsel, minus the reduction for lack of success.

### F. Secretarial Tasks

**\*16** The Court must decide whether tasks performed by paralegals are compensable. The Court first must determine if the specific tasks in question are compensable. Second, the Court must determine if the tasks are compensable at the rate OOIDA submitted.

In question are tasks that Supervalu argues are secretarial in nature. Supervalu argues that, because some tasks here are secretarial in nature, they are not compensable. However, tasks such as "forwarding, copying, delivering, and indexing documents" can be compensable where the tasks are performed in a reasonable amount of time and at a reasonable billing rate. *I–Systems.,* 2005 WL 1430323, at *14.[29] Furthermore, paralegal work at market rates is compensable. *Weitz Co. v. MH Washington,* 631 F.3d 510, 535 (8th Cir.2011). As explained below, the Court finds that the entries here are reasonable because they are complex tasks appropriately performed by paralegals for a reasonable amount of time.

[29]  The Court will not go so far as to state that certain kinds of tasks may never be performed by paralegals or attorneys. To do so would ignore the realities of litigation and the varying resources of legal offices. The Court must instead consider the amount of time that lawyers and paralegals spent on certain tasks and determine the reasonableness of the rates they charged for such tasks.

First, in the "Docket Management" category of OOIDA's records, there are 115 entries. Each entry contains a task performed by a paralegal; ninety-three of the entries deal with managing and organizing pleadings. In complex litigation, it is reasonable that the specialized training of a paralegal is utilized to manage and organize these materials. Further, eighty-three of the 115 entries are for times of a half hour or less. The Court finds that the short amount of time spent managing and organizing pleadings at the lower billing rate of a paralegal does not warrant a reduction in the fees for managing a complex class action such as this one.

Next, under "Summation/Case Management," OOIDA seeks compensation for the time spent printing and organizing files.[30] As with the "Docket Management"

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 53 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

category, the "Summation/Case Management" category can generally be summarized as a paralegal organizing a complex database. These entries are billed by a paralegal with a much lower rate than an attorney. Cf. *I–Systems.*, 2005 WL 1430323 at * 14 (withholding attorneys' fees when clerical tasks were performed by an attorney). Therefore, OOIDA is able to recover fees for the hours billed in these categories.

[30]     "**Summation/Case Management** Brickell Paralegal .5 $70.00. Assist Jane with printing list of files from Progressive Logistics; prepare same for Jane. 7/13/2006."(OOIDA's Time R. at 223.)

"**Summation/Case Management** Brickell Paralegal .25 $35.00. Print latest and greatest Progressive Logistics monthly check/cash transactions report and summary for Kelli Vail; edit footnote on summary report. 8/14/2006."(OOIDA's Time R. at 226.)

In other entries, OOIDA seeks compensation for clerical tasks. Under "Daubert Motions," OOIDA has requested reimbursement for a paralegal to spend one half hour to "prepare and organize" travel arrangements for an attorney. (OOIDA's Time R. at 26.) HerrickStare contends that this entry was for packing "litigation bags." (Reply Mem. in Supp. at 23.) The Court does not decide whether this specific entry is compensable because the entry occurred after July 1, 2008.

## G. Billing Errors

Finally, the Court will withhold from OOIDA fees that have been erroneously billed and acknowledged as such by OOIDA. OOIDA admits to two errors in its billing records. OOIDA submitted an erroneous record of 14.1 hours for Herrick–Stare on March 21, 2006. (OOIDA's Time R. at 60.) OOIDA acknowledges that the correct amount of time should have been .3 hours, not 14.1 hours. (Reply Mem. in Supp. at 21.) The difference in the fee calculation for that day is $6,831.00. OOIDA also acknowledged another billing error, a redundant time entry of 3.8 hours for Cullen, Jr. for November 9, 2007. (OOIDA's Time R. at 48–49.) OOIDA's award will not include this erroneously billed $1,653.00. Supervalu contends that there are likely more errors that exist in OOIDA's records.[31] Supervalu, however, has pointed to no further errors and the Court has found none.

[31]     Supervalu cites two examples of allegedly redundant billing, but the Court does not find the billing to be redundant. First, Supervalu argues that two time entries of Paul Cullen, Sr., with the same description on the same day must be redundant. (See Supervalu's Mem. in Opp'n at 40; OOIDA's Time R. at 3.) Next, Supervalu argues that similar entries from Paul Cullen, Jr., on consecutive days must be redundant. (See Supervalu's Mem. in Opp'n at 40–41; OOIDA's Time R. at 22.) But the Court finds Supervalu's arguments to be without merit. For the first time entry at issue, the Court has cross-checked the billing records of Cullen, Sr., with those of Herrick–Stare and determined that the two attorneys did in fact meet on that day for the amount of time listed in Cullen, Sr.'s two billing entries. For the second time entry at issue, the Court finds that the descriptions are not identical and that the amount of time spent on the motion over two consecutive days is not unreasonable.

## H. Conclusion on Attorneys' Fees

***17** After reviewing all of the billing records that OOIDA submitted, the Court awards the following attorneys' fees.[32] The attorneys' fees listed below are the compensable fees for hours billed before July 1, 2008 and before application of the seventy-five percent reduction. The categories listed below are those OOIDA utilized in its billing records.

[32]     The Court finds the entries not specifically discussed above to be reasonable.

| | |
|---|---|
| Class Certification: | $134,038.25 |
| Correspondence: | $4,557.75 |
| Counterclaim: | $5,734.50 |
| Daubert Motion: | $–0– |
| Depositions: | $83,007.58 |
| Discovery, Defendants': | $70,508.50 [33] |
| Discovery, Plaintiffs': | $56,443.35 [34] |
| Docket Management: | $7,732.94 |
| Expert Testimony: | $54,080.77 |
| Fact Investigation: | $37,357.50 |
| Legal Research: | $46,056.88 |
| Letter on "Reasonableness" Issue: | $32,527.00 |
| Motion for Summary Judgment, Defendant's: | $31,029.50 |
| Motion for Summary Judgment, Plaintiffs': | $25,563.00 |

CASE 0:13-cv-00295-JRT-LIB Doc. 20-1 Filed 03/11/15 Page 54 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

| | |
|---|---|
| Motion to Compel, Defendant': | $48,032.00 |
| Motion to Compel, Plaintiffs': | $6,001.50 |
| Planning: | $16,072.50 |
| Pleadings: | $9,030.00 |
| Pre–Filing Activities: | $74,405.25 |
| Pre–Trial Motions: | $–0– |
| Rule 16: | $6,711.00 |
| Rule 26 Activities: | $42,542.00 |
| Settlement, Post–Complaint: | $70,761.87 |
| Settlement, Pre–Complaint: | $5,645.50 |
| Strike 11th Affirmative Defense: | $23,539.50 |
| Strike 8th Affirmative Defense: | $4,800.00 |
| Summation/Case Management: | $63,331.50 |
| Trial Preparation: | $1,176.50 |
| Total: | $960,686.64 |
| | $960,986.64 |
| | *x .25* |
| | = $240,171.66 |
| Minus | $2,128.50 (reduction for palletized loads) |
| Plus [$27,156.50 x .25] | $6,789.13 (local counsel) |
| [ ($45,603.00 + $7,488.75) x .25] | *$13,292.94 (hours billed during travel)* = $258,105.22 for attorneys' fees. |

FN33. The Court has excluded from this category the hours that Cullen, Jr. erroneously billed on November 9, 2007.

FN34. The Court has excluded from this category the hours that Herrick–Stare erroneously billed on March 21, 2006.

## VI. COSTS

The Court must also address if OOIDA is entitled to recover costs. OOIDA seeks to recover costs under 49 U.S.C. § 14704(e), Federal Rule of Civil Procedure 54(d), and 28 U.S.C. § 1920. 49 U.S.C. § 14704(e), the Truth–in–Leasing Regulations of the Motor Carrier Act, requires a court to award "costs of the action." Federal Rule of Civil Procedure 54(d) states that "costs—other than attorney's fees—should be allowed to the prevailing party." "A prevailing party is presumptively entitled to recover all of its costs." *168th & Dodge, LP v. Rave Reviews Cinemas, LLC,* 501 F.3d 945, 958 (8th Cir.2007) (quotation omitted).

Normally, a court may not exceed the limitations on taxable costs enumerated in § 1920 absent contractual or explicit statutory authority to the contrary. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987) (concluding that § 1920 defines the term "costs" as it is used in Rule 54(d)).28 U.S.C. § 1920 provides in relevant part:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

**\*18** (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

In addition to the costs allowed by § 1920, a district court has the discretion to award costs as part of attorneys' fees that are considered "reasonable out-of-pocket expenses" that are "normally charged to a fee paying client," if a federal statute authorizes the specific expense. *Sturgill,* 512 F.3d at 1036;*see Richemont,* 2008 WL 4186254, at \*2 (awarding reasonable expenses because the Lanham Act had been interpreted to allow reimbursement of expenses as part of attorneys' fees).

Here, the Court finds no statutory authorization for costs beyond those outlined in § 1920, and OOIDA cites no authority to the contrary. *See Owner–Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp.,* Civ. No. 00–0258, 2009 WL 2170086, at \*2 (W.D.Mo. July 20, 2009) (finding no statutory authority in 49 U.S.C. § 14704(e) that allows costs to be recovered beyond the costs specifically enumerated in § 1920). Therefore,

CASE 0:13-cv-00295-JRT-LIB  Doc. 20-1  Filed 03/11/15  Page 55 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

the Court will award only costs authorized by 28 U.S.C. § 1920.

OOIDA claims costs totaling $195,325.00. (Aff. of Randall Herrick–Stare at 2.) Of this, The Cullen Law Firm claims $82,808.63 in expenses from airfare, copying, couriers, court fees, facsimiles, faxes, Federal Express, hotels, imaging, local travel, meals, miscellaneous other expenses, PACER service, postage, publication, subpoenas, telephone, transcription, transportation, and Westlaw. Koll Morrison Charpentier & Hagstrom claims expenses totaling $1,295.12, from copying costs, a filing fee, witness fees, mileage and parking, delivery services, postage, and the fee for Motion for Admission *Pro Hac Vice.*Section 1920 allows for only five of these costs: copying, transcription fees, court fees, the fee for admission of attorney *pro hac vice,* and expert fees. Therefore, the Court will discuss only those five categories and will not award the rest of the costs requested. [35]

[35]  OOIDA submitted $16,709.96 in Westlaw expenses, and the Court will discuss that category briefly here. (OOIDA Expenses at 3.) "The Eighth Circuit has squarely held that such expenses may not be added to an attorney's fee award."*Richemont,* 2008 WL 4186254 at *3 (citing *Standley v. Chilhowee R–IV Sch. Dist.,* 5 F.3d 319, 325 (8th Cir.1993)).

OOIDA argues correctly that computer-based research costs can be reimbursed under terms of a negotiated settlement.*See In re UnitedHealth Grp. Inc. S'holder Derivative Action,* 631 F.3d 913, 918 (8th Cir.2011). But computer-based research is not recoverable under a feeshifting statute. *See Standley,* 5 F.3d at 325.Here, OOIDA's application for attorneys' fees and expenses is based on the amount owed to it pursuant to a fee-shifting statute, 49 U.S.C. § 14704(e), and not the terms of a negotiated settlement specifically outlining the fees to which OOIDA is entitled. Therefore, electronic legal research costs are not recoverable.

### A. Copying Costs

OOIDA seeks $6,425 for copying costs from The Cullen Law Firm and $445 in copying costs from Koll Morrison Charpentier & Hagstrom. (OOIDA Expenses, at 2, Dec. 2, 2011, Docket No. 347–1; Invoices of Koll, Morrison, Charpentier & Hagstrom, at 2, Dec. 2, 2011, Docket No. 348–2.)A court may award copying fees if they were incurred for items "necessarily obtained" for use in a case. 28 U.S.C. § 1920(4); *see also Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 763 (8th Cir.2006) In the present case, The Cullen Law Firm provides no information regarding the photocopies for which it seeks costs. The firm has not provided the cost per copy, the number of copies, the date copies were made, or the purpose of any of the copies. Similarly, Koll Morrison Charpentier & Hagstrom lists only the month in which the copies were made but offers no other information. The Court, therefore, cannot determine whether the copies were necessary for this case or if the charges associated with them were reasonable and accordingly will disallow these costs. *See Felder ex rel. Felder v. King,* Civ. No. 07–4929, 2011 WL 2174538, at * 4 (D.Minn. May 31, 2011) (disallowing photocopying costs where "the bare receipts ... gave no basis to determine which, if any, of these photocopies were necessarily obtained for use in the case") (internal quotation marks omitted).

### B. Transcription Fees

 **\*19**  OOIDA seeks $11,803.42 in transcription fees for depositions. A court may award transcription fees if a deposition was "necessarily obtained for use in a case" and was not "purely investigative." 28 U.S.C. § 1920(2); *Smith v. Tenet Healthsystem SL, Inc.,* 436 F.3d 879, 889 (8th Cir.2006). OOIDA submits thirteen transcriptions that occurred before July, 2008, for a total of $11,050.42. (OOIDA Expense Detail R. at 24, Docket No. 347–12.)The Court will award these fees because the depositions occurred before the July 1, 2008 cut-off date, the depositions appear necessary, and it was reasonable before that date to continue discovery.

### C. Court Fees

OOIDA requests court fees of $100 for The Cullen Law Firm (OOIDA Expenses at 2) and $275 from Koll Morrison Charpentier & Hagstrom (Invoices of Koll, Morrison, Charpentier & Hagstrom at 172). The Court will award these fees because they are allowed under § 1920.

CASE 0:13-cv-00295-JRT-LIB   Doc. 20-1   Filed 03/11/15   Page 56 of 147

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

### D. *Pro Hac Vice* Fee

OOIDA requests a fee for Motion for Admission *Pro Hac Vice* of $25 as a cost to Koll Morrison Charpentier & Hagstrom. (Invoices of Koll, Morrison, Charpentier & Hagstrom at 144.) The Court will award this fee because it is allowed under § 1920. *See Craftsmen Limousine, Inc. v. Ford Motor Co.,* 579 F.3d 894, 898 (8th Cir.2009).

### E. Expert Fees

The Court must decide if OOIDA can recover costs for experts. "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co.,* 482 U.S. at 445; *see also Weitz,* 631 F.3d at 535. Under 28 U.S.C. § 1821(a)-(d), witnesses "in attendance ... before any person authorized to take his deposition ... shall be paid an attendance fee of $40 per day for each day's attendance" plus documented travel costs. Those travel costs are taxable as costs under 28 U.S.C. § 1920. *Id.* § 1821(c)(4). Because there is no other explicit statutory or contractual authorization for the taxation of expert fees, the Court finds that OOIDA can recover only the forty dollars per day authorized by 28 U.S.C. § 1821(a)(1). *See Porter v. McDonough,* Civ. 09–2536, 2011 WL 821181, at *2 (D.Minn. Mar. 2, 2011) (awarding forty dollars per day for expert witnesses).

OOIDA specifically seeks compensation for the time and expenses of its three experts: Craig Stanovich, Peter Swan, and Michael Pakter. (Stanovich Billing R., Dec. 2, 2012, Docket No. 347–7; Swan Billing R., Dec. 2, 2012, Docket No. 347–9; Pakter Billing R., Dec. 2, 2012, Docket No. 347–10.) The Court has reviewed the billing records of both the experts and OOIDA and finds that Stanovich testified at a deposition on May 27, 2008, Pakter testified at a deposition on May 30, 2008, and Swan testified at a deposition on June 4, 2008. (OOIDA's Time R. at 39; *Id.;Id.* at 40.) Because the experts are entitled to only forty dollars per day for a deposition, the Court will award OOIDA $120 for testimony at these depositions.

**\*20** OOIDA is also entitled to travel costs associated with these depositions. *See* 28 U.S.C. § 1821(c)(1)-(4). Stanovich incurred a travel cost of $55.56. (Stanovich Billing R. at 14–15.) This cost is awarded. The Court has located no other travel costs submitted for these experts and therefore will award none.[36]

[36]   Local counsel Koll Morrison Charpentier & Hagstrom submitted an invoice dated May 4, 2009, that included costs for two witnesses: Farrell, $62.00; Hagen, $72.12. (Invoices of Koll, Morrison, Charpentier & Hagstrom at 43.) These costs are not recoverable because they were incurred after July 2008.

### F. Conclusion on Costs

The Court will award the following costs:

| | |
|---|---|
| Transcription Fees: | $11,050.42 |
| Court Fees: | $375.00 |
| *Pro Hac Vice*: | $25.00 |
| Expert Fees: | $120 + $55.56 |
| **Total:** | **$11,625.98** |

1. Plaintiffs' Motion for Award of Attorney Fees and Expenses [Docket No. 344] is **GRANTED in part** and **DENIED in part.**

2. Plaintiffs' request for attorney fees is **GRANTED** in the amount of $258,105.22.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

2012 WL 6760098

3. Plaintiffs' requests for costs and expenses is **GRANTED** in the amount of $11,625.98.

It is **FURTHER ORDERED** that the parties are to show cause on or before twenty-five (25) days from the date of this Order why the Court should not unseal the Order and to specify any portion of the Order warranting redaction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2014 Thomson Reuters. No claim to original U.S. Government Works.   EXHIBIT 5

2011 WL 851479
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

Nicole MADISON, Plaintiff,

v.

Daniel WILLIS, in his individual capacity
as a Minneapolis police officer, Defendant.

Civil No. 09–930 (DWF/
AJB). | March 9, 2011.

**Attorneys and Law Firms**

Jeffrey S. Storms, Esq., Ryan O. Vettleson, Esq.,
and Robert Bennett, Esq., Gaskins, Bennett, Birrell,
Schupp, LLP, for Plaintiff.

C. Lynne Fundingsland, and Darla J. Boggs, Assistant
City Attorneys, Minneapolis City Attorney's Office,
for Defendant.

**ORDER**

DONOVAN W. FRANK, District Judge.

**\*1** This matter is before the Court on a Motion for an
Award of Costs, including Reasonable Attorneys' Fees
under 42 U.S.C. § 1988 brought by Plaintiff Nicole
Madison. For the reasons set forth below, the Court
grants the request in part.

