# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| REV. MR. (DEACON) GREGORY E. HALL and AMERICAN MFG COMPANY, | Civil No. 13-295 (JRT/LIB) |
| Plaintiffs, | |
| v. | |
| KATHLEEN SEBELIUS, *in her official capacity as Secretary of the United States Department of Health and Human Services*; SETH D. HARRIS, *in his official capacity as Acting Secretary of the United States Department of Labor and his successor*; NEIL WOLIN, *in his official capacity as Acting Secretary of the United States Department of the Treasury and his successor*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF LABOR; and UNITED STATES DEPARTMENT OF THE TREASURY, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

---

James V. F. Dickey and Erick G. Kaardal, **MOHRMAN, KAARDAL & ERICKSON, P.A.,** 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402; and Thomas E. Mathews, **HUGHES MATHEWS GREER, P.A.,** 622 Roosevelt Road, Suite 280, P. O. Box 548, St. Cloud, MN 56302, for plaintiffs.

Ann M. Bildtsen, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE,** 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, and Bradley Philip Humphreys and Julie S. Saltman, **UNITED STATES DEPARTMENT OF JUSTICE,** 20 Massachusetts Avenue N.W., Washington, DC 20530, for defendants.

On November 26, 2014, this Court entered judgment for the plaintiffs enjoining the defendants from enforcing a regulatory mandate of the Affordable Care Act ("ACA") that would require the plaintiffs to provide insurance coverage to their employees for contraception, sterilization procedures, and other related patient education and counseling (the Court will refer to these provisions, together, as "the ACA mandate"). The plaintiffs now move for attorney's fees and costs. Because Hughes Mathews, P.A. has offered no documentation to support the reasonableness of their request, and because the Court finds the rates and hours expended by Mohrman, Kaardal & Erickson, P.A. to be reasonable, the Court will grant the plaintiffs' motion to the extent it relates to Mohrman, Kaardal & Erickson, P.A. and deny without prejudice the motion to the extent it relates to Hughes Mathews, P.A.

## BACKGROUND

Plaintiff Gregory E. Hall ("Deacon Hall") is a Roman Catholic Deacon of the Archdiocese of Galveston-Houston. (Compl. ¶¶ 3, 34, Feb. 5, 2013, Docket No. 1.) Deacon Hall owns American Mfg Company, a corporation based in St. Joseph, Minnesota, that manufactures parts for mining equipment. (*Id.* ¶¶ 35, 70.) American Mfg Company employs approximately forty full-time employees. (*Id.* ¶ 71.) When Congress passed the ACA, Deacon Hall felt his religious beliefs were compromised by the ACA mandate. (*Id.* ¶ 84.) Specifically, he was concerned about the requirement that his company provide its employees with insurance coverage for contraceptive health benefits under the threat of heavy fines for noncompliance. (*Id.* ¶¶ 81, 95, 98, 101-02,

114-15.)   On February 5, 2013, Deacon Hall sought an injunction in federal court preventing the enforcement of this provision.  (*Id.* at 49.)

Deacon Hall's claim was one of many similar challenges to the ACA mandate, both in this District and across the federal court system.  On June 30, 2014, the United States Supreme Court issued its decision in *Burwell v. Hobby Lobby Stores, Inc.*, which held that the ACA mandate violated the Religious Freedom Restoration Act ("RFRA") because it substantially burdened the free exercise of religion and therefore could not be enforced against for-profit corporations such as Hobby Lobby (or, in this case, American Mfg Company).  *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014).  After the Supreme Court's decision in *Hobby Lobby*, the parties agreed to a stipulation in which judgment would be entered for Deacon Hall and American Mfg Company, and the parties would begin briefing this motion for attorney's fees.  (Stipulation for Entry of J. & Inj. in Favor of Pls. & Stipulation for Fee Motion Briefing Schedule, Nov. 24, 2014, Docket No. 12.)