Plaintiff brought this action against Defendant,
alleging that Defendant used excessive force against
her on December 8, 2008. The matter went to
trial, and on December 9, 2010, the jury found
that Defendant used excessive force and awarded
Plaintiff compensatory damages in the amount of
$21,000. Plaintiff sought, but was not awarded,
punitive damages. Plaintiff now seeks an award
of costs, including reasonable attorney fees, in the
amount of $281,188.57.[1] This amount reflects fees
and costs for services rendered by Plaintiff's attorneys
through the preparation of her reply brief on the
present motion. Defendant opposes Plaintiff's present
request, asserting that the amount should be reduced
to $155,452.29. Defendant asserts that the request is

unreasonable and contains unsupportable or improper
fees.[2]

[1] Plaintiff originally sought $270,280.58
(reflecting $258,280.58 for services rendered by
Plaintiff's attorneys through the verdict and an
additional $12,000 for the preparation of the
present motion). In her reply, Plaintiff indicated
that she voluntarily withdraws $792.01 in fees
and costs and conceded a $2,295 reduction based
on the actual fee in presenting this motion.
However, Plaintiff also requested an additional
$13,995 in fees for the preparation of her reply
brief.

[2] Plaintiff has agreed to withdraw $792.01 in fees
and costs which Defendant opposed. These fees
and costs include $203.72 for a celebratory event
on December 8, 2010; $40.00 in erroneously
charged paralegal fees; $19.29 in mileage
reimbursement; and $529.00 in fees associated
with three time entries for administrative tasks
that were performed by attorneys.

In any action brought to enforce 42 U.S.C. § 1983, "the
court, in its discretion, may allow the prevailing party,
other than the United States, a reasonable attorney's fee
as part of the costs." 42 U.S.C. § 1988(b). "[A] plaintiff
'prevails' when actual relief on the merits of his claim
materially alters the legal relationship between the
parties by modifying the defendant's behavior in a way
that directly benefits the plaintiff." Farrar v. Hobby,
506 U.S. 103, 111–12 (1992). To be a prevailing party,
a plaintiff "must 'succeed on any significant issue
in litigation which achieves some of the benefit the
parties sought in bringing suit.' " Forest Park II v.
Hadley, 408 F.3d 1052, 1059 (8th Cir.2005) (quoting
Farrar, 506 U.S. at 109). "A judgment for damages
in any amount, whether compensatory or nominal,
modifies the defendant's behavior for the plaintiff's
benefit by forcing the defendant to pay an amount of
money he otherwise would not pay." Farrar, 506 U.S.
at 113. While the amount of the award does not alter
the prevailing party inquiry, it will bear on the propriety
of fees awarded under § 1988. Id. at 114.

In calculating reasonable attorney fees, the Court
begins by calculating the "lodestar"—the product of
the number of hours reasonably expended on the
litigation and the reasonable hourly rate at which those
hours should be billed. Hensley v. Eckerhart, 461 U.S.

424, 433 (1983). The reasonableness of a fee depends upon a number of factors, including "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." *Jenkins v. Missouri,* 127 F.3d 709, 718 (8th Cir.1997).

The Court has reviewed Plaintiff's submission. Defendant challenges both the hourly rates requested and many of the claimed fees and costs. With respect to hourly rates, the fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984)."A rate determined this way is normally deemed to be reasonable." *Id.* Plaintiff's counsel seeks to be reimbursed in this case at rates ranging from $180–$600 per hour for the attorneys on the file and $100–$125 per hour for paralegals.[3] Rates similar to these have been deemed reasonable in this district. *See King v. Turner,* 05–CV–0388, 2007 WL 1219308, at *2 (D. Minn. April 24, 2007) (approving rate of $500 per hour in April 2007). Moreover, the reasonableness of the hourly rates is supported by the affidavits of Brian O'Neill and Eric Hageman. The Court finds that the hourly rates requested are reasonable.[4]

[3]    These are the current rates for Plaintiff's attorneys, which are appropriately applied. *See Missouri v. Jenkins,* 491 U.S. 274, 283 (1989).

[4]    The Court notes that $600 per hour is on the very upper end of what is reasonable in the prevailing community. That rate was charged for work performed by Robert Bennett, a managing partner at Plaintiff's counsel's firm who runs the civil rights group. Robert Bennett billed a total of just under twenty hours on the file. The other attorneys, who performed the bulk of the legal work on Plaintiff's case, charged rates ranging from $180 to $350 per hour.

**\*2** Defendants also challenge the number of hours expended on Plaintiff's case. Specifically, Defendants assert that Plaintiff did not indicate that any hours billed were reduced or written off, but that they reflect charges for which no private client would expect to be billed. In addition, Defendants argue that a substantial portion of fees is the product of overstaffing, which resulted in multiple conferences and the same work being performed by multiple attorneys. Defendants also argue that the fee award should be reduced due to vague time entries and to eliminate time spent on claims upon which Plaintiff did not prevail. Some of these issues have been resolved by the concessions noted in Plaintiff's reply brief.

As to Defendant's remaining challenges regarding the reasonableness of the hours submitted, the Court respectfully finds such challenges are largely without merit. For example, the Court declines to reduce the request based on allegations of overstaffing, excessive conferencing, or duplicative work by Plaintiff's legal team. Plaintiff was successful in her civil rights claim, and it is likely that her success was due at least in part on the composition of the legal staff and their consultation with each other.

In addition, Defendant asserts that the $21,000 jury award bears on the extent of Plaintiff's success at trial and that Plaintiff's fee request includes over $12,000 related to issues upon which Plaintiff did not prevail. Given the facts of this case, the Court concludes that Plaintiff achieved significant success. Accordingly, the Court declines to reduce the award because Plaintiff failed to obtain a larger compensatory award, punitive damages, or a positive ruling on every pre-trial motion or issue at trial.

The Court does find, however, that several portions of Plaintiff's request should be reduced. In particular, Defendant challenges Plaintiff's request for reimbursement for $500 in consultation fees and $1,000 for a deposition of Dr. Van Beek. Defendant argues that these fees are not recoverable because they are expert fees. Plaintiff claims that these fees are not expert fees, but that they represent costs that a treating doctor charged for time spent in writing a narrative report and testifying. The Court disagrees and concludes that even though Dr. Van Beek appeared at trial as a consulting physician and was not properly designated as an expert, Plaintiff intended Dr. Van Beek to appear as an expert. Section 1988 does not provide for such fees, except for cases brought pursuant to 42 U.S.C. §§ 1981 and 1981a. 42 U.S.C.

**Madison v. Willis, Not Reported in F.Supp.2d (2011)**

2011 WL 851479

§ 1988(b) and (c). Accordingly, Plaintiff's cost request will be reduced by $1,500.

Finally, the Court finds that Plaintiff's request for an additional $13,995 for fees and costs associated with the preparation of her reply brief is unreasonably high. The Court reduces this amount by 30% ($4,198.50), allowing reimbursement in the amount of $9,796.50.

### ORDER

Thus, based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

**\*3** 1. Plaintiff's Motion for an Award of Costs, including Reasonable Attorneys' Fees under 42 U.S.C. § 1988 (Doc. No. [113] ) is **GRANTED IN PART** in the amount of $275,490.07.

2. Defendants are hereby **ORDERED** to remit to Plaintiff a total amount of $275,490.07 for attorney fees and costs.

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1384084
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

Ronald R. ROSEN and
June I. Trnka, Plaintiffs,

v.

Detective Brian WENTWORTH, Sergeant
Bill Schmidt, and Officer Roxanne Affeldt,
in their individual and official capacities
as police officers for the City of Champlin,
and Officer Robert Topp, in his individual
and official capacity as a police officer
for the City of Plymouth, Defendants.

Civil No. 12–1188 ADM/
FLN.    |    Signed April 9, 2014.

**Synopsis**
**Background:** Homeowners brought § 1983 action
in state court against police officers who conducted
warrantless search of rear enclosed porch of their
home while looking for burglary suspect. Following
removal, case proceeded to trial, and jury returned a
verdict in homeowner's favor. Officers moved for a
directed verdict or, in the alternative, a new trial, and
homeowners moved for attorney fees and costs.

**Holdings:** The District Court, Ann D. Montgomery, J.,
held that:

[1] officers were not justified, under knock and
talk exception to Fourth Amendment, in conducting
warrantless entry;

[2] jury could hear evidence of subsequent warrant
application and lawful search pursuant to warrant;

[3] question of punitive damages was properly put to
jury;

[4] district court's decision to deny a mistrial did not
result in a miscarriage of justice; and

[5] a 50% reduction of the $255,929 in attorney fees
requested by plaintiffs was appropriate.

Ordered accordingly.

**Attorneys and Law Firms**

Paul Applebaum, Esq., and Andrew M. Irlbeck, Esq.,
Applebaum Law Firm, St. Paul, MN, on behalf of
Plaintiffs.

Jason M. Hiveley, Esq., Iverson Reuvers Condon,
Bloomington, MN, on behalf of Defendants.

**MEMORANDUM OPINION AND ORDER**

ANN D. MONTGOMERY, District Judge.

**I. INTRODUCTION**

**\*1** This matter is before the undersigned United
States District Judge on Defendants Sergeant
Bill Schmidt and Officer Roxanne Affeldt's
("Defendants") Renewed Motion for a Directed
Verdict or, in the Alternative, a New Trial [Docket
No. 55]. Also before the Court is Plaintiffs' Ronald
R. Rosen and June I. Trnka's ("Plaintiffs") Motion for
Award of Attorney's Costs and Fees [Docket No. 77].
For the reasons stated herein, Defendants' motion is
denied, and Plaintiffs' motion is granted in part and
denied in part.

**II. BACKGROUND** [1]

This case stems from a search conducted by
Defendants Schmidt and Affeldt of the rear enclosed
porch of Plaintiffs' home. On January 8, 2010, at
approximately 12:55 a.m., Defendants responded to
a burglary at a veterinary hospital in Champlin,
Minnesota. The responding officers employed a police
canine unit in an attempt to track and apprehend the
burglar, who had fled the crime scene. The canine
unit, operated by Officer Robert Topp, [2] initially found
a scent at the veterinary hospital, but lost the scent
nearby. Defendants continued to sweep the area using
the canine unit, moving further along Downs Road

and away from the hospital. After failing to find a scent as they proceeded along Downs Road, the canine eventually led Sergeant Schmidt and Officers Affeldt and Topp to Plaintiffs' home. Affeldt testified that she knocked on Plaintiffs' front door and received no response. Schmidt and Affeldt went to the rear of the home, entered the enclosed porch without knocking, and proceeded to knock on the interior house door. Receiving no response, Defendants inspected the belongings in the porch, took Rosen's shoes, and departed to return to the hospital area.

Defendants used their investigation, and Rosen's shoes, to obtain a search warrant for Plaintiffs' home. Weeks later, on January 22, 2010, Champlin police officers detained Rosen and executed the search warrant. For over an hour while the search proceeded, Detective Brian Wentworth questioned Rosen, including repeated threats to arrest him or a member of his family. The search ultimately did not yield any evidence connected to the burglary.

About two weeks later, after reviewing the reports and evidence, Wentworth concluded that it was "obvious" Rosen's shoes did not match the footprints at the scene of the burglary, and concluded Plaintiffs played no role in the crime. Wentworth, who had completed the search warrant application based on information from Schmidt and Affeldt, then returned Rosen's shoes and apologized.

On or about April 30, 2012, Plaintiffs initiated this action in state court, shortly after which Defendants removed the action to federal court. *See* Not. of Removal [Docket No. 1]. Plaintiffs alleged four counts: the first alleged a violation of 42 U.S.C. § 1983, and the remaining three alleged related state law violations. Defendants moved for summary judgment and Detective Wentworth was dismissed, as were Plaintiffs' state law claims. Order, October 9, 2013 [Docket No. 27].

**\*2**  The case proceeded to trial on January 21, 2014. As part of their motions in limine, Plaintiffs requested a directed verdict finding the search of their home unconstitutional as a matter of law. Before the start of trial, the Court held it would instruct the jury that the January 8, 2010 warrantless entry into Plaintiffs' porch and the search of their belongings violated Plaintiffs'

Fourth Amendment rights as a matter of law. The Court also held that while the resulting search warrant issued lawfully, the jury could decide whether the January 22, 2010 search and detainment occurred as the result of the illegal search, and to what degree, if any, this search should affect an award of damages.

On January 23, 2014, the jury returned a verdict in Plaintiffs' favor. The jury awarded $10,000 in compensatory damages to Plaintiffs Rosen and Trnka. The jury also found Defendant Schmidt liable for $55,000 in punitive damages, and Defendant Affeldt liable for $15,000 in punitive damages. *See* Special Verdict Form [Docket No. 62].

### III. DISCUSSION

#### A. Motion for Judgment as a Matter of Law

At the close of Plaintiffs' case-in-chief, Defendants moved for judgment as a matter of law, or, in the alternative, a mistrial, based on the Court's ruling regarding the constitutionality of Defendants' initial search. *See* Fed.R.Civ.P. 50(a)(2). The motion was denied. Defendants now renew their motion.

**[1]  [2]  [3]**  Judgment as a matter of law is appropriate only when there is insufficient evidence to permit a reasonable jury to find in favor of the nonmoving party. *Gardner v. Buerger,* 82 F.3d 248, 251 (8th Cir.1996). The facts must be viewed in the light most favorable to the verdict, assuming that the jury resolved all evidentiary conflicts in favor of the prevailing party. Van *Steenburgh v. Rival Co.,* 171 F.3d 1155, 1158 (8th Cir.1999). A jury's verdict should not be overturned unless no reasonable juror could have found in favor of the prevailing party. *Id.;Ryther v. KARE 11,* 108 F.3d 832, 836 (8th Cir.1997).

**[4]**  Defendants argue qualified immunity should have shielded them from liability because their entry and search of the porch was constitutional, and that even if it was not, it was not clearly established that their actions were unconstitutional. Defendants' primary argument is that the "knock and talk" exception to the Fourth Amendment applied to their actions. Evidence at trial demonstrated, Defendants argue, that the officers knocked on the front door of Plaintiffs' home before proceeding to the rear, thus satisfying the

Court's interpretation of the knock and talk exception. Regardless, Defendants argue they were justified in concluding the rear porch was the main entry to the residence.

**[5]** **[6]** The knock and talk exception to the Fourth Amendment does not apply to the facts in this case. Defendants misunderstand the Court's interpretation of *United States v. Wells,* 648 F.3d 671, 680 (8th Cir.2011).*Wells* held that officers acting in accordance with the knock and talk rule must attempt to reach a home's residents by the most logical route; in that case, the front door. But knocking at the most logical entry point to the home does not then create a blanket exception under which officers may proceed to knock at every other door to the home, or to search the entire curtilage. As this Court held at summary judgment, the license granted by the knock and talk rule is the same license granted to an unknown visitor: it "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) *leave.*" *Florida v. Jardines,* ––– U.S. ––––, 133 S.Ct. 1409, 1415, 185 L.Ed.2d 495 (2013) (emphasis added). Defendants testified at trial that they knocked at the front door, demonstrating that they saw the door and knew it was the logical point of entry. But Defendants did not leave after failing to raise Plaintiffs. Instead, Defendants proceeded to search the rear porch. The knock and talk rule does not protect this conduct. *See id.*

**\*3** Defendants also unreasonably concluded that the rear porch of Plaintiffs' home was the visitor's entrance. There was no dispute—at summary judgment or at trial—that the officers saw the front door from the road, and that they knew it had paved path leading to it. The same factors discussed at summary judgment, and in *Wells* and *Jardines,* again apply here. *See Rosen v. Wentworth,* No. 12–1188, 2013 WL 5567447, at \*7 (D.Minn. Oct. 9, 2013). No reasonable juror could conclude that the front door was anything other than the "logical" point for visitors to attempt to engage the occupants. *Wells,* 648 F.3d at 680.After entering the rear porch in the middle of the night, Defendants again attempted to raise Plaintiffs but failed to do so. Defendants then searched Plaintiffs' personal belongings and took property without leaving a receipt or any other indication of their actions or the fact they had been there. A credibility assessment is

not necessary to determine this conduct falls outside of the typical license granted to visitors, and thus outside of the knock and talk rule. The same conduct by one not a police officer would be considered theft.

Whether Defendants knocked on the front door or not, no reasonable jury could have concluded that Defendants constitutionally entered and searched Plaintiffs' property. As a result, the Court's instruction regarding the January 8, 2010 search was not in error, and the jury's damages verdict is supported by the evidence at trial.

**B. Motion for New Trial**

**[7]** **[8]** Defendants move in the alternative for a new trial. *See*Fed.R.Civ.P. 50(b)(1), 59(a)(1). The authority to grant a new trial is in the discretion of the trial court. *Gray v. Bicknell,* 86 F.3d 1472, 1480 (8th Cir.1996). A new trial is appropriate when the first trial resulted in a "miscarriage of justice" due to a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial. *Id.*

For the same reasons summarized above, Defendants argue the Court committed legal error by instructing the jury that the January 8, 2010 search and seizure was unconstitutional. As discussed above, this argument does not warrant a new trial.

**[9]** In addition, Defendants argue the jury should not have heard evidence regarding the search warrant application and the January 22, 2010 search of Plaintiffs' home because these events were legal and irrelevant to the original search. At summary judgment, the Court held that the search warrant was not obtained based on knowing or reckless falsehoods, and that as a result, the subsequent search did not violate Plaintiffs' constitutional rights. The jury received instructions accordingly. But a reasonable jury could have still concluded that the search warrant application and the January 22, 2010 search were the direct or probable consequences of the January 8, 2010 entry and search. As a result, the jury was allowed to hear evidence of those events and instructed to decide what damages, if any, directly stemmed from the initial entry and search. Defendants cite no legal authority for why a jury should be precluded from hearing evidence of events that occurred after an initial illegal act, if those subsequent events—though themselves legal—

may have caused injury to Plaintiffs. As a result, this challenge does not demonstrate the need for a new trial.

**\*4** **[10]** Also on the subject of damages, Defendants argue the jury should not have been instructed on punitive damages. In support, Defendants argue the Court's prior rulings held Defendants did not make knowingly false statements in their reports or in Wentworth's application for the January 22, 2010 search warrant. At trial, however, Plaintiffs introduced evidence and elicited testimony that provided a reasonable basis for awarding punitive damages. *See Coleman v. Rahija,* 114 F.3d 778, 787 (8th Cir.1997) (holding jury may determine punitive damages where defendant's conduct involves "evil motive or intent" or "reckless or callous indifference" to federally-protected rights) (citations omitted). Schmidt made a series of crude personal attacks on Rosen's character, and suggested he intended to pursue Rosen out of anger or personal animosity. Plaintiffs also introduced evidence suggesting Defendants pursued their investigation of Rosen in deliberate ignorance of the facts. This evidence could allow a reasonable factfinder to conclude Defendants recklessly disregarded Plaintiffs' constitutional rights. As a result, the question of punitive damages was properly put to the jury.