On March 11, 2015, the plaintiffs moved for attorney's fees and other costs and expenses.  In their motion, the plaintiffs ask for $100,503.50 in attorney's fees and $459.51 in other costs and expenses.  (Mot. for Att'y's Fees, Costs, & Expenses, Mar. 11, 2015, Docket No. 17.)  The attorney's fees figure represents an award for the following attorneys and legal assistants:

| Attorney / Assistant | Years Practicing[1] | Hourly Rate Claimed | Hours Worked |
|---|---|---|---|
| Erick G. Kaardal | 23 | $450[2] | 125.08 |
| James V. F. Dickey | 2-3 | $225 | 42.3 |
| John R. Gryzbek | 38 | $195 | 14.7 |
| Thomas E. Mathews | 41 | $400 | 52.7 |
| Kevin Hughes | | $225 | 2 |
| John F. Mathews | | $225 | 2.3 |
| Jennifer Ricketts-Curan | | $90 | .4 |

(Decl. of Erick G. Kaardal ("Kaardal Decl.") ¶¶ 17, 59-60, Mar. 11, 2015, Docket No. 20; *id.*, Ex. 1; Decl. of Thomas E. Mathews ("Mathews Decl.") ¶¶ 10-11, Mar. 11, 2015, Docket No. 23.)

Plaintiffs also sought $459.51 in costs associated with this case. Specifically, they sought fees of the Clerk ($350), fees for service of summons and subpoena ($37.50), and "other costs" ($72.01), which their Bill of Costs reveal to be postage and Pacer research fees. (Bill of Costs, Mar. 11, 2015, Docket No. 26.) The Clerk of Court entered a Cost Judgment for plaintiffs in the amount of $350, for fees of the Clerk, on April 15, 2015.

---

[1] The documentation provided by Hughes Mathews, P.A. does not identify the number of years Kevin Hughes, John F. Mathews, and Jennifer Ricketts-Curan have worked in the legal field. Thus, the table does not list their years of experience.

[2] Although the Kaardal Declaration lists a rate of $450, (Decl. of Erick G. Kaardal ("Kaardal Decl.") ¶ 17, Mar. 11, 2015, Docket No. 20), the memorandum in support of the attorney's fees motion lists a rate of both $475 and $450 for Kaardal, (Mem. of Law in Supp. of Mot. for Attorney's Fees & Costs at 21, 24, Mar. 11, 2015, Docket No. 19). The Court will use the $450 rate, because it is referenced more frequently in the relevant briefing papers.

(Cost J.)   The parties had fourteen days to file a motion for review of the Clerk's decision.  (*Id.*)  Neither party sought review.[3]

## ANALYSIS

## I.   ATTORNEY'S FEES UNDER RFRA

The plaintiffs seek an award of fees and costs from the defendants under RFRA. In an action to enforce a provision of RFRA, a court in its discretion may award the prevailing party "a reasonable attorney's fee as part of the costs" of bringing the action. 42 U.S.C. § 1988(b); *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1085 (8th Cir. 2006) ("Congress has granted district courts discretion to award attorneys' fees to a 'prevailing party' in an action to enforce . . . RFRA against the United States or its officials."). "Analytically, the task of the Court is to first determine whether the Plaintiff is a 'prevailing party.'"  *Peter v. Wedl*, 18 F. Supp. 2d 1002, 1011 (D. Minn. 1998).  In this case, the Court granted judgment in favor of the plaintiffs.  (Order for Inj. & J. at 2, Nov. 26, 2014, Docket No. 13 ("[J]udgment is entered in favor of plaintiffs and against defendants on plaintiffs' claim under the Religious Freedom Restoration Act.").) Accordingly, the defendants do not dispute that the plaintiffs are a "prevailing party" for the purposes of § 1988.  The defendants do, however, protest that the amount of fees and costs the plaintiffs demand is excessive and does not constitute a "reasonable" fee.

---

[3] Because neither party sought review of the Cost Judgment, the Court will grant the motion for costs in the amount of $350.00.  To the extent the defendants' opposition memorandum, which argues that the plaintiffs should receive no costs, constitutes an objection, the Court will overrule it.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation yields a figure known as the "lodestar." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. Hours must be "reasonably expended," and because the number of attorneys staffing a case – and the respective skill level of those attorneys – may vary, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* Ultimately, district courts have substantial discretion to take into account particular challenges faced by counsel or the degree of success on the prevailing party's claims, but a determination of attorney's fees should not result in "a second major litigation." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (quoting *Hensley*, 461 U.S. at 437). In fact, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

## II.    PLAINTIFFS' MOTION FOR FEES

The plaintiffs have submitted a number of declarations in support of their motion for attorney's fees that attest to the reasonableness of the hourly rates they seek to recover.  These declarations evaluate the rates based on the attorneys' experience and skills, as well as typical rates for civil rights litigators in Minnesota.[4]  Based on these rates, the plaintiffs are requesting a total of $100,503.50 in attorney's fees and $459.51 in costs.