**[11]** Finally, Defendants argue the Court erred by failing to declare a mistrial during closing arguments. In his closing argument, Plaintiffs' counsel Paul Applebaum stated without elaboration that Defendants "don't pay." Defendants argue Applebaum's statement implied to the jury that Defendants would not suffer personal financial impact as a result of a verdict against them, and thus Applebaum improperly encouraged the jury to find more than nominal damages. Plaintiffs respond that Applebaum's "don't pay" statement was in response to, and an invited error prompted by, Defendants' counsel's own closing argument. *See Roth v. Homestake Mining Co. of Cal.,* 74 F.3d 843, 845 (8th Cir.1996) ("An erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned."). In his closing argument, Defendants' counsel Jason Hiveley told the jury Defendants should not be required to "finance" Plaintiffs' "new American dream." Application of the invited error doctrine aside, these two statements are of comparably prejudicial

effect. The parties discussed this issue at sidebar, and the jury received an appropriate curative instruction. The decision to deny a mistrial on this basis did not result in a "miscarriage of justice." *Gray,* 86 F.3d at 1480.

## C. Plaintiffs' Motion for Attorney's Costs and Fees

42 U.S.C. § 1988(b) states the trial court may allow reasonable attorney's fees to a party that prevails in an action to enforce § 1983. As indicated above, Defendants contend the jury reached its verdict as the result of error. Nevertheless, for the purposes of Plaintiffs' fee motion, Defendants do not dispute that Plaintiffs prevailed at trial.

**[12]** **[13]** The Supreme Court has outlined several factors a trial court may weigh when determine whether a request for attorney's fees is reasonable:

> **\*5** (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart,* 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citing *Johnson v. Ga. Highway Exp., Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)). The court reviewing the fee request need not explicitly consider every factor. *Griffin v. Jim Jamison, Inc.,* 188 F.3d 996, 997 (8th Cir.1999). The court should start assessing attorney fees by

determining the lodestar, which is "calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir.2002).

Plaintiffs' counsel request $255,929.00 in attorney's fees and $1,070.69 in costs, for a total lodestar amount of $256,999.69. The fee request represents 305.9 hours of work performed by Applebaum, 441.9 hours of work performed by his associate Andrew Irlbeck, 30.4 hours of worked performed by Irlbeck as a law clerk, and 274.2 hours of work performed by Elizabeth Meske, paralegal for the firm. Paul Applebaum Aff. [Docket No. 79] Ex. 5 ("Fee Invoice").

[14] Plaintiffs have stated reasonable hourly rates. Applebaum, an attorney for over 20 years, has stated an hourly rate of $450. Irlbeck, an attorney for about three years, has stated a rate of $225, along with a rate of $95 for when he worked on the case as a clerk. Meske, the firm's paralegal, has stated a rate of $95. Defendants argue Plaintiffs' counsel have not justified their billing rates, but Defendants do not offer any argument as to why these rates should be discounted or to what degree. Further, Plaintiffs submit three affidavits from local attorneys confirming the reasonableness of Applebaum's stated hourly rate. *See* Applebaum Aff. Ex. 1 (Earl Gray Aff.), Ex. 2 (Paul Engh Aff.), Ex. 3 (Eric Hageman Aff.). Similar cases in this district also appear to support the stated hourly rates. *See, e.g., Rasmusson v. City of Bloomington,* No. 12–632, 2013 WL 3353931, at *2–3 (D.Minn. July 3, 2013). Based on their relative experience, the supporting materials, and the Court's own knowledge of the market, Plaintiffs' stated rates are reasonable. *See Warnock v. Archer,* 397 F.3d 1024, 1027 (8th Cir.2005) ("[W]hen fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates.").

Defendants make several objections to the hours claimed by Plaintiffs. Defendants argue counsel's billing statements are in a vague, "block style," and should be discounted as a result. Defendants also argue counsel has overbilled or "over-lawyered" much of their work in this case, and that counsel has improperly billed for clerical tasks. Further, Defendants argue Plaintiffs should not be allowed to recover "fees on fees," or attorney's fees for preparing the present

motion. Finally, after subtracting various amounts for the previous objections, Defendants argue Plaintiffs' remaining fees should be reduced by 75% due to Plaintiffs' limited recovery, resulting in a total fee of $32,450.48. [3]

*6 [15] A reduction of counsel's requested fees is appropriate. While counsel's billing statements are not so vague as to warrant a blanket reduction, counsel have "over-lawyered" or overbilled their work on this case. For example, Applebaum spent a total of 6.9 hours preparing for his closing argument, and Irlbeck and Meske assisted Applebaum for 5.1 and 2.1 hours, respectively. *Id.* at 24, 33.Thus, Plaintiffs' counsel spent a total of 14.1 work-hours preparing a 45–minute closing argument, which was given at the close of a three-day trial. Counsel also spent about 58.3 hours, both before and after trial, re-listening to the same few hours of audio tape and re-reading the same few police reports. [4] *See id.* at 10, 11, 22, 23, 29, 31, 32.Counsel's billing statements reflect several similar inefficiencies.

Counsel's claimed hours are also excessive in light of the nature of the litigation and subsequent trial. The facts of this case related primarily to the events of a single night and the subsequent aftermath. The number of parties and conduct at issue was relatively straightforward. Unlike many § 1983 claims, here there was no use of force by the police officers, nor were there any physical injuries. As a result, discovery was limited to a small number of witnesses and relatively few material pieces of evidence. The trial itself was brief, and testimony was completed in two days. Additionally, the legal issues in summary judgment and at trial were not particularly novel or complex. These facts all weigh strongly in favor of reducing counsel's requested fees.

Defendants' request for a reduction in fees due to the dismissal of defendants and claims is also partially persuasive. Three state law claims and two defendants were dismissed from this action with prejudice. Although Plaintiffs obtained significant damages at trial, it cannot be ignored that Plaintiffs named Defendants and alleged claims for which they performed work but ultimately did not obtain recovery. *See Hensley,* 461 U.S. at 436, 103 S.Ct. 1933 ("If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the

litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."). Plaintiffs' partial success warrants a reduction in fees, but the strength of their verdict does not support the 75% reduction suggested by Defendants.

In addition, counsel attempts to collect attorney's fees for a number of routine clerical tasks. Although Defendants slightly overstate the amount of billed clerical work, most of Defendants' estimate is accurate. Plaintiffs' counsel recorded about 100 hours for tasks such as printing documents, mailing letters, and collating files. *See* Jason Hively Aff. [Docket No. 84] Ex. E. Such tasks cannot fairly be accounted for at an attorney's, or even a paralegal's, billing rate. *See, e.g., I–Systems, Inc. v. Softwares, Inc.,* No. Civ.021951, 2005 WL 1430323, at *14 (D.Minn. Mar. 7, 2005); *MacGregor v. Mallinckrodt, Inc.,* No. 01–828, 2003 WL 23335194, at *12 (D.Minn. July 21, 2003).

**\*7** **[16]** With respect to "fees on fees," "[t]ime spent preparing fee applications is generally compensable."*El–Tabech v. Clarke,* 616 F.3d 834, 843–44 (8th Cir.2010). However, such fees should not be excessive. *See id.* (finding 77.7 hours excessive given amount properly compensable). Here, counsel spent over 60 hours, or $15,990, preparing this motion for attorney's fees. Given the issues underlying the litigation, and the nature of the motion at hand, this amount is excessive. The compiling of fees, and the subsequent motion practice, did not involve particularly complex or novel issues.

Plaintiffs' obtained a favorable verdict after significant effort and investment, and attorneys should not be discouraged from litigating § 1983 cases with similarly commendable effort. Nevertheless, based on a careful review of the billing statements, a reduction of 50% reflects a fair billing for the work performed in this case. *See Kline v. City of Kansas City,* 245 F.3d 707, 709 (8th Cir.2001). Though not an exact calculation,

the reduction accounts for the overbilled or "over-lawyered" work, the nature of the case and its ultimate result, the fees requested for clerical tasks, and the excessive time spent preparing the present motion. This reduction also reflects the dismissal of three claims and Defendants Wentworth and Topp. Even with the reduction, the amount of attorney's fees still significantly exceeds the amount of their clients' recovery from a generous jury.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Renewed Motion for a Directed Verdict or, in the Alternative, a New Trial [Docket No. 55] is **DENIED.**

2. Plaintiffs' Motion for Award of Attorney's Costs and Fees [Docket No. 77] is **GRANTED** in part and **DENIED** in part.

3. Plaintiffs are awarded $127,964.50 in attorney's fees, and $930.72 in costs.

1    The underlying facts will be fully amplified by the trial record. Only facts pertinent to the instant Motion will be discussed here. Because the trial testimony has not yet been transcribed, the Court is relying on its notes of the testimony.

2    The parties stipulated to the dismissal of Officer Topp as a party to this action shortly before trial.

3    Defendants also correctly argue Plaintiffs' counsel have improperly requested costs for private service of process. The requested costs are reduced accordingly.

4    This estimate includes the review of other materials, such as discovery documents, as well as meetings to discuss the audio tapes and records. Counsel did not submit sufficient detail with which to further delineate the time spent.

---

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 7    6

2007 WL 1219308
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

Deborah K. KING, Plaintiff,
v.
Dickey Joe TURNER, Defendant.

Civil No. 05-388 (JRT/
FLN).    |    April 24, 2007.

**Attorneys and Law Firms**

Robert Bennett and Ryan O. Vettleson, Flynn Gaskins & Bennett, LLP, Minneapolis, MN, for plaintiff.

C. David Dietz, Assistant Ramsey County Attorney, Ramsey County Attorney, St. Paul, MN, for defendant.

**MEMORANDUM OPINION
AND ORDER ON MOTION FOR
ATTORNEYS' FEES AND COSTS**

JOHN R. TUNHEIM, United States District Judge.

**\*1** Plaintiff Deborah King filed this lawsuit against defendant Dickey Joe Turner, who is a deputy of the Ramsey County Sheriff's Department. In her complaint, plaintiff alleges that on February 26, 2003 defendant used excessive force against her in violation of her constitutional rights. On November 16, 2006, a jury returned a verdict for plaintiff and against defendant. The jury awarded plaintiff $114,508.90 in actual damages and $15,000.00 in punitive damages.

This matter is before the Court on plaintiff's motion for attorneys' fees and costs under 42 U.S.C. § 1988. For the reasons discussed below, the Court awards plaintiff the sum of $317,605.74 for reasonable attorneys' fees and costs.

**ANALYSIS**

42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's

fee as part of the costs...."42 U.S.C. § 1988(b). The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Plaintiff succeeded on every issue presented to the jury in this litigation. Plaintiff is therefore entitled to attorneys' fees as a prevailing party under § 1988.

Plaintiff submitted affidavits and exhibits to the Court documenting the hours expended in this litigation and the billing rates for these services, as well as the costs incurred. In total, plaintiff has requested an award of attorneys' fees and costs in the amount of $317,798.88. Defendant objects to this award on several grounds.

**I. REASONABLE ATTORNEYS' FEES**
An award of attorneys' fees to a prevailing party must be reasonable.Hensley, 461 U.S. at 433. The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 888 (1984). The district court is expressly allowed to exercise its discretion in determining the reasonableness of an award. Id. at 902 n. 19.

**A. Hourly Rate**
The fee applicant bears the burden to "produce satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."Blum, 465 U.S. at 896 n. 11. A rate calculated this way is presumed reasonable. Id.

Defendant argues that there was nothing unusual or complex about plaintiff's case that would justify the rates requested by plaintiff. However, the Court has observed that police misconduct cases are very difficult for plaintiffs to win and require significant trial skill and expertise of lawyers. Indeed, the Supreme Court has compared the complexity of civil rights litigation to antitrust litigation. Hensley, 461 U.S. at 430 n. 4. In addition to the normal difficulties of proving a police misconduct case, this particular case required knowledge of complex medical matters to demonstrate the excessiveness of the physical force used by defendant.

**\*2** Plaintiff has requested a rate of $500 per hour for Robert Bennett. Bennett is a highly qualified trial attorney with 30 years of experience. Bennett's actual realization rate over the past several years well exceeds $500 per hour and his current hourly billing rate is $500 per hour. Defendant points out that Bennett's rate was $350 per hour in 2002. However, the current rate is the appropriate rate to apply. *See Missouri v. Jenkins,* 491 U.S. 274, 283 (1989). The reasonableness of the rates requested for Bennett and the other attorneys on the case is supported by affidavits submitted by Brian B. O'Neill and Mark J. Briol. These affidavits discuss reasonable hourly rates for attorneys in the local legal community. O'Neill and Briol are experienced trial lawyers who are well-qualified to opine on the reasonableness of attorneys' fees in this jurisdiction. The Court finds that the hourly rates requested for Bennett and the other attorneys are reasonable.

**B. Number of Hours Reasonably Expended**
An award of attorneys' fees must be based on hours that were "reasonably expended." *Hensley,* 461 U.S. at 434. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."*Id.*

Defendant criticizes plaintiff for failing to exclude from the request any of the hours included in the time records. Defendant submitted an affidavit of James P. Schratz that audits the fee request, and argues that the hours expended should be reduced as indicated in the auditor's report.

The auditor for defendant found that plaintiff's case was overstaffed in the sense that at least two attorneys appeared at the depositions, court hearings, and the trial itself. Bennett handled the depositions but an associate attorney, Ryan O. Vettleson, also attended every deposition. Plaintiff explains that Vettleson was the only attorney on the case that was intimately familiar with the documentary discovery. Because Bennett did not have time to review those materials, Bennett depended on Vettleson to interject during the depositions if the need arose. As for Vettleson's presence at trial, plaintiff explains that Vettleson provided organizational and technical support and offered lines of additional inquiry. He also helped with witness management. Plaintiff also explained that Vettleson's presence at the mediated settlement conferences was necessary because of the relationship that Vettleson had developed with the plaintiff during the course of the litigation. The Court finds no reason to disallow hours for Vettleson expended on these activities.

The auditor also found that there was "excessive conferencing" in this case because it amounted to seven percent of the total fee requested. The Court cannot conclude that conferencing was excessive given the percentage of time spent on conferencing here. Plaintiff was successful in her claim, and her success likely depends in large part on the consultation and insight from other attorneys on how to best present this case to the jury.

**\*3** The auditor proposes a ten percent disallowance on the attorneys' bills because of the block-billing format. Block billing is the lumping together of daily time entries consisting of two or more task descriptions. While other circuits have warned attorneys against the use of block billing, the Eighth Circuit has no requirement against the use of block billing. While the Court has some concern that block billing may decrease accountability of attorneys in specifically recording their time expended, and the Court would prefer that attorneys avoid the practice, the Court finds that the billing records here are sufficiently specific in this case to communicate what was done and its connection to the case. A disallowance for block billing is unwarranted here.

The auditor also found that plaintiff's attorneys spent excessive time on medical research. Nearly 120 hours were recorded in connection with collecting, reviewing, and researching plaintiff's medical history and related issues. The ultimate issue of excessive force in this case depended on resolution of how three injuries suffered by plaintiff occurred. Plaintiff explains that the medical research conducted was directed at understanding the mechanisms of injury. The Court agrees that the attorneys in this case needed this medical knowledge to effectively elicit testimony from their medical experts and to effectively cross-examine defendant's expert.

Finally, the auditor complains of overbilling for particular work product, such as drafting the complaint, summarizing depositions, and drafting pretrial submissions. Vettleson was the primary target of the auditor's complaints. The Court does not find that the time spent on any of these tasks was excessive, especially given that the attorney with the lowest hourly rate was primarily charged with these time consuming tasks.

In sum, the Court finds that the award for attorneys' fees requested by plaintiff are reasonable. The Court accordingly awards $307,617.24 in attorneys' fees.

## II. COSTS INCURRED

A prevailing party is entitled to her costs as a matter of course under the Federal Rules of Civil Procedure. Fed.R.Civ.P. 54(d)(1). Although Rule 54(d) creates a presumption that prevailing parties are entitled to costs, district courts retain substantial discretion in awarding them. Bathke v. Casey's Gen. Stores, 64 F .3d 340, 347 (8th Cir.1995). Costs include charges for items reasonably charged by attorneys to their clients. Pinkham v. Camex, Inc., 84 F.3d 292, 295 (8th Cir.1996). Defendant does not specifically dispute the costs requested by plaintiff in his opposition to the motion, but the auditor for defendant proposed disallowing several costs.

The Court finds the costs claimed by plaintiff to be largely reasonable, but some reductions are necessary. To begin, the costs for computerized legal research are factored into the attorneys' hourly rates and are not taxable. Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 325 (8th Cir.1993). The Court accordingly deducts $255.29, the total of all computerized legal research charges, from plaintiff's requested costs. The Court also deducts $140.00 for a celebratory lunch held on November 16, 2006 because plaintiff concedes that this expense is not taxable. Plaintiff also withdrew her request for an award of the $5,000.00 expert fee for Anthony Bouza. Expert fees are not recoverable in a § 1983 action. 42 U.S.C. § 1988(c); see W. Va. Univ. Hosps. v. Casey, 499 U.S. 83, 102 (1991).

*4 The auditor found that plaintiff did not adequately document several of the costs, including the costs incurred for taking videos of depositions. Plaintiff

in her reply offered additional documentation for the $2,350.29 cost incurred for the service of a videographer. The Court is persuaded that this expense was necessarily incurred for the litigation because no doctor was able to testify live at trial due to each doctor's busy schedule. The auditor also criticized plaintiff for failing to adequately document or justify costs incurred for copying, messenger services, parking, mileage, meals, and witness fees. These expenses total $772.58. [1] For example, plaintiff requests $299.78 for outside copying costs but does not provide the per copy cost. Without more information, the Court cannot assess the reasonableness of the charges. There may well be a satisfactory explanation, but the Court has not heard it. Therefore, the Court will reduce the remaining allowable expenses by 25 percent for failure to carry the burden of proof that the expenses were both reasonable and reasonably incurred in the pursuit of this litigation. See Rural Water Sys. # 1 v. City of Sioux Ctr., 38 F.Supp.2d 1057, 1068-69 (D.Iowa 1999). This results in an additional deduction of $193.15.

[1]  $299.78 (copying)
$129.20 (messenger services)
$291.95 (parking, mileage, meals)
$51.65 (witness fee) = $772.58.

In sum, the Court deducts $5,588.44 from the original request for costs by plaintiff. [2] The Court therefore awards plaintiff $9,988.49 for reasonable costs incurred. [3] The total award for attorneys' fees and costs is $317,605.73.

[2]  $255.29 (computerized legal research)
$140.00 (celebratory lunch)
$5,000.00 (expert fee)
$193.15 (inadequate documentation or justification) = $5588.44.

[3]  $15,576.93 (original request for costs)-$5588.44 (deductions) = $9,988.50.