The defendants argue that the plaintiffs' documentation is lacking in support for the amount of fees they now claim.  First, the defendants argue that this action was brought after many similar cases had already been filed, and in some cases briefed, including one in the District of Minnesota with a complaint substantially similar to the complaint in this case.  Second, the defendants maintain that plaintiffs' counsel's hours are unreasonable in light of the fact that no motion was briefed in this case other than the motion for attorney's fees, and no oral argument or discovery took place.  Finally, although the defendants do not contest that the plaintiffs are a prevailing party, the

---

[4] Kaardal and Mathews each submitted a declaration describing their own experience and listing their rates and number of hours worked.  (Kaardal Decl.; Mathews Decl.)  The parties also submitted declarations of other attorneys in the community, supporting their claims that the hourly rates listed are consistent with prevailing community standards.  Decl. (Decl. of Kevin Spellacy in Supp. of Pls.' Mot. for Attorney Fees Under 42 U.S.C. § 1988, Mar. 11, 2015, Docket No. 21 (declaration supporting position that the fees charged by counsel from Hughes Mathews, P.A. is reasonable within the community); Decl. of Dan Biersdorf in Supp. of Pls.' Mot. for Attorney Fees Under 42 U.S.C. § 1988, Mar. 11, 2015, Docket No. 22 (declaration attesting that the rates quoted by counsel for Mohrman, Kaardal & Erickson, P.A. are consistent with prevailing market rates for each individual's respective experience).)

defendants point out that they stipulated to judgment in this case, lessening the plaintiffs' workload to achieve success.

### A.     Hughes Mathews, P.A.

Thomas E. Mathews is a partner at Hughes Mathews, P.A.  (Mathews Decl. ¶ 1.) Mathews submitted a four-page declaration in support of his fees request, seeking a total of $21,080 for the work he performed on this case.  (*Id.* ¶ 10.)  That figure represents 52.70 hours worked at an hourly rate of $400 per hour.  (*Id.*)  Additionally, Mathews requests a further $1,003.50, representing 2 hours of work done by Mathews's partner, Kevin Hughes, at an hourly rate of $225; 2.3 hours by Mathews's associate, John F. Mathews, at an hourly rate of $225; and 0.4 hours of work by his legal assistant at an hourly rate of $90.  (Mathews Decl. ¶¶ 7, 11.)

Assuming without deciding that the billing rates quoted by Hughes Mathews, P.A. are reasonable rates in light of each individual's experience, counsel at Hughes Mathews, P.A. has not provided any documentation to support the reported number of hours worked.  In a fee-shifting scenario, "the party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates . . . and should maintain billing time records in a manner that will enable a reviewing court to identify

distinct claims." *Id.* at 437; *see also City of Riverside v. Rivera*, 477 U.S. 561, 569 n.4 (1986).

In this case, Hughes Mathews, P.A. has not submitted any billing records for the Court's review. The only documentation supporting their time spent on this case is Thomas Mathews's declaration, which gives total numbers of hours and generally describes his own work on the case. For example, he explains that he "did the research and completed a memorandum regarding the issues Mr. Hall asked me to review" and "developed a legal strategy to accomplish the specific objectives of Mr. Hall and his company. This involved not only the legal issues but also the difficult negotiations Mr. Hall faced with the Archdiocese." (Mathews Decl. ¶ 7.) Nowhere in his declaration does Mathews provide a specific account of how his time was allocated, nor does he indicate the nature or allocation of the work others at his firm performed.

Without the benefit of any billing or time records, the Court is unable to ascertain whether Hughes Mathews, P.A.'s requested fees reflect a reasonable amount of time expended, and the defendants are unable to lodge particularized objections to the estimate. *Nali v. MaxPro Flooring, LLC*, No. 09-3625, 2013 WL 673779, at *9 (D. Minn. Feb. 25, 2013). As a result, the Court will deny, without prejudice, the plaintiffs' request for attorney's fees to the extent it relates to counsel for Hughes Mathews, P.A. The plaintiffs may file a separate motion for attorney's fees, with supporting documentation, as to Hughes Mathews, P.A. within 30 days of this Order. *Id.*; *Heimerl v. Tech Elec. of Minn., Inc.*, 9 F. Supp. 3d 1002, 1031-32 (D. Minn. 2014). The

defendants will then be permitted to file their objection, if any, to the amount requested in that motion.