## ORDER

Based on the foregoing, all of the records, files and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's motion for attorneys' fees and costs [Docket No. 60] is **GRANTED** as follows:

1. Plaintiff's request for attorneys' fees is **GRANTED** in the amount of $307,617.24.

2. Plaintiff's request for costs is **GRANTED** in the amount of $9,988.49.

3. Defendant is hereby **ORDERED** to remit to plaintiff a total amount of $317,605.73 for attorneys' fees and costs.

**End of Document**                © 2014 Thomson Reuters. No claim to original U.S. Government Works.

## ARGUMENT

Injunctive relief is appropriate to prevent the enforcement of the HHS Mandate on Plaintiffs Deacon Hall and American Mfg Company, or in the alternative, to declare under Federal Rule of Civil Procedure 56 that the Mandate is unconstitutional as violative of the First Amendment and the Religious Freedom Restoration Act ("RFRA").

Deacon Hall has sincerely-held religious objections to the Mandate's requirement of employee insurance coverage of contraception, sterilization, abortion and related counseling and education. The Mandate substantially burdens Deacon Hall's exercise of religion by requiring him to participate in these coverages despite his religious beliefs.

The Mandate unconstitutionally discriminates against ministers who own for profit businesses. According to the First Amendment's Establishment Clause, the government must be neutral toward religious people and entities. The Mandate violates this constitutional principle of neutrality by exempting religious non-profit companies, but not ministers who own for-profit businesses.

Additionally, the government can not show a compelling interest that satisfies strict scrutiny under the First Amendment or RFRA. It simply is not necessary for the government to apply the Mandate to Deacon Hall when less

1

EXHIBIT 9

restrictive means are available – such as the government directly paying for the contraception, sterilizations and abortofacients.

Here, the Government makes no exception for Deacon Hall and other similarly-situated clergy. The Government's position creates an immediate harm to Deacon Hall in that he must either disavow his religious beliefs and his position as Deacon, be punished by the Archdiocese for following secular law, or close or sell his business — his only means of income. With the Mandate, the Government is impermissibly interfering with the protected rights of Deacon Hall and American Mfg Company under the First Amendment and RFR. Thus, judicial relief is appropriate.

I.      **Injunctive relief is appropriate when the government has no compelling state interest to impose the Mandate upon a Deacon that has sincerely held religious beliefs.**

The issuance of a preliminary injunction depends upon a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc).

"[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429

2

EXHIBIT 9

(2006) (applying Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488 (November 16, 1993), codified at 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4 (RFRA), to federal Controlled Substances Act). So, under strict scrutiny, the government, even at the preliminary-injunction stage, must prove that the Mandate is narrowly tailored to a compelling interest and that less-restrictive means are inadequate to serve the interest. *See id.* at 428-29. "When a Plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (internal citations and quotations omitted).

## I.    Deacon Hall Has Brought Claims Under the First Amendment and RFRA Which Are Different Sources of Law Protecting Religious Liberties.

Deacon Hall has brought claims under the First Amendment and  RFRA which are different sources of law protecting religious liberties.

RFRA was enacted in 1993 as a direct response to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), wherein the Supreme Court had upheld—against a First Amendment challenge—an Oregon law criminalizing peyote use, which was used in Native American religious rituals. The State of Oregon won on the basis that the drug laws were "non-discriminatory laws of general applicability." Religious groups became concerned that the *Smith*

3

EXHIBIT 9

case would be cited as precedent in future First Amendment cases causing further regulation of common religious practices -- and lobbied Congress for legislative protection. RFRA provided a strict scrutiny standard, requiring narrowly tailored regulation serving a compelling government interest in any case substantially burdening the free exercise of religion, regardless of the intent and general applicability of the law.

The First Amendment and RFRA, although both laws protecting religious liberties, have similarities and differences. Similarly, the text of the First Amendment and the text of RFRA protect the "free exercise" of religion.[1] Similarly, the First Amendment and RFRA protect persons from violative laws which place a "substantial burden" on the "free exercise of religion."[2] In contrast , the text of the First Amendment bans the "establishment of religion" while the text of RFRA does not ban the "establishment of religion." RFRA § 7, 42 U.S.C. 2000bb-4, states that "[n]othing in this Act [RFRA] shall be construed to affect, interpret, or in any way address that portion of the First Amendment prohibiting laws respecting the establishment of religion."

Finally, in contrast, where the First Amendment applies to both the federal government and the states, RFRA only applies to the federal government, not the states.  In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court held

---

[1] See discussion of "free exercise of religion," infra at p. ___.
[2] See discussion of "substantial burden," infra at p. ___.

4

EXHIBIT 9

RFRA unconstitutional as applied to the states, on the basis that RFRA is not a proper exercise of Congress's enforcement power. But it continues to be applied to the federal government, for instance in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, because Congress has broad authority to carve out exemptions from federal laws and regulations that it itself has authorized.

II. **Deacon Hall's Status as a Roman Catholic Deacon and His Offering and Operation of his Group Health Insurance Plan in Accordance with the Catholic Faith are Sincere Exercises of Religion.**

Whereas the text of the First Amendment does not define "free exercise [of religion]," RFRA defines "exercise of religion" to "include[] any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *See* 42 U.S.C. § 2000cc-5(7)(A) (defining "religious exercise" in 42 U.S.C. § 2000bb-2(4)). *See also United States v. Crystal Evangelical Free Church (In re Young)*, 82 F.3d 1407, 1418 (8th Cir. 1996) (explaining that RFRA protects "religiously motivated as well as religiously compelled conduct"). RFRA's "guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *United States v. Ali*, 682 F.3d 705, 710 (8th Cir. 2012) (citations and quotations omitted). Beliefs need not be purely religious, but "can be both secular and religious." *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000).

EXHIBIT 9

Under the First Amendment, "exercise of religion" is not constrained to "belief and profession" but includes the "performance of (*or* abstention from) physical acts." *Employment Division v. Smith*, 494 U.S. 872, 877 (1990) (emphasis added). Indeed, the very cases which form the pre-enactment basis for RFRA involved First Amendment litigants whose religious beliefs required them to refrain from engaging in certain conduct. *Verner*, 374 U.S. 398 (plaintiff's religious beliefs forbade her to work on Saturdays); *Yoder*, 406 U.S. 205 (plaintiffs' religious beliefs forbade them from enrolling their children in public school beyond the eighth grade).

Axiomatically, a court cannot delve into whether a religious belief is central to, mandated by, or orthodox in an exerciser of religion's religion. What is permitted, however, is a court's inquiry into whether an exerciser of religion's belief that has been violated by a law's coercion of action or injunction—substantially burdened—is "sincere" and "religious." As the Supreme Court has held, when an organized religion, like the Roman Catholic religion, has a specific tenet requiring or forbidding an action, adherence to that teaching is adherence to a sincerely held religious belief (although official tenets are not required for a belief to be a sincerely held religious belief). *See Frazee v. Illinois Dept. of Employment Sec.*, 489 U.S. 829, 834 (1989) ("Undoubtedly, membership in an organized religious denomination, especially one with a specific tenet forbidding members to

6

EXHIBIT 9

work on Sunday, would simplify the problem of identifying sincerely held

religious beliefs, but we reject the notion that to claim the protection of the Free

Exercise Clause, one must be responding to the commands of a particular religious

organization.") Because the Roman Catholic Church officially forbids adherents,

including itself, from providing health insurance plans that make available

contraceptives and abortifacients to employees, Hall's adherence to that position is

adherence to a sincerely held religious belief under Supreme Court precedent, and

this Court need go no further.

If this Court decides to go beyond the teachings of the Roman Catholic

Church and delve further into Hall's beliefs, however, it should find that his

opposition to providing a health insurance plan conforming to the contraception

and abortifacient requirements of the Mandate is a sincerely held religious belief.

The determination of whether a belief is sincere is factual in nature. *Iron Eyes v.

Henry*, 907 F.2d 810, 813 (8th Cir. 1990). Some factors that courts have

considered in determining whether a belief is sincere include the importance of the

belief to the religion, *id.*, and whether the belief is actually held by the religion, *see

United States v. Adeyemo*, 624 F. Supp. 2d 1081, 1086 (N.D. Cal. 2008). "'[W]hile

the 'truth' of a belief is not open to question, there remains the significant question

of whether it is 'truly held.'' *United States v. Seeger,* 380 U.S. 163, 185 (1965). It

does not matter whether a religious belief itself is central to the religion, but only

7

EXHIBIT 9

that 'the adherent [ ] have an honest belief that the practice is important to his free

exercise of religion.'" *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d

781, 790 (5th Cir. 2012). An adherent's belief is not sincere if it is merely a cover

for secular gains. *United States v. Manneh*, 645 F. Supp. 2d 98, 111 (E.D.N.Y.

2008). Courts may inquire as to the good faith—or sincerity—of a belief because

"courts . . . are seasoned appraisers of the 'motivations' of parties and have a duty

to determine whether what is professed to be religion is being asserted in good

faith." *Id.*

    However, courts cannot delve too deeply into the beliefs of a party when

they are rooted in the doctrine of the religious body to which the party is an

adherent. That is, even where a court might think the ecclesiastical judgments of a

religious body are arbitrary, "no 'arbitrariness' exception in the sense of an inquiry

whether the decisions of the highest ecclesiastical tribunal of a hierarchical church

complied with church laws and regulations is consistent with the constitutional

mandate that civil courts are bound to accept the decisions of the highest

judicatories of a religious organization of hierarchical polity on matters of

discipline, faith, internal organization, or ecclesiastical rule, custom, or law."

*Milivojevich*, 426 U.S. at 713.

    In addition, whether a belief is "religious" is a delicate inquiry. Only beliefs

that are "rooted in religion" are protected by the Free Exercise Clause of the First

EXHIBIT 9

Amendment. *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 833

(1989) (citing *Thomas v. Review Bd.*, 450 U.S. at 713). "Purely secular views do

not suffice." *Frazee*, 489 U.S. at 833. But, because courts are ill-equipped to

decide what is religious and what is not, their "task is to decide whether the beliefs

professed by a [person] are sincerely held and whether they are, in his own scheme

of things, religious." *United States v. Seeger*, 380 U.S. 163, 185 (1965). "[G]reat

weight" must be given to a claim that a belief is religious in nature, *Patrick v.*

*LeFevre*, 745 F.2d 153, 158 (2d Cir. 1984), and courts must "avoid any test that

might turn on the factfinder's own idea of what a religion should resemble,"

*Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 482 (2d Cir. 1985).

As the Second Circuit has stated, "religious" means "the feelings, acts, and

experiences of individual men in their solitude, so far as they apprehend

themselves to stand in relation to whatever they may consider the divine." *Patrick*,

745 F.2d at 158 (quoting William James, *The Varieties of Religious Experience* 31

(1910)). "[T]his expansive conception of religious belief is consonant with the

vision of the free exercise clause as a vehicle promoting the inviolability of

individual conscience." *Id.* (citing Laurence Tribe, *American Constitutional Law* §

14–3, at 818 (1978); Note, "Toward a Constitutional Definition of Religion," 91

Harv. L. Rev. 1056 (1978)).

EXHIBIT 9

Again, where an organized religion's official teaching prohibits an action and an adherent acts in conformity with that view, his adherence is "[u]ndoubtedly" based on a "religious" belief. *See Frazee*, 489 U.S. at 834. In *Frazee*, for example, the Supreme Court held that Frazee's statement that "he was a Christian and as such felt it wrong to work on Sunday" was enough to qualify his belief as "religious." *Id.* at 831. It did not matter that it was not based in official dogma or creed, but the Court noted that if it were, it would "simplify the problem" of declaring Frazee's belief to be religious. *Id.* at 834.

Cardinal Daniel DiNardo, Archbishop of the Archdiocese of Galveston-Houston, has informed Deacon Hall that it is "scandal" for Deacon Hall to own and operate a for-profit business and comply with the Mandate's requirement for the objectionable coverages.[3] In the Archdiocese, a Deacon may be suspended for scandal. Deacon Hall continuing to operate as a Deacon in the Archdiocese, free of suspension, is an "exercise of religion."

Further, Deacon Hall strives, as he believes he must, to adhere to Catholic teachings in all aspects of his life, including his operation of his Company. As RFRA contemplates, Deacon Hall's adherence to his faith in operating his Company and adherence to his religious obligations as Deacon are manifested in both the "performance of" and "abstention from" certain conduct. Deacon Hall

---

[3] Cardinal DiNardo Decl. ¶¶ ===.

10

EXHIBIT 9

sincerely believes he has a moral and religious duty to provide for the physical needs of his employees. Deacon Hall exercises this belief by providing a group health insurance plan to his Company's employees. Thus, the offering of a group health plan to his employees is an "exercise of religion."

However, in accordance with his office as Deacon and his religious beliefs, Deacon Hall also sincerely believes it is sinful and immoral to provide coverage in his Company's group health plan for contraception, sterilization, abortion, abortifacient drugs and related education and counseling. Upon discovering that his current group health plan inadvertently included coverage for some of these forbidden items, since the Church considers this as "scandal" it is also Deacon Hall's belief this is also scandalous — he informed his Archdiocese and immediately sought to conform his Company's plan to Roman Catholic religious teachings.[4] But the Government has made it impossible for him to eliminate the objectionable coverages. The Mandate applies equally to employers and "health insurance issuer[s] offering group...health coverage," 42 U.S.C. § 300gg-13(a), thus, Deacon Hall is prevented from selecting a new group health plan that does

---

[4] This coverage was not included knowingly in his Company's group health plan. Even if it were intentional, the fact that Deacon Hall has not *always* excluded coverage for these items is immaterial. *See Ali*, 682 F.3d at 710 ("[F]ocusing on [an] 'inconsistent' application of [a] belief...is not appropriate in the RFRA context."); *see also Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 714 (1981) ("Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.")

EXHIBIT 9

not contain coverage that violates Roman Catholic religious teachings. Yet he desires to do so. The operation of his Company's group health plan in accordance with the Roman Catholic religious teachings against cooperation with contraception, sterilization and abortifacient drugs is an "exercise of religion."[5]

### III.    The Mandate Substantially Burdens Deacon Hall's Exercise of Religion.

First Amendment cases, even predating *Employment Division v. Smith* and RFRA, provide guidance on the substantiality of burdens on religious exercise. *See e.g.*, *Goodall by Goodall v. Stafford Cnty. School Bd.*, 60 F.3d 168, 171 (4th Cir. 1995) ("we may look to pre-RFRA cases in order to assess burden on the plaintiffs for their RFRA claim"). In *Sherbert v. Verner*, the appellant was denied unemployment benefits due to her refusal to work on Saturday, the Sabbath Day of her faith. 374 U.S. at 399-401. The Court found this placed an impermissible burden on her free exercise of religion because it "force[d] her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and

---

[5] In the August 1, 2011 regulations in which the Government The Governmentexplain their decision to permit exemptions from the Mandate for certain religious employers, the Government notes that "it is appropriate that HRSA...takes into account the effect on the religious beliefs of certain religious employers if coverage of contraceptive services were required in the group health plans in which employees in certain religious positions participate." 76 Fed. Reg. at 46623. The Government have thus implicitly conceded that employers are engaged in an "exercise of religion" when they abstain from providing coverage for contraception, sterilization, and abortifacient drugs.

EXHIBIT 9

abandoning one of the precepts of her religion in order to accept work, on the other hand." *Id.* at 404. Even though the government did not "directly compel" the appellant to work on Saturday in violation of her faith, the Court found the "pressure" on her to do so was "unmistakable." *Id.* In *Wisconsin v. Yoder*, Amish parents whose religious beliefs required that they educate their children at home after the eighth grade were fined five dollars each for violating Wisconsin's compulsory school-attendance law. 406 U.S. at 208. The Court affirmed the lower court's decision to strike the law, finding that it created a "severe" and "inescapable" impact on the practice of the Amish religion because it "affirmatively compels them, under threat of criminal sanction, to perform acts undeniably at odds with fundamental tenets of their religious beliefs." *Id.* at 218.

Likewise, in *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981), a Jehovah's Witness was denied unemployment benefits because he quit his job that required him to produce armaments in violation of his religious beliefs against working on the production of weapons. *Id.* at 710-11. The Court reemphasized that even "indirect" compulsion to violate one's beliefs constitutes a substantial burden on free exercise of religion— "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief,

13

EXHIBIT 9

thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists." *Id.* at 717-18.

Consistent with Supreme Court precedent, RFRA establishes the appropriate standard of review: "[The] Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." 42 U.S.C.A. § 2000bb-1(a) (West). In applying claims under RFRA, the Supreme Court has found that the prima facie case under RFRA is whether the application of a law would (1) substantially burden (2) a sincere (3) religious exercise. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006). To determine whether government has done so, the Eighth Circuit has analyzed whether the law at issue "prohibits a practice that is both 'sincerely held' by and 'rooted in [the] religious belief[s]' of the party asserting the claim or defense." *United States v. Ali*, 682 F.3d 705, 710 (8th Cir. 2012) (alteration in original). In addition, "an order requiring someone either to act affirmatively in violation of a sincerely held religious belief or face criminal penalties substantially burdens the free exercise of religion." *Id.* at 711, citing *Yoder*, 406 U.S. at 234-36.

A substantial burden is not just any burden; when a court examines whether a law substantially burdens a person's exercise of religion, it must not replace the judgment of the individual objector or religious group with its own judgment. In

14

EXHIBIT 9

other words "'[c]ourts should not undertake to dissect religious beliefs because the believer admits that he is struggling with his position or because his beliefs are not articulated with clarity and precision that a more sophisticated person might employ.'" *Ali*, 682 F.3d at 710 (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.,* 450 U.S. 707, 715, (1981)). Moreover, a court errs when it "evaluat[es] the orthodoxy and sophistication of [a person's] belief, instead of simply evaluating whether her practice was rooted in her sincerely held religious beliefs." *Id.* at 710-11. Another court has noted that "the unequivocal language of RFRA announces that government may not (in the absence of a 'compelling interest' implemented by 'the least restrictive means') 'substantially burden' a person's 'exercise of religion,' without regard to the centrality of the particular religious exercise." *Muslim v. Frame*, 891 F. Supp. 226, 230 (E.D. Pa. 1995). "[J]udges are not competent to determine matters of religious doctrine, including whether one practice is considered central." *Id.* (citing *Thomas v. Review Bd.*, 450 U.S. at 716)).

> Comment [g1]: There is no alteration in the quote that I could see.

This deference toward exercisers of religion and religious authorities—not toward the government's positions—is consistent with the deference shown toward exercisers of religion and religious authorities under RFRA in the employment context. For example, the Eastern District of New York, in holding that the application of the Age Discrimination in Employment Act to a church violated RFRA, stated, "[w]henever the questions of discipline, or of faith, or ecclesiastical

15

EXHIBIT 9

rule, custom, or law have been decided by the highest of these church judicatories

to which the matter has been carried, the legal tribunals *must* accept such decisions

as final, and as *binding* on them, in their application to the case before them."