### B.    Mohrman, Kaardal & Erickson, P.A.

#### 1.    Reasonableness of Hourly Rates

The defendants argue that the award plaintiffs' counsel is requesting should be reduced because the amount that they are demanding substantially exceeds the amount for which their clients were actually billed.  The billing record submitted by plaintiffs' counsel indicates that Mohrman, Kaardal & Erickson, P.A. charged the plaintiffs hourly rates of $300 for Kaardal's work, $125 for Dickey's work, and $175 for Grzybek's work. (Kaardal Decl., Ex. 1.)  Kaardal, Dickey, and Gryzbek now seek higher rates, however, of $450, $225, and $195, respectively.   The defendants contend that because the rates sought are not reflected in the rates actually charged to plaintiffs, Mohrman, Kaardal & Erickson, P.A. cannot recover the higher amounts now.

Evidence of an attorney's customary rate is relevant to a determination of reasonableness, but it is not dispositive.  *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002).  "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated."  *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001).  "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

Even though the billing records show that Mohrman, Kaardal & Erickson, P.A. actually charged the plaintiffs lower rates than they are now seeking in an attorney's fees award, the Court finds that the hourly rate billed to the client is not decisive. The goal of a fee-shifting provision such as § 1988 is to "encourage[] plaintiffs to bring meritorious civil rights suits." *Marek v. Chesny*, 473 U.S. 1, 11 (1985). To achieve this goal, the statute entitles plaintiffs to a "reasonable attorney's fee," not merely recovery of fees charged. 42 U.S.C. § 1988. The Court expects that many attorneys may even reach agreements with clients to charge a lower fee than a prevailing market rate in order to facilitate the filing of meritorious claims. Thus, the Court will look not only to the rate charged to the clients in this particular case but to the prevailing market rate in the community for work by attorneys of similar experience.

In this case, the Court concludes that rates of $450 per hour for an attorney with 23 years of experience, $225 per hour for an attorney with 2-3 years of experience, and $195 per hour for a legal assistant with 38 years of experience, are all within the prevailing market rates for this community. First, the plaintiffs submitted documentation in support of the reasonableness of their fees by another attorney in the community. (Biersdorf Decl.) Biersdorf speaks specifically to both attorneys and their legal assistant, describing their work and experience. Based on these factors, he opines that their fees are reasonable for the Minneapolis community.

Further, prior cases have found these figures to be reflective of prevailing market rates for this community. *See Owner Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, No. 05-2809, 2012 WL 6760098, at *6-*7 (D. Minn. Sept. 30, 2012) (finding a rate

of $495 appropriate for an attorney with 23 years of experience, and a rate of $285 reasonable for an attorney with 6 years of experience); *Rosen v. Wentworth*, 13 F. Supp. 3d 944, 951 (D. Minn. 2014) (finding a rate of $225 per hour to be reasonable for an attorney with approximately three years of experience). In fact, the Eighth Circuit recently concluded that nearly these **exact** rates charged by these **exact** attorneys constitute reasonable attorney's fees. (Kaardal Decl., Ex. 13 (*281 Care Committee v. Arneson*, Case No. A13-1229, Order (Sept. 16, 2014)) at 137-38.) In *281 Care Committee*, the Eighth Circuit approved attorney's fees hourly rates of $475 for Kaardal – $25 more per hour than he is charging in this case; $225 for Dickey; and $195 for Gryzbek. (*Id.*) Given these prior cases and the skill and experience of plaintiffs' counsel, the Court finds that the rates requested by Kaardal, Dickey, and Gryzbek are reasonable and consistent with the prevailing market rates for this community.

### 2. Hours Worked

The defendants argue that even if the hourly rates are found to be reasonable, the contemporaneous billing records provided by plaintiffs' counsel are not sufficiently complete or precise for the Court to determine an accurate award of attorney's fees. Unlike Hughes Mathews, P.A., counsel for Mohrman, Kaardal & Erickson, P.A. have provided the Court with contemporaneous billing records for their work on the plaintiffs' case. The defendants argue that because of the plaintiffs' practice of "block billing," the records are not complete or sufficiently specific to warrant a full award of attorney's fees.