*Hankins v. The New York Annual Conference of United Methodist Church*, 516 F.

Supp. 2d 225, 229 (E.D.N.Y. 2007) (quoting *Watson v. Jones*, 80 U.S. 679 (1871))

(emphasis added). The court is accord with the Supreme Court is in accord:

"religious freedom encompasses the 'power (of religious bodies) to decide for

themselves, free from state interference, matters of church government as well as

those of faith and doctrine.'" *Serbian E. Orthodox Diocese for U. S. of Am. &

Canada v. Milivojevich*, 426 U.S. 696, 721-22 (1976) (quoting *Kedroff v. St.

Nicholas Cathedral*, 344 U.S. 94 (1952)). Consistently, the Minnesota Court of

Appeals recently held that if a court of law becomes excessively entangled with the

interpretation of a church's internal doctrine or policy during a trial, the trial itself

and the resulting conviction violates the Establishment Clause. *See State v.

Wenthe*, 822 N.W.2d 822, 829-30 (Minn. App. 2012).

To show deference to an exerciser of religion's or ecclesiastical body's

subjective interpretation of what constitutes a substantial burden is also good

policy because it has practical benefits in the context of a RFRA inquiry. As the

Second Circuit stated in *Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996):

> Our scrutiny extends only to whether a claimant sincerely holds a
> particular belief and whether the belief is religious in nature. An

EXHIBIT 9

> inquiry any more intrusive would be inconsistent with our nation's fundamental commitment to individual religious freedom; thus, courts are not permitted to ask whether a particular belief is appropriate or true—however unusual or unfamiliar the belief may be.

*Id.* at 476. The Seventh Circuit has stated that any more intrusive an inquiry would be "exquisitely difficult" and noted that a more intrusive inquiry could also create disparate treatment between religions with hierarchical authority and written, universal rules—like the Roman Catholic Church with its written tradition—and those without such enumeration—like many sects of Protestant Christianity and the different branches of Islam. *Mack v. O'Leary*, 80 F.3d 1175, 1180 (7th Cir. 1996) *judgment vacated on other grounds due to City of Boerne v. Flores, 521 U.S. 507 (1997)*. The more intrusive approach has also been described as "unnavigable." *Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003) (citing *Thomas v. Review Bd.*, 450 U.S. at 716).

"[J]udges are not competent to determine matters of religious doctrine, including whether one practice is considered central." *Id.* (citing *Thomas v. Review Bd.*, 450 U.S. at 716)). In addition, the Eighth Circuit has "defin[ed] substantial burden broadly to include *religiously motivated as well as religiously compelled* conduct," which the court has stated "is consistent with the RFRA's purpose to restore pre-*Smith* free exercise case law." *In re Young*, 82 F.3d 1407, 1418 (8th Cir. 1996). (Emphasis =========added or original????) Thus, judges cannot

> **Comment [g2]:** Is emphasis in the original or added. It must be noted one way or the other.

17

EXHIBIT 9

decide what is and is not central to an exerciser of religion's beliefs, and centrality cannot mean "religiously compelled."

Furthermore, in *Ali*, the Eighth Circuit contrasted the definition of a substantial burden under RFRA with its definition under First Amendment principles: whereas under the First Amendment, the burden must fall upon a "central tenet" of the person's religious beliefs, "[i]n contrast, RFRA extends free exercise rights even to religious practices that are not compelled by or central to a particular belief system." *Ali*, 682 F.3d at 710 (citing *Van Wyhe v. Reisch,* 581 F.3d 639, 656 (8th Cir. 2009) (construing the definition of "religious exercise" established in 42 U.S.C. § 2000cc–5); 42 U.S.C. § 2000bb–2(4) (defining "exercise of religion" under RFRA as meaning "religious exercise, as defined in [42 U.S.C. § ] 2000cc–5")). Thus, the exercise of religion under RFRA is consistent with the Religious Land Use and Institutionalized Persons Act ("RLUIPA") which defines "religious exercise" as: "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5 (West) (emphasis added).

Therefore, the statutory definitions reflect what one court found; that the statutes purposeful omission that a belief does not require to be "religious compelled" to avoid other exercise of religion deserving protection:

> Congress purposefully omitted from the RFRA language requiring that the belief at issue be 'religiously compelled.' *See* Douglas

18

EXHIBIT 9

> Laycock & Oliver S. Thomas, *Interpreting the Religious Freedom Restoration Act*, 73 Tex. L. Rev. 209, 230–34 (1994) (reviewing RFRA's legislative history). The RFRA does not require religious compulsion, for to do so would 'run the risk of excluding practices which are generally believed to be exercises of religion worthy of protection.'
>
> ....
>
> Disallowing RFRA protection to such non-mandated activity would contravene the free exercise of religion.

*Blanken v. Ohio Dept. of Rehab. & Correction*, 944 F. Supp. 1359, 1365 (S.D. Ohio 1996).

As in *Yoder*, the Mandate "affirmatively compels" Deacon Hall to "perform acts undeniably at odds with fundamental tenets of [his] religious beliefs" and his office as Deacon -- *Thomas*, 450 U.S. 707; he must involve himself in "scandal" by including cost-free coverage for contraception, sterilization, and abortifacient drugs in any group health plan he offers. This is more than a substantial burden; it is essentially a requirement that he surrender his position as Deacon to conduct business in a way that violates his faith and his obligations as Deacon. Moreover, the consequences for offering a non-compliant group health plan are substantial—(1) a $100 per day, per employee, 26 U.S.C. § 4980D, dwarfing the *five dollar* fine the *Yoder* Court viewed as creating a "severe" and "inescapable" impact on practice of the Amish religion, *Yoder*, 406 U.S. at 218[6]; and (2) civil enforcement

---

[6] The Government  have all but conceded that the Mandate imposes burdens on employers' religious exercise. Not only have The Government already exempted some "religious employers" who object to providing coverage for contraception

19

EXHIBIT 9

actions brought by the Department of Labor and insurance plan participants, 29 U.S.C. § 1132(a).

Deacon Hall's "option" to terminate Company's health care plan without incurring monetary penalties does not eliminate the substantial burden on his religious exercise because the consequences of terminating Company's plan likewise put "substantial pressure," *Thomas*, 450 U.S. at 718, on him to purchase insurance and provide contraception, sterilization and abortifacient drugs—in other words, to "modify his behavior and to violate his beliefs." *Id.* [7]

As explained, Deacon Hall sincerely believes he has a moral and religious duty to provide for the physical needs of his employees. (Deacon Hall Decl. ¶ __.) If he must terminate their health care plan, he must neglect this duty, and potentially force his employees to secure their own insurance on the more expensive individual market. The Company will also be exposed to significant competitive disadvantages in that it will be unable to offer current and prospective employees an important part of the Company's benefits package. This may make it

---

services, 45 C.F.R. § 147.130(a)(1)(iv)(A)-(B), but The Government are currently developing changes to the Mandate that would further "accommodat[e] non-exempt, non-profit religious organizations' religious objections to covering contraception services." 77 Fed. Reg. 16501, 16503 (March 21, 2012).

[7] The availability of "exit options" does not alter the "substantial burden" analysis. Of course, the *Yoders* could have moved their family out of Wisconsin and to a state where they would not have not faced penalties for removing their children from public schools. This "option" did not alter the Court's opinion that the $5 fine created a "substantial burden" on the *Yoder*'s free exercise of religion.

20

EXHIBIT 9

more difficult to attract and retain employees who possess the necessary skills to design and manufacture the Company's products.[8] (Deacon Hall Decl. ¶ __.) Moreover, Company must forfeit a tax credit available to small businesses that offer group health insurance plans. 26 U.S.C. § 45R.

These burdens are far more substantial than those the Supreme Court has previous struck down. In *Sherbert*, the appellant's religious observance of her Sabbath rendered her merely ineligible for unemployment benefits, yet the Court found her ineligibility placed "unmistakable" pressure on her to forego that observance. *Id.* at 404. *See also Thomas*, 450 U.S. at 717 (finding the "coercive impact" on free exercise resulting from denial of employment benefits to be "indistinguishable from *Sherbert*").

Deacon Hall's inadvertent inclusion of some contraception and abortifacient drugs in the Company's current group plan necessitates that he finds a group plan that excludes this coverage *right now*. Yet, the Mandate has made that impossible. The Government has stripped Deacon Hall of any choice to select a group plan that accords with his beliefs because the Mandate requires all insurance issuers to include Mandate-compliant coverage in all group health plans after August 1, 2012. *See* 42 U.S.C. § 300gg-13; 77 Fed. Reg. at 8725-26.

---

[8] Skilled workers are required to design and manufacture hisCompany's products. (Deacon Hall Decl. ¶ __.)

21

EXHIBIT 9

The Mandate has thus forced Deacon Hall's hand. He has concluded he must

to avoid "scandal" as a Deacon, absent relief from this court, terminate

hisCompany's group health plan, and endure the substantial burdens noted above,

to avoid violating his sincerely-held belief against cooperation with contraception,

sterilization and abortifacient drugs.

Thus, as in *Sherbert*, the Mandate has put Deacon Hall to a choice. But

unlike *Sherbert*, Deacon Hall must choose between two exercises of religion—

fulfill his religiously-held duty to provide employee health care and violate his

beliefs with respect to contraception, or abstain from cooperation with

contraception and violate his religiously-held duty to provide employee health

care. Not only does this choice force Deacon Hall to "modify his behavior and to

violate his beliefs," *Thomas*, 450 U.S. at 718, and  impose a substantial burden, it

imposes an unconstitutional condition on his free exercise rights. *Simmons v.

United States*, 390 U.S. 377, 394 (1968) (It is"intolerable that one constitutional

right should have to be surrendered in order to assert another.").

Because of the Mandate, Deacon Hall, to avoid "scandal," must terminate

his Company's group health plan, unless he receives the requested relief from this

Court  permitting his Company to select a new group health plan that conforms to

his Catholic faith.

**IV.    The Mandate, Facially and As-Applied, Violates the First Amendment's
Establishment Clause and Free Exercise Clause.**

22

EXHIBIT 9

Deacon Hall has brought a facial challenge against the HHS Mandate under the First Amendment because the gerrymandered exemptions in favor of religious non-profit employers discriminate against owners of for-profit businesses who have religious objections. A facial challenge is one that contends the statute is impermissible in all, or at least the "vast majority[,] of its intended applications." *United States v. Friday*, 525 F.3d 938, 951 (10th Cir. 2008), *quoting Doctor John's, Inc. v. City of Roy,* 465 F.3d 1150, 1157 n. 5 (10th Cir.2006).

The discriminatory exemptions under the Mandate violate the neutrality requirement of the First Amendment's Establishment and Free Exercise Clauses. Since its founding, this nation's conception of religious liberty included, at a minimum, the equal treatment of all religious faiths without discrimination or preference. *See Wallace v. Jaffree,* 472 U.S. 38, 91–114, (1985) (Rehnquist, J., dissenting) (arguing that this was all that the Establishment Clause required); Douglas Laycock, *"Nonpreferential" Aid to Religion: A False Claim About Original Intent,* 27 Wm & Mary L.Rev. 875, 922–23 (1986) (arguing that the First Amendment forbade both discrimination among religions and discrimination for or against religion). TheSupreme Court has consistently confirmed this principle: the neutral treatment of religions is "[t]he clearest command of the Establishment Clause." *Larson v. Valente,* 456 U.S. 228, 244 (1982); *see also Bd. of Educ. of*

23

EXHIBIT 9

*Kiryas Joel Village Sch. Dist. v. Grumet,* 512 U.S. 687, 707 (1994) ("It is clear that neutrality as among religions must be honored.").

Discrimination among religions is forbidden by the Free Exercise Clause as well. *Larson,* 456 U.S. at 245 ("This constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause"); *see also Lukumi,* 508 U.S. at 532–33; *Larson,* 456 U.S. at 246 (citing *Abington School District v. Schempp,* 374 U.S. 203, 305 (1963) (Goldberg J., concurring)). The Supreme Court has further suggested that the Equal Protection Clause's requirement is parallel. *See Locke v. Davey,* 540 U.S. at 720 n. 3 (citing *Johnson v. Robison,* 415 U.S. 361, 375 n. 14(1974); *McDaniel v. Paty,* 435 U.S. 618(1978)). In other words, "no State can 'pass laws which aid one religion' or that 'prefer one religion over another.'" *Larson,* 456 U.S. at 246 (quoting *Everson v. Board of Education,* 330 U.S. 1, 15(1947)).

The effect of the Mandate's gerrymandered exemptions in favor of religious non-profits is to exempt "pervasively sectarian" organization but not ministers who own for-profit businesses. Accordingly, the government must argue that a ministers who owns and operates a for-profit business is "secular" and therefore has no First Amendment rights, but a religious non-profit employer because it is "pervasively sectarian" is protected.

24

EXHIBIT 9

Yet, federal courts have rejected conditioning costs or benefits based on a "pervasively sectarian" test. A U.S. Supreme Court plurality in *Mitchell v. Helms,* 530 U.S. 793 (2000), observed that "the application of the 'pervasively sectarian' factor collides with our decisions that have prohibited governments from discriminating in the distribution of public benefits based upon religious status or sincerity." *Id.* at 828. Following and adopting the logic of *Mitchell,* the Fourth Circuit in *Columbia Union College v. Oliver,* 254 F.3d 496 (4th Cir.2001) (Wilkinson J.) confronted the Maryland Higher Education Commission's refusal to provide funds to a college affiliated with the Seventh-day Adventist Church because the Commission had found it to be "a 'pervasively sectarian' institution" pursuant to Establishment Clause precedent. *Id.* at 498. Relying on the *Mitchell* plurality, the Fourth Circuit concluded that the pervasively sectarian test was unconstitutionally discriminatory and should be abandoned. *Id.* at 502–04. More recently, the Tenth Circuit decision in *Colorado Christian Univ. v. Weaver,* 534 F.3d 1245, 1257-59 (10th Cir. 2008) struck down a funding scheme which barred "pervasively sectarian" universities from receiving scholarship benefits because the government cannot necessarily and explicitly discriminate among religious institutions in contradiction of the constitutional requirement of equal treatment of all religious faiths without discrimination or preference.

Similarly, the Mandate is facially invalid because it discriminates against ministers who own for-profit businesses. *See McDaniel v. Paty,* 435 U.S. 618

25

EXHIBIT 9

(1978) (discussed *infra*); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S. Ct. 694, 707 (2012) (a ministerial exception is grounded in the Religion Clauses of the First Amendment and applies to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*). The Mandate's gerrymandered exemptions discriminate in favor of religious non-profit employers and against religiously-motivated for-profit employers.

The exemptions have a disparate impact because for-profit employers with religious objections must comply with the Mandate while the Mandate's defined religious non-profit employers do not need to comply. As with Deacon Hall, all American ministers who own and operate for-profit businesses are subject to the Mandate while religious non-profit employers – even those who may employ the same ministers – do not have to comply with the Mandate. Finally, there is no reason to facially distinguish between ministers and all other for-profit employers who have religious objections to the Mandate. Both are subject to the Mandate while designated religious non-profit employers are not.

Analagously, the Mandate constitutes a clergy-disqualification provision similar to the Tennessee clergy-disqualification clause struck down in *McDaniel v. Paty*, 435 U.S. 618 (1978). In *McDaniel,* the Tennessee constitution prohibited clergy members from political office. In this case, the Mandate is prohibiting Deacon Hall from owning and operating a for-profit business. Deacon Hall, like

26

EXHIBIT 9

the *McDaniel* plaintiff, cannot exercise both rights simultaneously because the government has essentially conditioned the exercise of one on the surrender of the other. In the words of James Madison, the State is "punishing a religious profession with the privation of a civil right." 5 Writings of James Madison at 288. In so doing, the federal government has encroached upon McDaniel's right to the free exercise of religion. Basically, to condition Deacon Hall's ability to own and operate a for profit company upon Deacon Hall's willingness to surrender his religious office of Deacon penalizes Deacon Hall for being a Deacon.

Finally, the Mandate has no permitting or opt-out process. Ministers who own for-profit businesses, if they are able and willing, are required to hire lawyers and pay court fees to pursue First Amendment and RFRA rights to judicially-crafted exemptions. If successful in obtaining injunctions, their injunctions do not cover non-parties, similarly situated, creating in itself an Equal Protection Clause problem. Hence, the Mandate should have included a permitting process or opt-out provision. In *United States v. Friday*, 525 F.3d 938, 948, 960 (10th Cir. 2008), the Tenth Circuit held that requiring a Native American man to obtain a permit to use a bald eagle feather in his religious rituals was not a substantial burden of his religious exercise even if a complete ban on the use of the tail feather would have been. Hence, the Mandate's provision of a permitting or opt-out system for

EXHIBIT 9

ministers who owned and operated for-profit businesses would have satisfied strict scrutiny.

In summary, the Mandate is impermissible in all, or at least the vast majority of its intended applications, because its gerrymandered exemptions illegally discriminate against for-profit corporations and individuals with religious objections – even ministers like Deacon Hall. Only the designated religious non-profit employers enjoy the benefits of the HHS Mandate's gerrymandered exemptions – no one else.

## VI.    The Mandate Fails Strict Scrutiny Under RFRA.

Because the Mandate, facially and as applied, imposes "substantial burdens" on Deacon Hall's religious exercise, the government must satisfy strict scrutiny under RFRA.  The burden now shifts to the Government who must demonstrate that the Mandate "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000bb-1(b)(1)-(2). The government must satisfy strict scrutiny "through application of the challenged law to...the particular claimant whose sincere exercise of religion is being substantially burdened." *O Centro*, 546 U.S. at 430-31. In other words, this Court must look beyond the government's "broadly formulated interests justifying the general applicability of [the Mandate] and scrutinize[] the asserted harm of granting specific exemptions to [Deacon

28

EXHIBIT 9

Hall]." *Id.* at 431.[9] The Government must "specifically identify an 'actual problem' in need of solving," and show that substantially burdening Deacon Hall's free exercise of religion is "actually necessary to the solution." *Brown v. Entm't Merchs. Ass'n*, 131 S.Ct. 2729, 2738 (2011).

### A. The Mandate is Not Justified by a Compelling Interest.

In defending the numerous challenges[10] to the Mandate throughout the country, the Government have advanced two primary justifications for the Mandate—providing and equalizing health care for women. Even assuming the coverage required by the Mandate promotes these abstract interests, the Mandate must fail strict scrutiny because the Government' interests cannot be considered "compelling" in light of the millions of people the Government have voluntarily exempted from providing women's preventive care.