Incomplete or imprecise billing records prevent the Court from exercising meaningful review and are grounds for reducing a fee award. *Hensley*, 461 U.S. at 433; *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir.1991). Block billing is the practice of lumping together daily time entries that involve multiple task descriptions. Block billing is disfavored because it lacks specificity, but the use of block billing does not present a bar to recovery as long as it does not obscure the Court's ability to evaluate the tasks performed. *See King v. Turner*, Civ. No. 05-388, 2007 WL 1219308, at *3 (D. Minn. Apr. 24, 2007); *Hines v. City of Albany*, --- Fed. App'x ---, at *3 (2d Cir. 2015). The Court finds that the billing records provided by Mohrman, Kaardal & Erickson are adequately specific to enable the Court to evaluate each entry's relevance and usefulness to the case. The entries are rounded to the nearest tenth of an hour, indicating which attorney performed the tasks and listing related tasks together. (Kaardal Decl., Ex. 1.) Although the entries occasionally list multiple tasks in one entry, those tasks are plausibly related – for example, the entry for Kaardal on January 23, 2013 states: "Conduct legal research on HHS mandate claims for Greg Hall – Deacon Hall. Review RFRA, 1st Amendment religious clause cases." (*Id.* at 1.) The time stated for these separate but related tasks is 2.30 hours. (*Id.*) Having carefully reviewed the billing records, the Court concludes that the tasks and hours listed by counsel are reasonable. The tasks are clearly delineated, and the hours are reasonably specific.

The defendants next contend that the hours are not reasonable in light of the broader context in which this case was filed. Counsel for Mohrman, Kaardal & Erickson, P.A. seek recovery for 182.08 hours worked on this case. Defendants point out that this

case was one of many very similar cases filed around the same time and that this case was actually stayed pending the Eighth Circuit's resolution of two similar cases, thereby requiring little actual briefing by plaintiffs' counsel.  In fact, by the time the Supreme Court issued its decision in *Hobby Lobby* – ultimately proving to be highly influential in this case – the only documents filed by plaintiffs' counsel were the complaint and an unopposed motion for a preliminary injunction.

The limited number of filings notwithstanding, the Court finds that 182.08 hours is not an unreasonable amount of time to spend on this case.  The plaintiffs could not know how the Eighth Circuit would rule on its pending cases, or how the United States Supreme Court would rule in *Hobby Lobby*.  The plaintiffs' counsel would have done their clients a disservice by being unprepared to move forward with the litigation if the appeals were resolved differently. Kaardal, Dickey, and Gryzbek did not excessively accumulate hours by researching unrelated issues or inappropriately including items such as travel time in their hours worked on the case.  Their time logs illustrate their diligent efforts to prepare a strong complaint and preliminary injunction filings, and to apprise themselves of the relevant case law on First Amendment issues, RFRA, and insurance law.  The Court does not find their inclusion of time for negotiations and conferences to be excessive, as those meetings were directly related to their clients' status as plaintiffs in the case and the furtherance of their RFRA claims.  The Court will not reduce the award for time spent in those conferences.  As a result, the Court finds that 182.08 hours is a reasonable amount of time.

Accepting both the hours worked and the hourly rates sought by Mohrman, Kaardal & Erickson, P.A. to be reasonable, the Court finds that the plaintiffs' fee calculations represent the lodestar.  Applying the hourly rates to the time spent on this case, the Court reaches the following figures:

| Attorney / Assistant | Hourly Rate Claimed | Hours Worked | Total Amount |
|---|---|---|---|
| Erick G. Kaardal | $450 | 125.08 | $56,286.00 |
| James V. F. Dickey | $225 | 42.3 | $9,517.50 |
| John R. Gryzbek | $195 | 14.7 | $2,866.50 |

The Court will add an additional $9,750.00, representing 10.5 hours spent by Kaardal, at a rate of $450 per hour, preparing the motion for attorney's fees.  (Kaardal Decl. ¶ 80.)  In total, the Court calculates that the Mohrman, Kaardal & Erickson, P.A. firm is entitled to $78,420.00.  As explained above, the Court does not find that a downward reduction from this figure is necessary or appropriate in this case.  Therefore, the Court will grant the plaintiffs' motion for attorney's fees to this extent.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorney's Fees, Costs, and Expenses [Docket No. 17] is **GRANTED in part** and **DENIED in part**, as follows:

1.     The motion is **GRANTED** in the amount of $78,420.00, representing the work performed by Mohrman, Kaardal & Erickson, P.A.

2.     The motion is **DENIED without prejudice** to the extent it relates to work performed by Hughes Mathews, P.A.  The plaintiffs may file a separate motion for

attorney's fees, with supporting documentation, as to Hughes Mathews, P.A., within 30 days of this Order.

      3.      The motion for costs is **GRANTED** in the amount of $350.00, as reflected in the April 15, 2015 Cost Judgment.

**LET JUDGMENT BE ENTERED ACCORDINGY.**

DATED:  February 3, 2016                _____
at Minneapolis, Minnesota.             s/ John R. Tunheim
                                        JOHN R. TUNHEIM
                                          Chief Judge
                             United States District Court