By the Government' own calculation, approximately 191 million people belong to health care plans that may be "grandfathered" under the ACA. *See Newland*, 2012 U.S. Dist. LEXIS 104835 at 1 (*citing* 75 Fed. Reg. at 34550);

---

[9] As explained, *supra* note ___, Deacon Hall's argument that RFRA applies to the Mandate is not a concession that the Mandate or its accommodations are neutral laws of general applicability. But even if the Government argue the Mandate is neutral and generally applicable, RFRA requires this Court to apply strict scrutiny. *See* 42 U.S.C. § 2000bb-1(a).

[10] To date, 40 challenges have been brought against the the Government by individuals, businesses and organizations who believe the Mandate violates their right to free exercise of religion. *See* Mandate Information Central, The Beckett Fund, http://www.becketfund.org/hhsinformationcentral/ (last visited Nov. 21, 2012).

EXHIBIT 9

*Tyndale House Publrs.*, 2012 U.S. Dist. LEXIS 163965 at 60 (same); *Legatus*,

2012 U.S. Dist. LEXIS 156144 at 29 (estimating 193 million people in

grandfathered plans and granting preliminary injunction against Mandate).

The Mandate is also inapplicable to "member[s] of a recognized religious

sect or division thereof" who are "conscientiously opposed to acceptance of the

benefits of any private or public insurance." 26 U.S.C. §§ 5000A(d)(2)(a)(i),

1402(g)(1). The Government has also exempted employers, such as Deacon Hall,

with fewer than fifty employees,[11] 26 U.S.C. § 4980H(a), and entities they define

as "religious employers," i.e. churches, from compliance with the Mandate. 45

C.F.R. § 147.130(a)(iv)(A).

"[T]his massive exemption completely undermines any compelling interest

in applying the...mandate to [Deacon Hall]."[12] *Newland*, 2012 U.S. Dist. LEXIS

104835 at 22; *see also Tyndale House Publrs.*, 2012 U.S. Dist. LEXIS 163965 at

60 (same). Under strict scrutiny, "a law cannot be regarded as protecting an interest

---

[11] Most notably, it is difficult to see how the Government could argue they have a compelling interest in enforcing the Mandate against Deacon Hall given their decision to exempt Company from the ACA's requirement to provide group health insurance (which functionally exempts him from offering coverage for contraception). The government's alleged interests in the Mandate seemingly apply to employees regardless of the size of their employer. *See O Centro*, 546 U.S. at 433.

[12] To the extent the government may argue the Mandate should be sustained because granting an exemption for Deacon Hall's Company would mean it must grant exemptions for everyone, that "slippery slope" argument has been rejected by *O Centro* as inconsistent with RFRA. 546 U.S. at 435-36.

EXHIBIT 9

of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited."[13] *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) (quotations and citations omitted). The Government therefore cannot assert an interest "of the highest order" in forcing Deacon Hall to comply with the Mandate and violate his beliefs because the Government have allowed "appreciable damage" to the over 190 million individuals they have consciously exempted from the Mandate. The Government's alleged interests are simply not compelling when they have "fail[ed] to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort." *Id*. at 546-47. The Mandate must necessarily give way to Deacon Hall's faith, as "[o]nly those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." *Yoder*, 406 U.S. at 216.

O Centro illustrates that the Government have no compelling interest in denying Deacon Hall an exemption. In *O Centro*, a church sought a RFRA exemption to the Controlled Substances Act ("CSA") to permit them to use an

_____

[13] Notably, Congress did not exempt "grandfathered" plans from *all* provisions of the ACA. *See* 42 U.S.C. § 18011(a)(3-4) (specifying those provisions of the ACA that apply to grandfathered health plans). However, Congress specifically exempted grandfathered health plans from complying with the Mandate. The Government's position that its interests are "of the highest order" is further undercut by Congress's conclusion that grandfathered plans must comply with other provisions of the ACA, but not the Mandate.

EXHIBIT 9

illegal hallucinogen ("DMT") in a tea that church members received during communion. 546 U.S. at 423. The government contended that it had a compelling interest in the uniform application of the CSA such that it could make *no* exception to the ban on the hallucinogen to accommodate the church's sincere religious practice. *Id*. Yet for 35 years prior, a regulatory exemption from the CSA had been in place for Native American religious use of peyote, a substance, like DMT, also banned under Schedule I of the Act. *Id*. at 433. While noting that DMT was "exceptionally dangerous," *id*. at 432, the Court nonetheless held the exemption for peyote use "fatally undermines" the government's contention that had a compelling interest in denying an exemption to the church, *id*. at 434-35.[14]

The same is true in this case. The peyote exception exempted "hundreds of thousands" of Native Americans from the CSA. *Id*. at 433. That exemption negated the government's alleged interest in enforcing a ban on an "exceptionally dangerous" drug as applied to approximately 130 church members. *Id*. Here, the government has exempted a much greater number—over 190 million individuals—from complying with the Mandate for both secular and religious reasons, including

---

[14] Similarly, in *Lukumi Babalu Aye*, the Supreme Court found that the City of Hialeah's failure to enact feasible measures to restrict the slaughter of animals in situations not involving religious sacrifice required it to find that the government's interest was not compelling. 508 U.S. at 546-47.

32

EXHIBIT 9

Deacon Hall, as an employer with fewer than fifty employees.[15] This case deals not with curbing dangerous drug use, but with promoting marginally-incremental access to already widely-available women's health services. These exemptions likewise negate the Government' alleged interest in enforcing the Mandate against Deacon Hall.[16] The Government cannot meet its burden to demonstrate a compelling interest in forcing Deacon Hall to violate his sincerely-held religious beliefs while voluntarily exempting nearly two-thirds of the nation's population, including the very Plaintiff here, from the compliance with Mandate. But even if the Government's interest were considered compelling, the massive exemption they have allowed prevents them from demonstrating that granting an additional exemption to Company and its 45 employees would result in appreciable harm to those interests. *See O Centro*, 546 U.S. at 431 (In RFRA cases, the court must

---

[15] It is immaterial whether these exemptions are to the Mandate specifically or more generally to other provisions of the ACA thereby making the Mandate inapplicable. "If the government has a compelling interest in ensuring no-cost provision of preventative health coverage to women, that interest is compromised by exceptions allowing employers to avoid providing that coverage — whether broadly or narrowly crafted." *Newland*, 2012 U.S. Dist. LEXIS 104835, 22 n.12.

[16] As this case demonstrates, imposing the Mandate on religiously-motivated businesses like Company can actually frustrate the overall purpose of the ACA, which is to safeguard the public health. Under the pressure of the Mandate, and without the relief it seeks, Deacon Hall will terminate his group health plan, thereby leaving its employees without coverage for *any* health services. Of course, the Government were made aware this might happen, *see* 77 Fed. Reg. at 8727, yet they chose to impose the Mandate on Deacon Hall and others with similar sincere religious objections.

EXHIBIT 9

"look[] beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants."); *Olsen v. Mukasey*, 541 F.3d 827, 831 (8th Cir. 2008) (same).

As shown, the Government cannot demonstrate a compelling interest in the Mandate. It thus fails strict scrutiny and violates RFRA.

### B. The Mandate Does Not Use the Least Restrictive Means.

Even assuming the Government' alleged interests are compelling, the Mandate would still fail strict scrutiny because the Government cannot demonstrate that forcing Deacon Hall to violate his religious beliefs is the least restrictive means to ensure that women have access to preventive care at no cost.

Strict scrutiny requires "[p]recision of regulation." *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983). "If the [government] has open to it a less drastic way of satisfying its legitimate interests, it may not choose a [regulatory] scheme that broadly stifles the exercise of fundamental personal liberties." *Id.* (citations and quotations omitted). Here, the Government cannot demonstrate it has used the least restrictive means because it has several viable, yet far "less drastic" ways of satisfying its alleged interest that do not impose a substantial burden on Deacon Hall's free exercise of religion.

34

EXHIBIT 9

First and foremost, the Government could subsidize the coverage required by the Mandate itself. This is something the government is already doing on a large scale. In 2010, "[t]he joint federal-state Medicaid program spent $1.8 billion for family planning services." Guttmacher Institute, *Facts on Publicly Funded Contraceptive Services in the United States*, May 2012, (citations omitted), *available at* http://www.guttmacher.org/pubs/fb_contraceptive_serv.html.

The burden on the Government to expand its current operations to cover those individuals not qualifying for contraception coverage under Medicaid would be minimal given that "[n]ine in 10 employer-based insurance plans" already cover the "full range of prescription contraceptives." *See* Guttmacher Institute, *Contraceptive Use in the United States*, July 2012, (citations omitted), *available at* http://www.guttmacher.org/pubs/fb_contr_use.html.

The Government could also further its interests by directly reimbursing individuals who purchase contraceptives or allow those individuals to claim tax credits or deductions. Or, as the Government has done to insurance issuers, the Government could impose a mandate on the manufacturers of contraceptive drugs and devices to provide such products free of charge through community health centers, public clinics and hospitals. Defendant HHS Secretary Kathleen Sebelius has recognized that contraception services are already available through these entities for people with income-based support. Press Release, *A statement by U.S.*

35

EXHIBIT 9

*Department of Health and Human Services Secretary Kathleen Sebelius*, Jan. 20, 2012, http://www.hhs.gov/news/press/2012pres/01/20120

120a.html (last visited Nov. 21, 2012). The Government could effectively make them available for all citizens through such a mandate.

Of course, the Government may believe it is easiest to force employers to provide contraception services, but "a court should not assume a plausible, less restrictive alternative would be ineffective." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 824 (2000). All of the above options are far "less drastic," yet effective means of furthering the Government' alleged interests without imposing burdens on the religious exercise rights of Deacon Hall and others similarly situated. Thus, even assuming the Government have demonstrated an "actual problem in need of solving," the Mandate must fail because the Government cannot demonstrate that substantially burdening Deacon Hall's free exercise of religion is "actually necessary to the solution." *Brown*, 131 S.Ct. at 2738.

Additionally, as discussed above, the Mandate could have included a permitting process or opt-out provision. In *United States v. Friday*, 525 F.3d 938, 948, 960 (10th Cir. 2008), the Tenth Circuit held that requiring a Native American man to obtain a permit to use a bald eagle feather in his religious rituals was not a substantial burden of his religious exercise even if a complete ban on the use of the

36

EXHIBIT 9

tail feather would have been. Hence, the Mandate's provision of a permitting or opt-out system for ministers who owned and operated for-profit businesses would have been a lesser restrictive alternative than the current outright ban.

## VII.  Deacon Hall Will be Irreparably Harmed Absent Injunctive Relief.

Deacon Hall has demonstrated likely merits success as to his First Amendment and RFRA challenge. That showing necessitates that this Court find that he is likely to suffer irreparable harm. *See, e.g.*, *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("courts have held that a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA"); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("although plaintiff's free exercise claim is statutory rather than constitutional, the denial of the plaintiff's right to the free exercise of his religious beliefs is a harm that cannot be adequately compensated monetarily"). The courts who have recently enjoined enforcement of the Mandate have reached similar conclusions. *Newland*, 2012 U.S. Dist. LEXIS 104835 at 11 ("[I]t is well-established that the potential violation of Plaintiffs' constitutional and RFRA rights threatens irreparable harm."); *Legatus*, 2012 U.S. Dist. LEXIS 156144 at 40 ("The potential for harm to Plaintiffs exists, and with the showing Plaintiffs have made thus far of being able to convincingly prove their case at trial, it is properly characterized as irreparable.").

EXHIBIT 9

Moreover, because of his sincerely-held beliefs, Deacon Hall will be forced to terminate Company's plan on March 31, 2013, absent relief from this Court. At that time, he will be stripped of his ability to fulfill his religiously-held duty to provide for the physical needs of his employees. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

**VIII. The Balance of Hardships Strongly Favors Deacon Hall.**

When First Amendment freedoms are infringed, the Eighth Circuit "view[s] the balance clearly in favor of issuing the injunction" because irreparable harm occurs otherwise. *Iowa Right to Life Committee v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) ("*IRTL*"). The same is true here because a violation of RFRA also constitutes irreparable harm.

The Government will face no harm from being prevented from enforcing the Mandate against Company, a business the Government chose to exempt from the requirement to provide health insurance altogether. Absent relief, Deacon Hall will be forced to discontinue his Company's health insurance plan. So, if anything, injunctive relief will actually benefit the Government' interests in the ACA, and Deacon Hall's Company employees, because he will be able to continue offering his employees the protection of health insurance while this Court considers the merits of his claims.

38

EXHIBIT 9

The Government has voluntarily exempted health plans covering over 190 million individuals from the Mandate. The minimal harm it may face if unable to enforce the Mandate against Deacon Hall's Company and his 45 employees, "pales in comparison to the possible infringement upon Plaintiffs' constitutional and statutory rights." *Newland*, 2012 U.S. Dist. LEXIS 104835 at 14 (finding "[t]his factor strongly favors entry of injunctive relief").

## IX.  The Public Interest Favors an Injunction

The public interest factor in First Amendment and RFRA cases favors entry of an injunction. In First Amendment challenges, "the determination of where the public interest lies…is dependent on the determination of the likelihood of success on the merits … because it is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (*citing Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). As Deacon Hall has demonstrated likelihood of success, the public interest weighs strongly in his favor.

## X.  Any Injunction Must Be Tailored Under Federal Rule of Civil Procedure 65 To Meet Its Intended Purpose.

The Plaintiffs seek an injunction under Federal Rule of Civil Procedure 65 to enjoin enforcement of the HHS's mandates required coverages. Because no insurance company nor administrator of self-insured plan has pledged their

EXHIBIT 9

cooperation with Plaintiffs to obtain these goals, the Plaintiffs include in their proposed order a paragraph enjoining the Company's employees from using these coverages although they may exist in the Company's group insurance policy or self-insured plan. The Plaintiffs will continue to search for a cooperate insurance company or administrator who would provide an insurance vehicle where an injunction against the Company's employees would be unnecessary. But, that is not the case at the moment.

### Conclusion

For the foregoing reasons, Plaintiffs Deacon Hall and American Mfg Company request this Court to enter an injunction in their favor.

EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| DOBOSZENSKI & SONS, INC., *et al.* ) | Civil No. 13-3148 (JNE/FLN) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| SYLVIA M. BURWELL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER FOR INJUNCTION AND JUDGMENT

In light of the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*,
134 S. Ct. 2751 (2014), and upon the joint stipulation of the parties, it is hereby

ORDERED that the stay imposed on November 27, 2013, is lifted and defendants,
their employees, agents, and successors in office are enjoined

(a) from enforcing

(1) the "June 30, 2014 Contraceptive Coverage Requirement," defined here to

include those provisions of federal law in existence on June 30, 2014, when

the Supreme Court decided *Hobby Lobby*, that require plaintiff

Doboszenski & Sons, Inc. to provide its employees with health coverage

for contraceptive methods, sterilization procedures, and related patient

education and counseling to which plaintiffs object on religious grounds,

*e.g.*, 26 C.F.R. § 54.9815-2713(a)(1)(iv); 29 C.F.R. § 2590.715-

2713(a)(1)(iv); 45 C.F.R. § 147.130(a)(1)(iv); and

EXHIBIT 10

    (2) any penalties, fines, or assessments for noncompliance with the June 30,

        2014 Contraceptive Coverage Requirement, including those found in 26

        U.S.C. § 4980D, and 29 U.S.C. §§ 1132 and 1185d; and

    (b) from taking any other actions based on noncompliance with the June 30, 2014

        Contraceptive Coverage Requirement against plaintiff Doboszenski & Sons,

        Inc., its employee health plan(s), the group health coverage provided in

        connection with such plan(s), and/or Doboszenski & Sons, Inc.'s health

        insurance issuers and/or third-party administrators with respect to Doboszenski

        & Sons, Inc.'s health plan(s); and it is further

ORDERED that judgment is entered in favor of plaintiffs and against defendants on plaintiffs' claim under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*; and it is further

ORDERED that any petition or motion by plaintiffs for attorneys' fees or costs shall be submitted on or before 45 days (or the next business day if that day falls on a weekend or court holiday) from the date this judgment is issued; and it is further

ORDERED that this injunction and Judgment does not apply with respect to any changes in statute or regulation that are enacted or promulgated after this date, and nothing herein prevents plaintiffs from filing a new civil action to challenge any such future changes.

    LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: November 18, 2014              s/Joan N. Ericksen
                                JOAN N. ERICKSEN
                                United States District Judge

EXHIBIT 10

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FELTL AND COMPANY, INC., *et al.*,                    Civil No. 13-2635 (DWF/JJK)

          Plaintiffs,

v.                                                   **ORDER FOR INJUNCTION**
                                                     **AND JUDGMENT**
SYLVIA M. BURWELL, *et al.*,

          Defendants.

In light of the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*,

134 S. Ct. 2751 (2014),

**IT IS HEREBY ORDERED** that Defendants, their employees, agents, and

successors in office are enjoined

    (a)    from enforcing

        (1)    the "June 30, 2014 Contraceptive Coverage Requirement," defined

             here to include those provisions of federal law in existence on

             June 30, 2014, when the Supreme Court decided *Hobby Lobby*, that

             require Plaintiff Feltl and Company, Inc., to provide its employees

             with health coverage for contraceptive methods, sterilization

             procedures, and related patient education and counseling to which

             Plaintiffs object on religious grounds, *e.g.*, 26 C.F.R.

             § 54.9815-2713(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv);

             45 C.F.R. § 147.130(a)(1)(iv); and

        (2)    any penalties, fines, or assessments for noncompliance with the

             June 30, 2014 Contraceptive Coverage Requirement, including those

             found in 26 U.S.C. § 4980D, and 29 U.S.C. §§ 1132 and 1185d; and

EXHIBIT 10

(b)    from taking any other actions based on noncompliance with the June 30, 2014 Contraceptive Coverage Requirement against Plaintiff Feltl and Company, Inc., its employee health plan(s), the group health coverage provided in connection with such plan(s), and/or Feltl and Company, Inc.'s health insurance issuers and/or third-party administrators with respect to Feltl and Company, Inc.'s health plan(s); and

**IT IS FURTHER ORDERED** that judgment is entered in favor of Plaintiffs and against Defendants on Plaintiffs' claim under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, *et seq.*; and

**IT IS FURTHER ORDERED** that any petition or motion by Plaintiffs for attorney fees or costs shall be submitted on or before 45 days (or the next business day if that day falls on a weekend or court holiday) from the date judgment is entered; and

**IT IS FURTHER ORDERED** that this injunction and Judgment does not apply with respect to any changes in statute or regulation that are enacted or promulgated after this date, and nothing herein prevents Plaintiffs from filing a new civil action to challenge any such future changes.

There being no just reason for delay,

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 26, 2014          s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge

2

EXHIBIT 10

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

DANIEL MEDFORD, et al,

Civil No. 13-1726 (JRT/SER)

Plaintiffs,

**ORDER FOR INJUNCTION AND JUDGMENT**

v.

KATHLEEN SEBELIUS, et al,

Defendants.

---

James V. F. Dickey, Erick Kaardal, **MOHRMAN, KAARDAL & ERICKSON, P.A.,** 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402, for plaintiffs.

Ann M Bildtsen, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; Bradley Philip Humphreys, **UNITED STATES DEPARTMENT OF JUSTICE,** 20 Massachusetts Avenue NW, Washington, DC 20530, for defendants.

In light of the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), **IT IS HEREBY ORDERED** that defendants, their employees, agents, and successors in office are enjoined

    (a) from enforcing

        (1) the "June 30, 2014 Contraceptive Coverage Requirement," defined here to include those provisions of federal law in existence on June 30, 2014, when the Supreme Court decided *Hobby Lobby*, that require plaintiff The QC Group, Inc. to provide its employees with health coverage for contraceptive methods, sterilization procedures, and related patient education and

EXHIBIT 10

counseling to which plaintiffs object on religious grounds, *e.g.*, 26 C.F.R. §
54.9815-2713(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv); 45 C.F.R. §
147.130(a)(1)(iv); and

(2) any penalties, fines, or assessments for noncompliance with the June 30,
2014 Contraceptive Coverage Requirement, including those found in 26
U.S.C. § 4980D, and 29 U.S.C. §§ 1132 and 1185d; and

(b) from taking any other actions based on noncompliance with the June 30, 2014
Contraceptive Coverage Requirement against plaintiff The QC Group, Inc., its
employee health plan(s), the group health coverage provided in connection
with such plan(s), and/or The QC Group, Inc.'s health insurance issuers and/or
third-party administrators with respect to The QC Group, Inc.'s health plan(s);

and **IT IS FURTHER ORDERED** that judgment is entered in favor of
plaintiffs and against defendants on plaintiffs' claim under the Religious
Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*;

and **IT IS FURTHER ORDERED** that any petition or motion by plaintiffs
for attorneys' fees or costs shall be submitted on or before 45 days (or the next
business day if that day falls on a weekend or court holiday) from the date this
judgment is issued;

and **IT IS FURTHER ORDERED** that this injunction and Judgment does
not apply with respect to any changes in statute or regulation that are enacted
or promulgated after this date, and nothing herein prevents plaintiffs from
filing a new civil action to challenge any such future changes.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

EXHIBIT 10

DATED: November 19, 2014
at Minneapolis, Minnesota

_____ s/John R. Tunheim _____
JOHN R. TUNHEIM
United States District Judge

EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

SMA, LLC; MICHAEL BREY; and                  )         Case No. 0:13-cv-01375-ADM-LIB
STANLEY BREY                                 )
                                             )
          Plaintiffs,                        )
                                             )
     v.                                      )
                                             )
SYLVIA M. BURWELL, *et al.*,[1]              )
                                             )
          Defendants.                        )
                                             )

## ORDER FOR INJUNCTION AND JUDGMENT

In light of the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*,

134 S. Ct. 2751 (2014), it is hereby ORDERED that defendants, their employees, agents,

and successors in office are enjoined

    (a) from enforcing

        (1) the "June 30, 2014 Contraceptive Coverage Requirement," defined here to

            include those provisions of federal law in existence on June 30, 2014, when

            the Supreme Court decided *Hobby Lobby*, that require plaintiff SMA, LLC

            to provide its employees with health coverage for contraceptive methods,

            sterilization procedures, and related patient education and counseling to

            which plaintiffs object on religious grounds, *e.g.*, 26 C.F.R. § 54.9815-

---

[1] Burwell is the current United States Secretary of the Department of Health and Human Services (HHS). Although not listed on the docket as a Defendant, she is the appropriate person to be named in an official capacity on behalf of HHS, replacing former HHS Secretary Kathleen Sebelius.

EXHIBIT 10

2713(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv); 45 C.F.R. § 147.130(a)(1)(iv); and

(2) any penalties, fines, or assessments for noncompliance with the June 30, 2014 Contraceptive Coverage Requirement, including those found in 26 U.S.C. § 4980D, and 29 U.S.C. §§ 1132 and 1185d; and

(b) from taking any other actions based on noncompliance with the June 30, 2014 Contraceptive Coverage Requirement against plaintiff SMA, LLC, its employee health plan(s), the group health coverage provided in connection with such plan(s), and/or SMA, LLC's health insurance issuers and/or third-party administrators with respect to SMA, LLC's health plan(s); and it is further

ORDERED that judgment is entered in favor of plaintiffs and against defendants on plaintiffs' claim under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*; and it is further

ORDERED that any petition or motion by plaintiffs SMA, LLC, Michael Brey, and Stanley Brey for attorneys' fees or costs shall be submitted on or before 45 days (or the next business day if that day falls on a weekend or court holiday) from the date this judgment is issued; and it is further

ORDERED that this injunction and Judgment does not apply with respect to any changes in statute or regulation that are enacted or promulgated after this date, and

2

EXHIBIT 10

nothing herein prevents plaintiffs from filing a new civil action to challenge any such future changes.

**THERE BEING NO JUST REASON FOR DELAY, LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


Date: November 20, 2014                    _____s/Ann D. Montgomery_____
                                           The Honorable Ann D. Montgomery
                                           United States District Judge

3

EXHIBIT 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| STINSON ELECTRIC, INC., *et al.* | ) | Case No. 14-CV-830 (PJS/HB) |
|  | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| SYLVIA M. BURWELL, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

### ORDER FOR INJUNCTION AND JUDGMENT

In light of the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), it is hereby

ORDERED that defendants, their employees, agents, and successors in office are enjoined

    (a) from enforcing

        (1) the "June 30, 2014 Contraceptive Coverage Requirement," defined here to include those provisions of federal law in existence on June 30, 2014, when the Supreme Court decided *Hobby Lobby*, that require plaintiff Stinson Electric, Inc. to provide its employees with health coverage for contraceptive methods, sterilization procedures, and related patient education and counseling to which plaintiffs object on religious grounds, *e.g.*, 26 C.F.R. § 54.9815-2713(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv); 45 C.F.R. § 147.130(a)(1)(iv); and

EXHIBIT 10

(2) any penalties, fines, or assessments for noncompliance with the June 30, 2014 Contraceptive Coverage Requirement, including those found in 26 U.S.C. § 4980D, and 29 U.S.C. §§ 1132 and 1185d; and

(b) from taking any other actions based on noncompliance with the June 30, 2014 Contraceptive Coverage Requirement against plaintiff Stinson Electric, Inc., its employee health plan(s), the group health coverage provided in connection with such plan(s), and/or Stinson Electric, Inc.'s health insurance issuers and/or third-party administrators with respect to Stinson Electric, Inc.'s health plan(s); and it is further

ORDERED that judgment is entered in favor of plaintiffs and against defendants on plaintiffs' claim under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*; and it is further

ORDERED that any petition or motion by plaintiffs for attorneys' fees or costs shall be submitted on or before 45 days (or the next business day if that day falls on a weekend or court holiday) from the date this judgment is issued; and it is further

- REMAINDER OF PAGE INTENTIONALLY LEFT BLANK -

2

EXHIBIT 10

ORDERED that this injunction and Judgment does not apply with respect to any changes in statute or regulation that are enacted or promulgated after this date, and nothing herein prevents plaintiffs from filing a new civil action to challenge any such future changes.

**THERE BEING NO JUST REASON FOR DELAY, LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: 11/18/14                                        s/Patrick J. Schiltz
                                                     The Honorable Patrick J. Schiltz
                                                     United States District Judge

3

EXHIBIT 10

## HHS Mandate Fee Breakdown

| Rate | Erick Kaardal Attorney Hours 450 | Fees | James Dickey Attorney Hours 225 | Fees | John Graybeck Legal Assistant Hours 195 | Fees | Sub Total Hours | Sub Total Fees |
|---|---|---|---|---|---|---|---|---|
| Greg Hall HHS Mandate | 125.08 | $56,286.00 | 42.3 | $9,517.50 | 14.7 | $2,866.50 | 182.08 | $68,670.00 |

EXHIBIT 11

# Mohrman, Kaardal & Erickson, P.A.

150 South 5th Street
Suite 3100
Minneapolis, MN 55402

612-341-1074
Fed. Tax ID No. 41-1903593

Greg Hall
American Manufacturing Company
PO Box 640
Saint Joseph, MN 56374

Invoice No:      18700
Client/Matter No:  3008/001

**In Reference To:  Greg Hall v. United States**

March 11, 2015

FOR PROFESSIONAL SERVICES
through March 11, 2015

## Professional Services:

| Date | Atty. | Description | Hours | Amount |
|------|-------|-------------|-------|--------|
| 03/03/15 | JEG | Review and reading of pleadings. Review of Annex pleadings and Eighth Circuit's decision. | 0.60 | 117.00 |
| | JEG | Conferred with EK re: attorney fee motion-memorandum. | 0.80 | 156.00 |
| 03/05/15 | JEG | Legal research; drafting and revisions memorandum for attornye fees. | 4.50 | 877.50 |
| 03/06/15 | JEG | Revisions to memorandum. | 2.30 | 448.50 |
| 03/09/15 | JEG | Revisions to Memorandum. | 3.40 | 663.00 |
| 03/10/15 | JEG | Revisions to Spellacy declaration. Communication to Mathews re: Spellacy declaration. | 0.20 | 39.00 |
| | JEG | Revisions to declarations; conferred with EK; Dan Biersdorf; T. Mathews. | 4.20 | 819.00 |
| | EGK | Work on memorandum of law and supporting affidavits. | 4.10 | 1,845.00 |
| 03/11/15 | EGK | Draft and revise Affidavit of Erick Kaardal.  Draft and revise memorandum of law. | 7.21 | 3,244.50 |
| | JEG | Work on Affidavits of Mathews, Kaardal, Biersdorf and Johnson. Work on memorandum of law. | 7.90 | 1,540.50 |

| | | **For professional services rendered** | 35.21 | $9,750.00 |
|---|---|---|---|---|

Bills Are Due And Payable Upon Receipt
This Statement Does Not Include Expenses Not Yet Received By This Office
Bills Unpaid Over 60 Days Accrue Interest At 18%

EXHIBIT 12

## Mohrman, Kaardal & Erickson, P.A.

Fed. Tax ID No. 41-1903593

| Greg Hall | Invoice No: | 18700 |
|---|---|---|
| | Client/Matter No: | 3008/001 |
| **In Reference to:  Greg Hall v. United States** | Page: | 2 |

<u>**Amount**</u>

**Previous balance**                                              $307.50

**Balance due**                                              **$10,057.50**

Bills Are Due And Payable Upon Receipt
This Statement Does Not Include Expenses Not Yet Received By This Office
Bills Unpaid Over 60 Days Accrue Interest At 18%

EXHIBIT 12

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 13-1229

281 Care Committee, et al.

Appellants

v.

Ross Arneson, in his official capacity as County Attorney for Blue Earth County, Minnesota, or his successor, et al.

Appellees

_____

Appeal from U.S. District Court for the District of Minnesota - Minneapolis
(0:08-cv-05215-ADM)
_____

## ORDER

The motion of Appellee County Attorneys' for an extension of time to file objections to Appellants' motion for attorney's fees is granted.  Appellants shall recover from the Appellees the sum of $185,000.00 (One hundred eighty-five thousand dollars) as attorney's fees on appeal. The Appellants' motion for bill of costs is also granted.  Appellants shall recover from the Appellees the sum of $589.31 (Five hundred eighty-nine dollars and thirty-one cents) as taxable costs on appeal.

October 15, 2014

Order Entered at the Direction of the Court:

Clerk, U.S. Court of Appeals, Eighth Circuit.

/s/Michael E. Gans

EXHIBIT 13

# United States Court of Appeals
## for the Eighth Circuit

### 13-1229

---

281 Care Committee; Ron Stoffel; Citizens for Quality Education; Joel Brude,

Appellants,

vs.

Ross Arneson, in his official capacity as County Attorney for Blue Earth County, Minnesota, or his successor; Mike Freeman, in his official capacity as County Attorney for Hennepin County, Minnesota, or his successor; Lori Swanson, in her official capacity as the Minnesota Attorney General or her successor,

Respondents.

---

### APPELLANTS' MOTION FOR ATTORNEY FEES AND COSTS

---

William F. Mohrman, 168816
Erick G. Kaardal, 229647
James V.F. Dickey, 393613
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
*Attorneys for Appellants 281 Care Committee, et al.*




September 16, 2014

Daniel P. Rogan, 274458
Senior Assistant County Attorney
2000A Government Center
Minneapolis, Minnesota 55487
*Attorneys for County Attorney Respondents*

John S. Garry, 208899
Assistant Attorney General
445 Minnesota Street, Suite 1100
Saint Paul, Minnesota 55101
*Attorney for Respondent Lori Swanson*

EXHIBIT 13

# **MOTION**

Appellants 281 Care Committee, Ron Stoffel, Citizens for Quality Education, and Joel Brude ("Appellants") move for an Order awarding attorney fees and costs under Eighth Circuit Local Rule 47C, Federal Rule of Appellate Procedure 27 and 39, and 42 U.S.C. §§1983 & 1988.

Appellants completely prevailed on the sole substantive relief requested in Appellants' First Amended Complaint: a declaratory judgment that Minn. Stat. §211B.06 as applied to false statements regarding the "effect of a ballot question" violates Appellants' First Amendment right to free speech. Based on the Court's opinion and to be issued mandate, the District Court will be mandated to enter judgment in favor of Appellants against the Respondent County Attorneys on the sole relief sought against the Respondent County Attorneys and issue an injunction prohibiting enforcement of §211B.06 against Appellants.

Presumably, the Respondent County Attorneys will argue that because one of the prior Appellants, Mr. Victor Niska, was dismissed from the case, as was the Respondent Attorney General, Appellants were not a prevailing party. As set forth below, these dismissals should not affect Appellants' prevailing party status.

Appellants are the prevailing party under §1988, are thus entitled to attorney fees, and hereby move this Court for attorney fees and costs related to the appeals

1

EXHIBIT 13

of the District Court's judgments in the above-captioned matter.  As set forth

below, Appellants seek $207,581.83 in attorney fees and costs.

### A.    Summary of Appellants' Fee Application.

Appellants' Motion seeks attorney fees and costs incurred on two appeals

and one Petition to the Supreme Court.  *See, William F. Mohrman Declaration*

*("Mohrman Declaration")*.  Appellants' Motion seeks recovery under a lodestar

analysis for 524.00 hours in attorney and paralegal time on all the appellate work

(two appeals and a response to a Supreme Court Petition), at prevailing market

rates of between $495 to $225 per hour for three attorneys at Mohrman, Kaardal &

Erickson, P.A., as well as $195 per hour for one paralegal with over 35 years of

experience, for a total of $191,599.00 in attorney fees and $990.96 in non-taxable

costs.  Appellants also filed a separate Bill of Costs requesting recovery of

$1,472.10.  Finally, Appellants have set forth in a separate billing history the time

and expenses incurred in preparing this Attorney Fee Application for which

Appellants seek $14,978.00 in attorney fees and $13.90 in costs.  The total that

Appellants are seeking, other than in the Bill of Costs, is $206,577 in attorney fees

and $1,004.83 in costs for a grand total of $207,581.83 in attorney fees and

expenses for Appellants as prevailing party in the above captioned appeal.  *See,*

*Mohrman Declaration.*

EXHIBIT 13

**B.    Appellants Are Prevailing Parties As to The Sole Claim Asserted in Their Complaint**.

**1.   Appellants Are Completely Prevailing Parties in This Appeal Because They Obtained All the Relief Sought in the First Amended Complaint.**

As set forth above, Appellants are prevailing parties under 42 U.S.C. §1988 because they "prevailed" on the sole claim for relief made in the First Amended Complaint against the Respondent County Attorneys on their appeals to this Court. *Compare 281 Care Committee II*, Slip Op. at 38, *with AA-47*.  A party is the "prevailing party" when it has been "awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). Appellants are undoubtedly prevailing parties in their appeals to this Court under the *Buckhannon* test because this Court definitively reversed the District Court as to all relief Appellants sought and remanded for the District Court to enter judgment declaring Minn. Stat. §211B.06 facially unconstitutional.  *281 Care Committee II*, Slip. Op. at 10-11, 35-36, 38.  Moreover, under *Lefemine v. Wideman*, 133 S. Ct. 9, 11, (2012), a party prevails under §1988 even if only awarded declaratory or injunctive relief and no damages.

**2.   The Voluntary Dismissal of Victor Niska and W.I.S.E. Citizen Committee Has No Effect on Appellants' Fee Claim to This Court.**

Victor Niska's involvement as a party to the first appeal had at most a *de minimis* effect on the amount of the recoverable attorney fees in this case.  Niska

3

EXHIBIT 13

was dismissed from this case between the first and second appeals because he had passed away.  However, during the appeals process, no attorney work was needed with respect to any of the Appellants because the appeals record was closed.

Nonetheless, Appellants' attorney marked as "No Charge" 2.40 hours totaling $1,140 in charges for time entries involving discussions with Niska on the Billing History Report attached to the Mohrman Declaration as Exhibit 1. Thus, Appellants have sought **_zero_** compensation for any attorney fees generated as a result of any individual interaction with Niska.

Respondents may argue that any time developing facts through Affidavits related to Niska's prosecution in an OAH proceeding should also be excluded. However, such facts would have been part of the record in this case regardless of whether Niska was party or merely a witness.  Niska had been represented in the OAH proceeding by Appellants' current attorney, Mohrman, who was fully familiar with Niska's case and had all of the case records in his office.  Appellants would have put this evidence in the record regardless of whether Niska was a party because the OAH prosecution of Niska directly contradicted the Respondent County Attorneys' arguments that no one in Minnesota had anything to fear from being prosecuted under Minn. Stat. §211B.06.  Finally, it is important to note that Appellants obtained a declaratory judgment striking down §211B.06 facially – Niska's continued involvement was therefore not needed for this relief.

4

### 3. The Attorney General's Dismissal Under the 11th Amendment Did Not Result in a Significant Reduction of Appellants' Fee Application to This Court.

Presumably the Respondent County Attorney will argue that Appellants' Attorney Fee Application should be significantly reduced because this Court dismissed Respondent the Minnesota Attorney General under the 11th Amendment. However, Appellants' counsel devoted very little time to the State Attorney General's 11th Amendment arguments and the State Attorney General's dismissal had no impact on the Court's decision to find §211B.06 unconstitutional on its face; therefore, there is no justification for significantly reducing Appellants' Attorney Fee Application due to the Court's dismissal of the State Attorney General. Moreover, Appellants have removed any time entries incurred defending against the Attorney General's 11th Amendment arguments.

The State Attorney General made little effort in her Response Briefs to engage in any arguments different from the Respondent County Attorneys. To begin, the Appellants devoted no argument to the 11th Amendment issues because the District Court did not rely on them. Moreover, as more fully analyzed in the Mohrman Declaration, a comparison of the Respondents' response briefs reveals that the Attorney General devoted most of her arguments to the 11th Amendment and relied on the County Attorneys to address the standing and substantive

EXHIBIT 13

arguments.  Moreover, similarly to Niska, the Attorney General was not needed in order for Appellants to obtain the relief granted in this case.

Nonetheless, Appellants' attorney has eliminated any attorney fees for time spent arguing that the Attorney General is subject to suit under the 11th Amendment. *See, Mohrman Declaration, at para 38-43.* These amounts totaled 38.20 hours resulting in an elimination of $11,681 in charges. Thus, to the extent Respondents attempt to argue that Appellants' fee award should be reduced based on the Attorney General's dismissal in the second appeal to this Court, as stated above, Appellants have already reduced their fee application by the amount billed related to the Attorney General's 11th Amendment arguments.

**C.    Appellants' Fee Application is Reasonable**.

Under 42 U.S.C. § 1988(b), the court may allow reasonable attorney's fees to a party that prevails in an action to enforce § 1983. Here, Appellants prevailed on both of their appeals.  This Court's decision in the second essentially ended this case.  Thus, Appellants are prevailing parties.  The court should start assessing attorney fees by determining the lodestar, which is "calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir.2002).

**1.    Section 1988 Lodestar Analysis**.

EXHIBIT 13

The "centerpiece of [calculating] attorney fee awards" is the lodestar approach. *Blanchard v. Bergeron,* 109 S.Ct. 939, 945 (1989). The starting point in determining a "reasonable fee" under the lodestar analysis is calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). This calculation is presumed to be reasonable. *City of Riverside v. Santos,* 477 U.S. 561, 568 (1986).

Nonetheless, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley,* 461 U.S. at 434. A court must take other factors into consideration, including the important factor of the results obtained in light of the plaintiff's litigation objectives. *Id.* However, the most important factor in determining the reasonableness of the attorney fee request is the magnitude of plaintiff's success. *Jenkins v. Missouri,* 127 F.3d. 709, 716 (8th Cir. 1997).

Finally, in cases in which it has taken numerous years to litigate to decision, the Supreme Court and this Court have specifically held that in order to compensate the attorneys for lost interest as well as the effects of inflation, courts should use the ***current*** prevailing market rate rather than the historical market rate in the lodestar calculation. *Missouri v. Jenkins,* 109 S.Ct. 2463, 2468-69 (1989).

### a.    **Reasonable Hourly Rate**.

Calculating reasonable fees under the § 1988 lodestar analysis to determine hourly rates is based on the "prevailing market rates in the relevant community,"

EXHIBIT 13

*Blum v. Stenson,* 465 U.S. 886, 895 (1984), and not the prevailing attorney's

regularly hour billing rate. *McDonald v. Armontrout,* 860 F.2d 1456, 1459 (8th Cir.

1988); *See also Moysis v. DTG Datanet,* 278 F.3d 819, 828 (8th Cir. 2002) (finding

that a counsel's customary rate might be some evidence of a reasonable rate, but

was not controlling, and raising attorney's regular hourly rate 50% greater to meet

then comparable prevailing market rates.)

 The importance of awarding attorney fees that are competitive in the

prevailing market in civil rights cases is embodied in this Court's holding that the

amount of the reasonable fee in First Amendment civil rights litigation is not "a fee

that is sufficient to induce a capable attorney to undertake child's play:  'It is

intended that the amount of fees awarded under [42 U.S.C.] §1988 be governed by

the same standards which prevail in other types of equally complex Federal

litigation, such as antitrust cases ....'"  *Casey v. City of Cabool*, 12 F.3d 799 at 805

(8th Cir. 1993) (quoting S. Rep. No. 1011, 94th Cong., 2nd Sess. 5 (1976)

(Amendment of 42 U.S.C. §1988).

 The best guidance for the Court to calculate a reasonable fee award is to

determine the "prevailing market rate," through satisfactory evidence in addition to

the attorney's own affidavits with those by lawyers with comparable skill,

experience, and reputation.  *Blum*, 465 U.S. at 896.

EXHIBIT 13

When the attorney seeking fees has carried the burden of establishing the claimed hourly rate and hours are reasonable, the end product is presumed to be the fee contemplated under 42 U.S.C. § 1988. *Id.* at 897. Further, legal assistant (paralegal) time is recoverable at prevailing market rates. *Missouri v. Jenkins,* 491 U.S. 274, 285,-88 (1989).

Appellants seek reimbursement for the work of three attorneys and one paralegal as set forth in the table below:

| Attorney/Paralegal | Law School Graduation | Years Practicing | Market Hourly Rate |
|---|---|---|---|
| William F. Mohrman | 1985 | 29 years | $495.00 |
| Erick G. Kaardal | 1992 | 23 years | $475.00 |
| James V. F. Dickey | 2012 | 2 years | $225.00 |
| John R. Grzybek – paralegal | | 35 years | $195.00 |

The rates requested for the individual attorneys are reasonable.  First, Mr. Mohrman and Mr. Kaardal were significantly involved in the *Republican Party of Minnesota v. White* case in the Eighth Circuit and Supreme Court and their hourly rates were approved by this Court at $350 per hour and $325 per hour respectively based on a fee application submitted in August, 2005, nine years ago.  *Republican Party of Minn. v. White*, 456 F.3d 912, 919 (8th Cir. 2006).  Mr. Mohrman's and

EXHIBIT 13

Mr. Kaardal's legal experience and acumen has significantly advanced in the past nine years and the prevailing market rate has risen commensurately.

Moreover, recent U.S. District Court for the District of Minnesota decisions on attorney fee applications approved hourly rates at $495 and above for attorneys with experience similar to Mr. Mohrman and Mr. Kaardal. As detailed in the Mohrman Declaration, the U.S. District Court for the District of Minnesota approved a prevailing market rate of $495 per hour for attorneys with only 23 years of experience. *Owner Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.,* CIV. 05-2809 JRT/JJG, 2012 WL 6760098 (D. Minn. 2012). That Court also found $435 per hour was a reasonable prevailing market rate for an attorney with 12 years of experience. *See also, Rosen v. Wentworth*, CIV. 12-1188 ADM/FLN, 2014 WL 1384084 (D. Minn. 2014) (awarding $225 per hour rate for an attorney with less than 3 years of experience in Minneapolis/St. Paul) (attached to the Mohrman Declaration as Exhibit 7).

Thus, based on recent Minnesota District Court decisions, Mr. Mohrman's requested rate of $495 per hour with 29 years of experience fits comfortably within the rates recently approved. Although Mr. Kaardal has the same experience of 23 years as one of the attorneys in the *Owner Operator Indep. Drivers Ass'n,* case who was approved at $495 per hour, Mr. Kaardal is only seeking $475 per hour. Finally, with respect to Mr. Dickey, he is now a third year associate who graduated

EXHIBIT 13

from law school at the same time as the attorney in *Rosen* whose prevailing market rate was found reasonable at $225 per hour. Therefore, Mr. Dickey's request at $225 per hour is reasonable.

Finally, Appellants are seeking recovery of $195 per hour for its paralegal, John Grzybek. Mr. Grzybek has been a paralegal for over 35 years and has graduated from law school. Mr. Grzybek began his career as a paralegal at Faegre in 1979.

Appellants' fee requests are also supported by the Declarations of Mr. John Hinderaker and Mr. Kirk Kolbo, each of whom are prominent attorneys in private practice in the Minneapolis market with comparable skill and experience. Mr. Hinderaker has over 40 years of experience and Mr. Kolbo has over 30 years of experience in the Minneapolis/St. Paul market billing and collecting hourly attorney fees from clients. Mr. Hinderaker is currently a partner at Faegre Baker Daniels and Mr. Kolbo is a partner at Maslon, Edelman, Borman & Brand, two large and well respected Minneapolis law firms.

Of special emphasis, both Mr. Kolbo and Mr. Hinderaker have experience litigating civil rights cases as detailed in their Declarations. Each Declarant testifies, based on his own specific knowledge and experience not only with his own law firm's rates but also the hourly rates of competing law firms in the Minneapolis market, that the hourly rates Appellants request for their attorneys set

EXHIBIT 13

forth in the table above are well within the range of *current* market rates in

Minneapolis for specialized litigation including complex civil rights litigation such

as 281 Care Committee's case before the Eighth Circuit.  In addition, each testifies

that he is familiar with the work of some or all of the attorneys in the case and their

reputation in the Minneapolis market and, based on this knowledge, the rates

requested above are reasonable for the attorneys based on their skill and reputation.

Finally, each of these attorneys testifies to the complex nature of such litigation.

Appellants' attorney's hourly rates should be approved as the prevailing

market rate for First Amendment civil rights work in the Minneapolis area.

### b.    Reasonable Amount of Hours Expended.

The second step of the lodestar analysis is to determine the number of hours

reasonably expended on the matter.  The burden is on the applicant to present to

the Court "evidence of the hours worked" "identifying the general subject matter

of his time expenditures."  *Hensley,* 461 U.S. 424, 433, 437 n. 2 (1983). However,

the attorney "is not required to record in great detail how each minute of his time

was expended."  *Id.,* at 437 n. 2.  The key is that the attorney submitting the fee

request is to exercise "billing judgment" to exclude hours that are "excessive,

redundant or otherwise unnecessary." *Id.,* at 434.

As set forth in the Mohrman Declaration, Mr. Mohrman went through the

entire billing history report of 356 time entries for Mohrman, Kaardal & Erickson's

EXHIBIT 13

work on these appeals and reviewed every time entry to determine if the time charged was "excessive, redundant, [duplicative] or otherwise unnecessary." To begin, every attorney and paralegal at Mohrman, Kaardal & Erickson is expected to make contemporaneous time entries for the work that they perform each day and exercise billing judgment at that time to reduce or eliminate time entries which would be "excessive, redundant, [duplicative] or otherwise unnecessary." Mr. Mohrman has interviewed each of the attorneys and paralegals who performed work on these appeals and they informed Mr. Mohrman that the time entries provided in Mohrman, Kaardal & Erickson's billing software were recorded contemporaneously on the day the work was performed.

Second, Appellants' attorneys engaged in no "block billing" and billed in 1/10th of an hour increments. *See,* Billing History Report attached to the Mohrman Declaration as Exhibit 1.

Third, if Mr. Mohrman believed that an entire time entry recorded by an attorney was "excessive, redundant, [duplicative] or otherwise unnecessary", Mr. Mohrman took one of two actions. If the entire time entry fit this description, Mr. Mohrman simply had Mohrman, Kaardal, & Erickson's timekeeping software, TimeSlips, mark the slip from "Billable" to "No Charge." The total number of hours marked "No Charge" were 96.80 reducing total charges by $25,849.50.

Mr. Mohrman also reduced time entries throughout the Billing History

EXHIBIT 13

Report if Mr. Mohrman believed, in the exercise of billing judgment, that the amount of the time incurred for the work performed was either "excessive, redundant, [duplicative] or otherwise unnecessary." With respect to those entries, Mr. Mohrman reduced the time incurred on each slip as "Do Not Bill Time." For instance, if an attorney spent 5.6 hours drafting a section of a brief and Mr. Mohrman concluded that only 3.6 hours should have been spent drafting that section of the brief, Mr. Mohrman would mark "2.0" hours in the "Do Not Bill Time" section of the timeslip. This would result in the time slip now showing 3.6 hours in billable time on the Billing History Report. As a result of these reductions, Mr. Mohrman reduced 47.20 hours for a total of $16,514 in further reductions. However, once again, these reductions are already incorporated into the Billing History Report attached as Exhibit 1 to the Mohrman Declaration.

In addition to the general law on the reasonableness of the hours expended, a few additional points are worth noting. The greatest area of concern in exercising billing judgment on §1988 requests is for the attorney to remove time entries spent on claims for which the party did not prevail. *Hensley,* 461 U.S. 424, 433, 437 n. 2 (1983). To that end, as detailed above, Appellants have removed ***all*** time billed for their work in opposing the Attorney General's arguments regarding 11th Amendment immunity, and have removed ***all*** time billed for the conversations regarding the first appeal with Victor Niska.

14

The Courts have also identified several other factors in determining the reasonableness of a §1988 attorney fee application. To begin, this Court has held that a factor in examining the amount of time expended in a First Amendment case is whether the case will benefit the public generally. *Jaquette v. Black Hawk County, Iowa*, 710 F.2d 455, 461 (8th Cir. 1983). There is no question that Appellants' case will benefit the public generally because the public will be able to speak freely on ballot questions without fear of prosecution for false statements. The *Jacquette* Court also noted that an appraisal that the time spent by plaintiff's counsel was "not reasonably expended turns on so many subjective factors that it seldom should be the basis for a reduction of an attorneys fee." *Jaquette,* 710 F.2d 455, 461.

Third, the Supreme Court has also noted that a defendant's objections will not be heard if the defendant put forth a vigorous defense to the claims in the matter. *City of Riverside v. Rivera,* 477 U.S. 561, 580 n. 11 (1986). In this case, the Respondent County Attorneys vigorously fought every step of this litigation and in fact were successful before the District Court twice. In fact, today the County Attorneys filed a Petition for *en banc* review.

Fourth, because of the legal and factual complexity of civil rights litigation, courts also understand that extensive legal research is necessary in order that the client's case can be properly prepared. *Tomazzoli v. Sheedy,* 804 F.2d 93, 97-98 n.

15

EXHIBIT 13

5 (7th Cir. 1986). This factor is particularly relevant here. As set forth above, these appeals involved two significant issues of first impression at the Supreme Court: (i) whether deliberately false speech is categorically exempt from First Amendment free speech protection and (ii) whether a person subject to possible prosecution under a statute prohibiting deliberately false speech must first allege that the person will make deliberately false speech in order to have Article III standing in federal courts. In the first district court case, Judge Rosenbaum found no standing because the Appellants failed to allege that they would engage in deliberately false speech. Moreover, even if the Appellants had made such an allegation, Judge Rosenbaum found that the First Amendment free speech guarantee did not protect deliberately false speech. In the first appeal, this Court reversed on both decisions. After the first appeal was decided, the Supreme Court in *Alvarez* unequivocally held for the first time that deliberately false speech is protected by the First Amendment free speech guarantee. Extensive legal research was necessary on these complex issues of constitutional law.

Finally, this Court has found that time spent interviewing with the media are necessary in public interest civil rights cases and thus compensable. *Jenkins v. Missouri,* 131 F.3d 716, 721 (8th Cir. 1997) (time with media).

In this case, Appellants are claiming 524 hours in attorney time reasonably expended. *Mohrman Declaration, ¶22.* William Mohrman reviewed the time

EXHIBIT 13

records in preparing this Motion in order to remove time which was excessive or duplicative. *Mohrman Declaration, ¶ 26.* The amount of time removed from the records totals 144 hours in time and $42,363.50 in charges – approximately 22% of the total amount requested in a case on which Appellants obtained 100% of the relief they sought.

Appellants anticipate that the Respondent County Attorneys will argue that the amount of time spent researching various issues was excessive. Appellants will again point out that this was a significant case of first impression in the Eighth Circuit, with widespread significance – it truly changes the landscape of the Minnesota's political campaigns. It was therefore necessary to research and review numerous other areas of law related to restrictions on political campaign speech, such as defamation law, in order to prepare this case. As this Court found, Respondents bore the burden of demonstrating that they had a compelling governmental interest justifying their now unconstitutional law. Respondents argued vociferously that the long-standing nature of their law and its exceptions and *mens rea* requirements justified §211B.06. Appellants relied on the experience of other states, especially Washington State, with their political campaign restrictions and corresponding electoral results, along with exhaustive case research revealing cases brought to the Office of Administrative Hearings – not a district court – which squelched free speech to support their arguments and

EXHIBIT 13

specifically rebut Respondents' arguments.

Furthermore, the District Court's opinion and analysis, which invoked the *Marks* doctrine to hold that the two-vote *concurrence*, and not the four-vote plurality, from *United States v. Alvarez*, 132 S. Ct. 2537 (2012), controlled the level of scrutiny to apply to §211B.06 – in direct contradiction of this Court's prior mandate. This necessitated a great deal of additional legal research, exposition, and editing to fully present all appealable issues to this Court and required Appellants to analyze §211B.06 under both intermediate and strict scrutiny.

Finally, Appellants request the Court compare Appellants' fee application in this case with the fee application Appellants' attorneys made in *Republican Party of Minnesota v. White,* 456 F.3d 912 (8th Cir. 2006)*.* In *White,* Appellants' counsel sought recovery of 1,187.50 hours for a total of $393,124.50 for work prior to the fee application – all of which this Court awarded to Mohrman, Kaardal & Erickson's predecessor firm. In addition to two appeals, *White* involved a successful appeal to the U.S. Supreme Court, remand to the panel and a successful *en banc* review. Appellants' current application, which is approximately one half those amounts, favorably and reasonably compares with that result.

These factors, when coupled with the fact that Appellants have already reduced their fee application based on the Attorney General's dismissal on Eleventh Amendment grounds, demonstrate that Appellants' attorney hours should

EXHIBIT 13

be approved as set forth in the invoice attached to the Mohrman Declaration.

**2.  Fees and Expenses Incurred to Prepare Taxation of Costs and Attorney Fee Motion**.

Finally, Appellants obviously had to prepare this Motion for Attorney Fees and Notice of Taxation of Costs.  Attached to the Mohrman Declaration as Exhibit 2 is the Billing History Report for the attorney time and expenses.  Once again, as Mr. Mohrman testifies, he reviewed the entries and exercised billing judgment.  Mr. Mohrman removed or reduced 13.40 in hours totaling $3,873.00.  The total amount time sought for reimbursement is 43.20 hours totaling $14,978 in charges.  In addition, Appellants seek recovery of $13.90 in PACER charges for researching attorney fee applications.  Thus, the total amount sought for preparing the fee application is $14,991.90.

## <u>CONCLUSION</u>

For the reasons set forth above, Appellants request that the Eighth Circuit grant their Motion for Attorney Fees and Costs in the total amount of $207,581.83 in addition to the $1,472.10 in costs sought through the Bill of Costs filed today.

DATED:  September 16, 2014  **MOHRMAN, KAARDAL & ERICKSON, P.A.**

<u>s/William F. Mohrman</u>
William F. Mohrman #168816
James V. F. Dickey, #393613
150 South Fifth Street, Suite 3100
Minneapolis, MN. 55402
(612) 341-1074
ATTORNEYS FOR APPELLANTS

19

EXHIBIT 13